# EXHIBIT A

# Presidential Documents

Executive Order 14042 of September 9, 2021

## Ensuring Adequate COVID Safety Protocols for Federal Contractors

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the Federal Property and Administrative Services Act, 40 U.S.C. 101 *et seq.,* and section 301 of title 3, United States Code, and in order to promote economy and efficiency in procurement by contracting with sources that provide adequate COVID–19 safeguards for their workforce, it is hereby ordered as follows:

**Section 1**. *Policy.* This order promotes economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID–19 safeguards to their workers performing on or in connection with a Federal Government contract or contract-like instrument as described in section 5(a) of this order. These safeguards will decrease the spread of COVID–19, which will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government. Accordingly, ensuring that Federal contractors and subcontractors are adequately protected from COVID–19 will bolster economy and efficiency in Federal procurement.

**Sec. 2.** *Providing for Adequate COVID–19 Safety Protocols for Federal Contractors and Subcontractors.* (a) Executive departments and agencies, including independent establishments subject to the Federal Property and Administrative Services Act, 40 U.S.C. 102(4)(A) (agencies), shall, to the extent permitted by law, ensure that contracts and contract-like instruments (as described in section 5(a) of this order) include a clause that the contractor and any subcontractors (at any tier) shall incorporate into lower-tier subcontracts. This clause shall specify that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force (Task Force Guidance or Guidance), provided that the Director of the Office of Management and Budget (Director) approves the Task Force Guidance and determines that the Guidance, if adhered to by contractors or subcontractors, will promote economy and efficiency in Federal contracting. This clause shall apply to any workplace locations (as specified by the Task Force Guidance) in which an individual is working on or in connection with a Federal Government contract or contract-like instrument (as described in section 5(a) of this order).

(b) By September 24, 2021, the Safer Federal Workforce Task Force (Task Force) shall, as part of its issuance of Task Force Guidance, provide definitions of relevant terms for contractors and subcontractors, explanations of protocols required of contractors and subcontractors to comply with workplace safety guidance, and any exceptions to Task Force Guidance that apply to contractor and subcontractor workplace locations and individuals in those locations working on or in connection with a Federal Government contract or contract-like instrument (as described in section 5(a) of this order).

(c) Prior to the Task Force publishing new Guidance related to COVID–19 for contractor or subcontractor workplace locations, including the Guidance developed pursuant to subsection (b) of this section, the Director shall, as an exercise of the delegation of my authority under the Federal Property

and Administrative Services Act, *see* 3 U.S.C. 301, determine whether such Guidance will promote economy and efficiency in Federal contracting if adhered to by Government contractors and subcontractors. Upon an affirmative determination by the Director, the Director's approval of the Guidance, and subsequent issuance of such Guidance by the Task Force, contractors and subcontractors working on or in connection with a Federal Government contract or contract-like instrument (as described in section 5(a) of this order), shall adhere to the requirements of the newly published Guidance, in accordance with the clause described in subsection (a) of this section. The Director shall publish such determination in the *Federal Register*.

(d) Nothing in this order shall excuse noncompliance with any applicable State law or municipal ordinance establishing more protective safety protocols than those established under this order or with any more protective Federal law, regulation, or agency instructions for contractor or subcontractor employees working at a Federal building or a federally controlled workplace.

(e) For purposes of this order, the term ''contract or contract-like instrument'' shall have the meaning set forth in the Department of Labor's proposed rule, ''Increasing the Minimum Wage for Federal Contractors,'' 86 FR 38816, 38887 (July 22, 2021). If the Department of Labor issues a final rule relating to that proposed rule, that term shall have the meaning set forth in that final rule.

**Sec. 3**. *Regulations and Implementation.* (a) The Federal Acquisition Regulatory Council, to the extent permitted by law, shall amend the Federal Acquisition Regulation to provide for inclusion in Federal procurement solicitations and contracts subject to this order the clause described in section 2(a) of this order, and shall, by October 8, 2021, take initial steps to implement appropriate policy direction to acquisition offices for use of the clause by recommending that agencies exercise their authority under subpart 1.4 of the Federal Acquisition Regulation.

(b) By October 8, 2021, agencies shall take steps, to the extent permitted by law, to exercise any applicable authority to ensure that contracts and contract-like instruments as described in section 5(a) of this order that are not subject to the Federal Acquisition Regulation and that are entered into on or after October 15, 2021, consistent with the effective date of such agency action, include the clause described in section 2(a) of this order.

**Sec. 4**. *Severability.* If any provision of this order, or the application of any provision of this order to any person or circumstance, is held to be invalid, the remainder of this order and its application to any other person or circumstance shall not be affected thereby.

**Sec. 5**. *Applicability.* (a) This order shall apply to any new contract; new contract-like instrument; new solicitation for a contract or contract-like instrument; extension or renewal of an existing contract or contract-like instrument; and exercise of an option on an existing contract or contract-like instrument, if:

(i) it is a procurement contract or contract-like instrument for services, construction, or a leasehold interest in real property;

(ii) it is a contract or contract-like instrument for services covered by the Service Contract Act, 41 U.S.C. 6701 *et seq.;*

(iii) it is a contract or contract-like instrument for concessions, including any concessions contract excluded by Department of Labor regulations at 29 CFR 4.133(b); or

(iv) it is a contract or contract-like instrument entered into with the Federal Government in connection with Federal property or lands and related to offering services for Federal employees, their dependents, or the general public;

(b) This order shall not apply to:

(i) grants;

(ii) contracts, contract-like instruments, or agreements with Indian Tribes under the Indian Self-Determination and Education Assistance Act (Public Law 93–638), as amended;

(iii) contracts or subcontracts whose value is equal to or less than the simplified acquisition threshold, as that term is defined in section 2.101 of the Federal Acquisition Regulation;

(iv) employees who perform work outside the United States or its outlying areas, as those terms are defined in section 2.101 of the Federal Acquisition Regulation; or

(v) subcontracts solely for the provision of products.

**Sec. 6**. *Effective Date.* (a) Except as provided in subsection (b) of this section, this order is effective immediately and shall apply to new contracts; new contract-like instruments; new solicitations for contracts or contract-like instruments; extensions or renewals of existing contracts or contract-like instruments; and exercises of options on existing contracts or contract-like instruments, as described in section 5(a) of this order, where the relevant contract or contract-like instrument will be entered into, the relevant contract or contract-like instrument will be extended or renewed, or the relevant option will be exercised, on or after:

(i) October 15, 2021, consistent with the effective date for the action taken by the Federal Acquisition Regulatory Council pursuant to section 3(a) of this order; or

(ii) for contracts and contract-like instruments that are not subject to the Federal Acquisition Regulation and where an agency action is taken pursuant to section 3(b) of this order, October 15, 2021, consistent with the effective date for such action.

(b) As an exception to subsection (a) of this section, where agencies have issued a solicitation before the effective date for the relevant action taken pursuant to section 3 of this order and entered into a new contract or contract-like instrument resulting from such solicitation within 30 days of such effective date, such agencies are strongly encouraged to ensure that the safety protocols specified in section 2 of this order are applied in the new contract or contract-like instrument. But if that contract or contract-like instrument term is subsequently extended or renewed, or an option is subsequently exercised under that contract or contract-like instrument, the safety protocols specified in section 2 of this order shall apply to that extension, renewal, or option.

(c) For all existing contracts and contract-like instruments, solicitations issued between the date of this order and the effective dates set forth in this section, and contracts and contract-like instruments entered into between the date of this order and the effective dates set forth in this section, agencies are strongly encouraged, to the extent permitted by law, to ensure that the safety protocols required under those contracts and contract-like instruments are consistent with the requirements specified in section 2 of this order.

**Sec. 7**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*September 9, 2021.*

[FR Doc. 2021–19924
Filed 9–13–21; 8:45 am]
Billing code 3295–F1–P

# EXHIBIT B

**Safer Federal Workforce Task Force**
**COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors**
Issued September 24, 2021

## Introduction

On September 9, President Biden announced his Path Out of the Pandemic: COVID-19 Action Plan. One of the main goals of this science-based plan is to get more people vaccinated. As part of that plan, the President signed Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, ("the order") which directs executive departments and agencies, including independent establishments subject to the Federal Property and Administrative Services Act, 40 U.S.C. § 102(4)(A), to ensure that covered contracts and contract-like instruments include a clause ("the clause") that the contractor and any subcontractors (at any tier) shall incorporate into lower-tier subcontracts. This clause shall specify that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force ("Task Force"), provided that the Director of the Office of Management and Budget ("OMB") approves the Task Force Guidance (the or this "Guidance") and determines that the Guidance, if adhered to by covered contractors, will promote economy and efficiency in Federal contracting.

The actions directed by the order will ensure that parties who contract with the Federal Government provide COVID-19 safeguards in workplaces with individuals working on or in connection with a Federal Government contract or contract-like instrument. These workplace safety protocols will apply to all covered contractor employees, including contractor or subcontractor employees in covered contractor workplaces who are not working on a Federal Government contract or contract-like instrument. These safeguards will decrease the spread of SARS-CoV-2, the virus that causes COVID-19, which will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors performing work for the Federal Government.

Pursuant to this Guidance, and in addition to any requirements or workplace safety protocols that are applicable because a contractor or subcontractor employee is present at a Federal workplace, Federal contractors and subcontractors with a covered contract will be required to conform to the following workplace safety protocols:

1. COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation;
2. Compliance by individuals, including covered contractor employees and visitors, with the Guidance related to masking and physical distancing while in covered contractor workplaces; and
3. Designation by covered contractors of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces.

The order also sets out a process for OMB and the Safer Federal Workforce Task Force to update the Guidance for covered contractors, which the Task Force will consider doing based on future changes to Centers for Disease Control and Prevention ("CDC") COVID-19 guidance and as warranted by the circumstances of the pandemic and public health conditions. It also sets out a process for the Federal Acquisition Regulatory Council ("FAR Council") to implement such protocols and guidance for covered Federal procurement solicitations and contracts subject to the Federal Acquisition Regulation ("FAR") and for agencies that are responsible for covered contracts and contract-like instruments not subject to the FAR to take prompt action to ensure that those covered contracts and contract-like instruments include the clause, consistent with the order.

Covered contractors shall adhere to the requirements of this Guidance. The Director of OMB has, as authorized by Executive Order 14042, approved this Guidance and has, an exercise of the delegation of authority (see 3 U.S.C. § 301) under the Federal Property and Administrative Services Act determined that this Guidance will promote economy and efficiency in Federal contracting if adhered to by Government contractors and subcontractors. The Director has published such determination in the Federal Register.

**Definitions**

*Community transmission* – means the level of community transmission as set forth in the CDC
COVID-19 Data Tracker County View.

*Contract and contract-like instrument* – has the meaning set forth in the Department of Labor's
proposed rule, "Increasing the Minimum Wage for Federal Contractors," 86 Fed. Reg. 38,816,
38,887 (July 22, 2021). If the Department of Labor issues a final rule relating to that proposed
rule, this term shall have the meaning set forth in that final rule.

That proposed rule defines a contract or contract-like instrument as an agreement between two or
more parties creating obligations that are enforceable or otherwise recognizable at law. This
definition includes, but is not limited to, a mutually binding legal relationship obligating one
party to furnish services (including construction) and another party to pay for them. The
term contract includes all contracts and any subcontracts of any tier thereunder, whether
negotiated or advertised, including any procurement actions, lease agreements, cooperative
agreements, provider agreements, intergovernmental service agreements, service agreements,
licenses, permits, or any other type of agreement, regardless of nomenclature, type, or particular
form, and whether entered into verbally or in writing. The term contract shall be interpreted
broadly as to include, but not be limited to, any contract within the definition provided in the
FAR at 48 CFR chapter 1 or applicable Federal statutes. This definition includes, but is not
limited to, any contract that may be covered under any Federal procurement statute. Contracts
may be the result of competitive bidding or awarded to a single source under applicable authority
to do so. In addition to bilateral instruments, contracts include, but are not limited to, awards and
notices of awards; job orders or task letters issued under basic ordering agreements; letter
contracts; orders, such as purchase orders, under which the contract becomes effective by written
acceptance or performance; exercised contract options; and bilateral contract modifications. The
term contract includes contracts covered by the Service Contract Act, contracts covered by the
Davis-Bacon Act, concessions contracts not otherwise subject to the Service Contract Act, and
contracts in connection with Federal property or land and related to offering services for Federal
employees, their dependents, or the general public.

*Contractor or subcontractor workplace location* – means a location where covered contract
employees work, including a covered contractor workplace or Federal workplace.

*Covered contract* – means any contract or contract-like instrument that includes the clause
described in Section 2(a) of the order.

*Covered contractor* – means a prime contractor or subcontractor at any tier who is party to a
covered contract.

*Covered contractor employee* – means any full-time or part-time employee of a covered
contractor working on or in connection with a covered contract or working at a covered

contractor workplace. This includes employees of covered contractors who are not themselves working on or in connection with a covered contract.

*Covered contractor workplace* – means a location controlled by a covered contractor at which any employee of a covered contractor working on or in connection with a covered contract is likely to be present during the period of performance for a covered contract. A covered contractor workplace does not include a covered contractor employee's residence.

*Federal workplace* – means any place, site, installation, building, room, or facility in which any Federal executive department or agency conducts official business, or is within an executive department or agency's jurisdiction, custody, or control.

*Fully vaccinated* – People are considered fully vaccinated for COVID-19 two weeks after they have received the second dose in a two-dose series, or two weeks after they have received a single-dose vaccine. There is currently no post-vaccination time limit on fully vaccinated status; should such a limit be determined by the Centers for Disease Control and Prevention, that limit will be considered by the Task Force and OMB for possible updating of this Guidance.

For purposes of this Guidance, people are considered fully vaccinated if they have received COVID-19 vaccines currently approved or authorized for emergency use by the U.S. Food and Drug Administration (Pfizer-BioNTech, Moderna, and Johnson & Johnson [J&J]/Janssen COVID-19 vaccines) or COVID-19 vaccines that have been listed for emergency use by the World Health Organization (e.g., AstraZeneca/Oxford). More information is available at Interim Clinical Considerations for Use of COVID-19 Vaccines | CDC.

Clinical trial participants from a U.S. site who are documented to have received the full series of an "active" (not placebo) COVID-19 vaccine candidate, for which vaccine efficacy has been independently confirmed (e.g., by a data and safety monitoring board), can be considered fully vaccinated two weeks after they have completed the vaccine series. Currently, the Novavax COVID-19 vaccine meets these criteria. More information is available at the CDC website here.

*Mask* – means any mask that is consistent with CDC recommendations as set forth in Types of Masks and Respirators | CDC. This may include the following: disposable masks, masks that fit properly (snugly around the nose and chin with no large gaps around the sides of the face), masks made with breathable fabric (such as cotton), masks made with tightly woven fabric (i.e., fabrics that do not let light pass through when held up to a light source), masks with two or three layers, masks with inner filter pockets, and filtering facepiece respirators that are approved by the National Institute for Occupational Safety and Health or consistent with international standards. The following do not constitute masks for purposes of this Guidance: masks with exhalation valves, vents, or other openings; face shields only (without mask); or masks with single-layer fabric or thin fabric that does not block light.

**Guidance**

Covered contractors are responsible for ensuring that covered contractor employees comply with the workplace safety protocols detailed below. Covered contractor employees must also comply with agency COVID-19 workplace safety requirements while in Federal workplaces.

Consistent with applicable law, agencies are strongly encouraged to incorporate a clause requiring compliance with this Guidance into contracts that are not covered or directly addressed by the order because the contract is under the Simplified Acquisition Threshold as defined in section 2.101 of the FAR or is a contract or subcontract for the manufacturing of products. Agencies are also strongly encouraged to incorporate a clause requiring compliance with this Guidance into existing contracts and contract-like instruments prior to the date upon which the order requires inclusion of the clause.

1. *Vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation*

Covered contractors must ensure that all covered contractor employees are fully vaccinated for COVID-19, unless the employee is legally entitled to an accommodation. Covered contractor employees must be fully vaccinated no later than December 8, 2021. After that date, all covered contractor employees must be fully vaccinated by the first day of the period of performance on a newly awarded covered contract, and by the first day of the period of performance on an exercised option or extended or renewed contract when the clause has been incorporated into the covered contract.

A covered contractor may be required to provide an accommodation to covered contractor employees who communicate to the covered contractor that they are not vaccinated against COVID-19 because of a disability (which would include medical conditions) or because of a sincerely held religious belief, practice, or observance. A covered contractor should review and consider what, if any, accommodation it must offer. Requests for "medical accommodation" or "medical exceptions" should be treated as requests for a disability accommodation.

Should a Federal agency have an urgent, mission-critical need for a covered contractor to have covered contractor employees begin work on a covered contract or at a covered workplace before becoming fully vaccinated, the agency head may approve an exception for the covered contractor —in the case of such limited exceptions, the covered contractor must ensure these covered contractor employees are fully vaccinated within 60 days of beginning work on a covered contract or at a covered workplace. The covered contractor must further ensure that such employees comply with masking and physical distancing requirements for not fully vaccinated individuals in covered workplaces prior to being fully vaccinated.

The covered contractor must review its covered employees' documentation to prove vaccination status. Covered contractors must require covered contractor employees to show or provide their

employer with one of the following documents: a copy of the record of immunization from a health care provider or pharmacy, a copy of the COVID-19 Vaccination Record Card (CDC Form MLS-319813_r, published on September 3, 2020), a copy of medical records documenting the vaccination, a copy of immunization records from a public health or State immunization information system, or a copy of any other official documentation verifying vaccination with information on the vaccine name, date(s) of administration, and the name of health care professional or clinic site administering vaccine. Covered contractors may allow covered contractor employees to show or provide to their employer a digital copy of such records, including, for example, a digital photograph, scanned image, or PDF of such a record.

The covered contractor shall ensure compliance with the requirements in this Guidance related to the showing or provision of proper vaccination documentation.

Covered contractors are strongly encouraged to incorporate similar vaccination requirements into their non-covered contracts and agreements with non-covered contractors whose employees perform work at covered contractor workplaces but who do not work on or in connection with a Federal contract, such as those contracts and agreements related to the provision of food services, onsite security, or groundskeeping services at covered contractor workplaces.

   2. *Requirements related to masking and physical distancing while in covered contractor workplaces*

Covered contractors must ensure that all individuals, including covered contractor employees and visitors, comply with published CDC guidance for masking and physical distancing at a covered contractor workplace, as discussed further in this Guidance.

In addition to the guidance set forth below, CDC's guidance for mask wearing and physical distancing in specific settings, including healthcare, transportation, correctional and detention facilities, and schools, must be followed, as applicable.

In areas of high or substantial community transmission, fully vaccinated people must wear a mask in indoor settings, except for limited exceptions discussed in this Guidance. In areas of low or moderate community transmission, fully vaccinated people do not need to wear a mask. Fully vaccinated individuals do not need to physically distance regardless of the level of transmission in the area.

Individuals who are not fully vaccinated must wear a mask indoors and in certain outdoor settings (see below) regardless of the level of community transmission in the area. To the extent practicable, individuals who are not fully vaccinated should maintain a distance of at least six feet from others at all times, including in offices, conference rooms, and all other communal and work spaces.

Covered contractors must require individuals in covered contractor workplaces who are required to wear a mask to:

- Wear appropriate masks consistently and correctly (over mouth and nose).
- Wear appropriate masks in any common areas or shared workspaces (including open floorplan office space, cubicle embankments, and conference rooms).
- For individuals who are not fully vaccinated, wear a mask in crowded outdoor settings or during outdoor activities that involve sustained close contact with other people who are not fully vaccinated, consistent with CDC guidance.

A covered contractor may be required to provide an accommodation to covered contractor employees who communicate to the covered contractor that they cannot wear a mask because of a disability (which would include medical conditions) or because of a sincerely held religious belief, practice, or observance. A covered contractor should review and consider what, if any, accommodation it must offer.

Covered contractors may provide for exceptions to mask wearing and/or physical distancing requirements consistent with CDC guidelines, for example, when an individual is alone in an office with floor to ceiling walls and a closed door, or for a limited time when eating or drinking and maintaining appropriate distancing. Covered contractors may also provide exceptions for covered contractor employees engaging in activities in which a mask may get wet; high intensity activities where covered contractor employees are unable to wear a mask because of difficulty breathing; or activities for which wearing a mask would create a risk to workplace health, safety, or job duty as determined by a workplace risk assessment. Any such exceptions must be approved in writing by a duly authorized representative of the covered contractor to ensure compliance with this Guidance at covered contractor workplaces, as discussed further below.

Masked individuals may be asked to lower their masks briefly for identification purposes in compliance with safety and security requirements.

Covered contractors must check the CDC COVID-19 Data Tracker County View website for community transmission information in all areas where they have a covered contractor workplace at least weekly to determine proper workplace safety protocols. When the level of community transmission in the area of a covered contractor workplace increases from low or moderate to substantial or high, contractors and subcontractors should put in place more protective workplace safety protocols consistent with published guidelines. However, when the level of community transmission in the area of a covered contractor workplace is reduced from high or substantial to moderate or low, the level of community transmission must remain at that lower level for at least two consecutive weeks before the covered contractor utilizes those protocols recommended for areas of moderate or low community transmission.

> 3. *Designation by covered contractors of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces.*

Covered contractors shall designate a person or persons to coordinate implementation of and compliance with this Guidance and the workplace safety protocols detailed herein at covered contractor workplaces. The designated person or persons may be the same individual(s) responsible for implementing any additional COVID-19 workplace safety protocols required by local, State, or Federal law, and their responsibilities to coordinate COVID-19 workplace safety protocols may comprise some or all of their regular duties.

The designated individual (or individuals) must ensure that information on required COVID-19 workplace safety protocols is provided to covered contractor employees and all other individuals likely to be present at covered contractor workplaces, including by communicating the required workplace safety protocols and related policies by email, websites, memoranda, flyers, or other means and posting signage at covered contractor workplaces that sets forth the requirements and workplace safety protocols in this Guidance in a readily understandable manner. This includes communicating the COVID-19 workplace safety protocols and requirements related to masking and physical distancing to visitors and all other individuals present at covered contractor workplaces. The designated individual (or individuals) must also ensure that covered contractor employees comply with the requirements in this guidance related to the showing or provision of proper vaccination documentation.

**Frequently Asked Questions**

*Vaccination and Safety Protocols*

**Q1: How do covered contractors determine vaccination status of visitors to covered contractor workplaces?**

A: Covered contractors should post signage at entrances to covered contractor workplaces providing information on safety protocols for fully vaccinated and not fully vaccinated individuals, including the protocols defined in the masking and physical distancing section above, and instruct individuals to follow the appropriate workplace safety protocols while at the covered contractor workplace. Covered contractors may take other reasonable steps, such as by communicating workplace safety protocols to visitors prior to their arrival at a covered contractor workplace or requiring all visitors to follow masking and physical distancing protocols for not fully vaccinated individuals.

**Q2: Do covered contractors need to provide onsite vaccinations to their employees?**

A: Covered contractors should ensure their employees are aware of convenient opportunities to be vaccinated. Although covered contractors may choose to provide vaccinations at their facilities or workplaces, given the widespread availability of vaccinations, covered contractors are not required to do so.

**Q3: What should a contractor employee do if a covered contractor employee has lost or does not have a copy of required vaccination documentation?**

A: If covered contractor employees need new vaccination cards or copies of other documentation proof of vaccination, they should contact the vaccination provider site where they received their vaccine. Their provider should be able to provide them with new cards or documentation with up-to-date information about the vaccinations they have received. If the location where the covered contractor employees received their COVID-19 vaccine is no longer operating, the covered contractor employees should contact their State or local health department's immunization information system (IIS) for assistance. Covered contractor employees should contact their State or local health department if they have additional questions about vaccination cards or vaccination records.

An attestation of vaccination by the covered contractor employee is not an acceptable substitute for documentation of proof of vaccination.

**Q4: Who is responsible for determining if a covered contractor employee must be provided an accommodation because of a disability or because of a sincerely held religious belief, practice, or observance?**

A:  A covered contractor may be required to provide an accommodation to contractor employees who communicate to the covered contractor that they are not vaccinated for COVID-19, or that they cannot wear a mask, because of a disability (which would include medical conditions) or because of a sincerely held religious belief, practice, or observance. A covered contractor should review and consider what, if any, accommodation it must offer. The contractor is responsible for considering, and dispositioning, such requests for accommodations regardless of the covered contractor employee's place of performance. If the agency that is the party to the covered contract is a "joint employer" for purposes of compliance with the Rehabilitation Act and Title VII of the Civil Rights Act, both the agency and the covered contractor should review and consider what, if any, accommodation they must offer.

**Q5: Are covered contractor employees who have a prior COVID-19 infection required to be vaccinated?**

A: Yes, covered contractor employees who have had a prior COVID-19 infection are required to be vaccinated. More information from CDC can be found <u>here</u>.

**Q6: Can a covered contractor accept a recent antibody test from a covered contractor employee to prove vaccination status?**

A: No. A covered contractor cannot accept a recent antibody test from a covered contractor employee to prove vaccination status.

*Workplaces*

**Q7: Does this Guidance apply to outdoor contractor or subcontractor workplace locations?**

A: Yes, this Guidance applies to contractor or subcontractor workplace locations that are outdoors.

**Q8: If a covered contractor employee is likely to be present during the period of performance for a covered contract on only one floor or a separate area of a building, site, or facility controlled by a covered contractor, do other areas of the building, site, or facility controlled by a covered contractor constitute a covered contractor workplace?**

A: Yes, unless a covered contractor can affirmatively determine that none of its employees on another floor or in separate areas of the building will come into contact with a covered contractor employee during the period of performance of a covered contract. This would include affirmatively determining that there will be no interactions between covered contractor employees and non-covered contractor employees in those locations during the period of performance on a covered contract, including interactions through use of common areas such as lobbies, security clearance areas, elevators, stairwells, meeting rooms, kitchens, dining areas, and parking garages.

**Q9: If a covered contractor employee performs their duties in or at only one building, site, or facility on a campus controlled by a covered contractor with multiple buildings, sites, or facilities, are the other buildings, sites, or facility controlled by a covered contractor considered a covered contractor workplace?**

A: Yes, unless a covered contractor can affirmatively determine that none of its employees in or at one building, site, or facility will come into contact with a covered contractor employee during the period of performance of a covered contract. This would include affirmatively determining that there will be no interactions between covered contractor employees and non-covered contractor employees in those locations during the period of performance on a covered contract, including interactions through use of common areas such as lobbies, security clearance areas, elevators, stairwells, meeting rooms, kitchens, dining areas, and parking garages.

**Q10: Are the workplace safety protocols enumerated above the same irrespective of whether the work is performed at a covered contractor workplace or at a Federal workplace?**

A: Yes. The Guidance applies to all covered contractor employees and to all contractor or subcontractor workplace locations. While at a Federal workplace, covered contractor employees must also comply with any additional agency workplace safety requirements for that workplace. Because covered contractor employees working on a covered contract need to be fully vaccinated after December 8, 2021, covered contractor employees who work only at a Federal workplace need to be fully vaccinated by that date as well, unless legally entitled to an accommodation.

**Q11: How does this Guidance apply to covered contractor employees who are authorized under the covered contract to perform work remotely from their residence?**

A: An individual working on a covered contract from their residence is a covered contractor employee, and must comply with the vaccination requirement for covered contractor employees, even if the employee never works at either a covered contractor workplace or Federal workplace during the performance of the contract. A covered contractor employee's residence is not a covered contractor workplace, so while in the residence the individual need not comply with requirements for covered contractor workplaces, including those related to masking and physical distancing, even while working on a covered contract.

*Scope and Applicability*

**Q12: By when must the requirements of the order be reflected in contracts?**

A: Section 6 of the order lays out a phase-in of the requirements for covered contracts as follows:

11

- *Contracts awarded prior to October 15 where performance is ongoing* – the requirements must be incorporated at the point at which an option is exercised or an extension is made.
- *New contracts* – the requirements must be incorporated into contracts awarded on or after November 14. Between October 15 and November 14, agencies must include the clause in the solicitation and are encouraged to include the clause in contracts awarded during this time period but are not required to do so unless the solicitation for such contract was issued on or after October 15.

**Q13: Must the order's requirements be flowed down to all lower-tier subcontractors and, if so, who is responsible for flowing the clause down?**

A: Yes. The requirements in the order apply to subcontractors at all tiers, except for subcontracts solely for the provision of products. The prime contractor must flow the clause down to first-tier subcontractors; higher-tier subcontractors must flow the clause down to the next lower-tier subcontractor, to the point at which subcontract requirements are solely for the provision of products.

**Q14: Does the Guidance apply to small businesses?**

A: Yes, the requirement to comply with this Guidance applies equally to covered contractors regardless of whether they are a small business. This broad application of COVID-19 guidance will more effectively decrease the spread of COVID-19, which, in turn, will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at workplaces where they are performing work for the Federal Government.

**Q15: What steps are being taken to promote consistent application of the order's requirements across agencies?**

A: The FAR Council will conduct a rulemaking to amend the FAR to include a clause that requires covered contractors performing under FAR-based contracts to comply with this Guidance for contractor and subcontractor workplace locations. Prior to rulemaking, by October 8, 2021, the FAR Council will develop a clause and recommend that agencies exercise their authority to deviate from the FAR using the procedures set forth in subpart 1.4. Agencies responsible for contracts and contract-like instruments that are not subject to the FAR, such as concession contracts, will be responsible for developing appropriate guidance by October 8, 2021 to incorporate requirements into their covered instruments entered into on or after October 15, 2021.

**Q16: If the Safer Federal Workforce Task Force updates this Guidance to add new requirements, do those requirements apply to existing contracts?**

A: Yes. Covered contractors are required to, for the duration of the contract, comply with all Task Force Guidance for contractor or subcontractor workplace locations, including any new

Guidance where the OMB Director approves the Guidance and determines that adherence to the Guidance will promote economy and efficiency in Federal contracting. The Task Force and OMB plan to ensure any workplace safety protocols reflect what is necessary to decrease the spread of COVID-19.

**Q17: What constitutes work performed "in connection with" a covered contract?**

A:  Employees who perform duties necessary to the performance of the covered contract, but who are not directly engaged in performing the specific work called for by the covered contract, such as human resources, billing, and legal review, perform work in connection with a Federal Government contract.

**Q18: Do the workplace safety protocols in the Guidance apply to covered contractor employees who perform work outside the United States?**

A: No. The workplace safety protocols in the Guidance do not apply to covered contractor employees who only perform work outside the United States or its outlying areas, as those terms are defined in section 2.101 of the FAR.

*Compliance*

**Q19: Does this clause apply in States or localities that seek to prohibit compliance with any of the workplace safety protocols set forth in this Guidance?**

A: Yes. These requirements are promulgated pursuant to Federal law and supersede any contrary State or local law or ordinance. Additionally, nothing in this Guidance shall excuse noncompliance with any applicable State law or municipal ordinance establishing more protective workplace safety protocols than those established under this Guidance.

**Q20: Can a covered contractor comply with workplace safety requirements from the Occupational Safety and Health Administration, including pursuant to any current or forthcoming Emergency Temporary Standard related to COVID-19, instead of the requirements of this Guidance?**

A: No. Covered contractors must comply with the requirements set forth in this Guidance regardless of whether they are subject to other workplace safety standards.

**Q21: What is the prime contractor's responsibility for verifying that subcontractors are adhering to the mandate?**

A: The prime contractor is responsible for ensuring that the required clause is incorporated into its first-tier subcontracts in accordance with the implementation schedule set forth in section 6 of the order. When the clause is incorporated into a subcontract, a subcontractor is required to

13

comply with this Guidance and the workplace safety protocols detailed herein. Additionally, first-tier subcontractors are expected to flow the clause down to their lower-tier subcontractors in similar fashion so that accountability for compliance is fully established throughout the Federal contract supply chain for covered subcontractor employees and workplaces at all tiers through application of the clause.

# EXHIBIT C



proposed information request may be obtained by contacting the office listed below in the **FOR FURTHER INFORMATION CONTACT** section of this Notice.

**DATES:** Written comments must be submitted to the office listed in the **ADDRESSES** section below on or before November 29, 2021.

**ADDRESSES:** You may submit comments identified by Control Number 1235–0024, by either one of the following methods: *Email: WHDPRAComments@dol.gov; Mail, Hand Delivery, Courier:* Division of Regulations, Legislation, and Interpretation, Wage and Hour, U.S. Department of Labor, Room S–3502, 200 Constitution Avenue NW, Washington, DC 20210.

*Instructions:* Please submit one copy of your comments by only one method. All submissions received must include the agency name and Control Number identified above for this information collection. Because we continue to experience delays in receiving mail in the Washington, DC area, commenters are strongly encouraged to transmit their comments electronically via email or to submit them by mail early. Comments, including any personal information provided, become a matter of public record. They will also be summarized and/or included in the request for Office of Management and Budget (OMB) approval of the information collection request.

**FOR FURTHER INFORMATION CONTACT:** Robert Waterman, Division of Regulations, Legislation, and Interpretation, Wage and Hour Division, U.S. Department of Labor, Room S–3502, 200 Constitution Avenue NW, Washington, DC 20210; telephone: (202) 693–0406 (this is not a toll-free number). Copies of this notice may be obtained in alternative formats (Rich Text Format (RTF) or text format (txt), a thumb drive, an MP3 file, large print, braille, audiotape, compact disc, or other accessible format), upon request, by calling (202) 693–0023 (not a toll-free number). TTY/TTD callers may dial toll-free (877) 889–5627 to obtain information or request materials in alternative formats.

**SUPPLEMENTARY INFORMATION:**

I. *Background:* The Wage and Hour Division (WHD) of the Department of Labor administers the Fair Labor Standards Act (FLSA), 29 U.S.C. 201, *et seq..* Section 3(l) of the Act establishes a minimum age of 16 years for most non-agricultural employment, but allows the employment of 14- and 15-year olds in occupations other than manufacturing and mining if the Secretary of Labor determines such employment is confined to: (1) Periods

that will not interfere with the minor's schooling; and (2) conditions that will not interfere with the minor's health and well-being. FLSA section 11(c) requires all covered employers to make, keep, and preserve records of their employees' wages, hours, and other conditions of employment. Section 11(c) authorizes the Secretary of Labor to prescribe the recordkeeping and reporting requirements for these records. The regulations set forth reporting requirements that include a Work Study Program application and written participation agreement. In order to use the child labor work study provisions, § 570.37(b) requires a local public or private school system to file with the Wage and Hour Division Administrator an application for approval of a Work Study Program as one that does not interfere with the schooling or health and well-being of the minors involved. The regulations also require preparation of a written participation agreement for each student participating in a Work Study Program and that the teacher-coordinator, employer, and student each sign the agreement.

II. *Review Focus:* The Department of Labor is particularly interested in comments which:

• Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

• Enhance the quality, utility, and clarity of the information to be collected;

• Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

• Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submissions of responses.

III. *Current Actions:* The Department of Labor seeks approval for an extension of this information collection in order to ensure effective administration of Work Study programs.

*Type of Review:* Extension.
*Agency:* Wage and Hour Division.
*Title:* Work Study Program of the Child Labor Regulations.
*OMB Control Number:* 1235–0024.
*Affected Public:* Business or other for-profit, Not-for-profit institutions, Farms,

Federal, State, Local, or Tribal Government.

*Total Respondents:* WSP Applications: WSP; Written Participation Agreements: 500.

*Total Annual Responses:* WSP Applications: 10.

*Written Participation Agreements:* 1,000.

*Estimated Total Burden Hours:* 1,529.

*Estimated Time per Response:* WSP Application: 121 minutes; Written Participation Agreements: 31 minutes.

*Frequency:* On occasion.

*Total Burden Cost (capital/startup):* $0.

Dated: September 20, 2021.

**Amy DeBisschop,**
*Director, Division of Regulations, Legislation, and Interpretation.*

[FR Doc. 2021–20956 Filed 9–27–21; 8:45 am]

**BILLING CODE 4510–27–P**

## OFFICE OF MANAGEMENT AND BUDGET

### Determination of the Promotion of Economy and Efficiency in Federal Contracting Pursuant to Executive Order No. 14042

**AGENCY:** Executive Office of the President, Office of Management and Budget.

**ACTION:** Notice of determination.

**SUMMARY:** The Director of the Office of Management and Budget determines that compliance by Federal contractors and subcontractors with the COVID–19 workplace safety protocols detailed in the Safer Federal Workforce Task Force guidance issued on September 24, 2021 will improve economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a Federal Government contract.

**DATES:** September 24, 2021.

**ADDRESSES:** The Safer Federal Workforce Task Force Guidance for Federal Contractors and Subcontractors on COVID–19 Workplace Safety is available at: *https://www.saferfederalworkforce.gov/new/.*

**FOR FURTHER INFORMATION CONTACT:** Cristin Dorgelo, 725 17th Street N, Email address: *Cristin.a.dorgelo@omb.eop.gov,* telephone number: (202) 456–4066. Because of delays in the receipt of regular mail related to security screening, respondents are encouraged to use electronic communications.

**SUPPLEMENTARY INFORMATION:** As explained in Executive Order No. 14042

on *Ensuring Order on Ensuring Adequate COVID Safety Protocols for Federal Contractors,* compliance with COVID–19-related safety protocols improves economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a Federal Government contract. Section 2(c) of E.O. 14042 requires that, before Federal contractors and subcontractors must adhere to any guidance from the Safer Federal Workforce Task Force pursuant to Executive Order No. 14042, the Director of the Office of Management and Budget must determine that such guidance will promote economy and efficiency in Federal contracting if adhered to by Government contractors and subcontractors. Based on my review of the Safer Federal Workforce Task Force's COVID–19 Workplace Safety: Guidance for Federal Contractors and Subcontractors, scheduled for issuance on September 24, 2021, and exercising the President's authority under the Federal Property and Administrative Services Act (see 3 U.S.C. 301I) delegated to me through Executive Order No. 14042, I have determined that compliance by Federal contractors and subcontractors with the COVID–19-workplace safety protocols detailed in that guidance will improve economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a Federal Government contract.

**Shalanda Young,**
*Acting Director, Office of Management and Budget.*

[FR Doc. 2021–21184 Filed 9–24–21; 4:15 pm]

**BILLING CODE 3110–01–P**

---

## NATIONAL CAPITAL PLANNING COMMISSION

### Senior Executive Service; Performance Review Board; Members

**AGENCY:** National Capital Planning Commission.

**ACTION:** Notice of members of senior executive service performance review board.

---

**SUMMARY:** This notice announces the membership of the National Capital Planning Commission Senior Executive Service Performance Review Board in accordance with section 4314(c) of Title 5, U.S.C. and 5 CFR 430.311.

**FOR FURTHER INFORMATION CONTACT:** Debra L. Dickson, Director of Administration, National Capital

Planning Commission, 401 Ninth Street NW, Suite 500, Washington, DC 20004, (202) 482–7229.

**SUPPLEMENTARY INFORMATION:** The following persons have been appointed to serve as members of the Performance Review Board for the National Capital Planning Commission from October 1, 2021, to September 30, 2023: Paige Cottingham-Streater, Executive Director, Japan U.S. Friendship Commission; John Farrell, Executive Director, U.S. Arctic Research Commission; and Christopher J. Roscetti, Technical Director, Defense Nuclear Facilities Safety Board.

Dated: September 22, 2021.

**Debra L. Dickson,**
*Director of Administration, National Capital Planning Commission.*

[FR Doc. 2021–20961 Filed 9–27–21; 8:45 am]

**BILLING CODE P**

---

## NATIONAL CREDIT UNION ADMINISTRATION

**[NCUA 2021–0102]**

**RIN 3133–AF39**

### Request for Information and Comment on Digital Assets and Related Technologies

**AGENCY:** National Credit Union Administration (NCUA).

**ACTION:** Request for information and comment; extension of comment period.

---

**SUMMARY:** On July 27, 2021, the NCUA Board (Board) published in the **Federal Register** a document entitled ''Request for Information and Comment on Digital Assets and Related Technologies'' (RFI) and invited comments from interested parties regarding the current and potential impact of activities connected to digital assets and related technologies on federally insured credit unions (FICUs), related entities, and the NCUA. The Board noted that it was broadly interested in receiving input on commenters' views in this area, including current and potential uses in the credit union system, and the risks associated with them. To allow interested persons more time to consider and submit their comments, the Board has decided to extend the comment period for an additional 30 days.

**DATES:** The comment period for the RFI published July 27, 2021, at 86 FR 40213, is extended. Responses to the RFI must now be received on or before October 27, 2021.

**ADDRESSES:** You may submit comments by any one of the following methods

(Please send comments by one method only):

• *Federal eRulemaking Portal: http:// www.regulations.gov.* Follow the instructions for submitting comments for NCUA Docket 2021–0102.

• *Fax:* (703) 518–6319. Include ''[Your name] Comments on ''Request for Information and Comment on Digital Assets and Related Technologies.''

• *Mail:* Address to Melane Conyers-Ausbrooks, Secretary of the Board, National Credit Union Administration, 1775 Duke Street, Alexandria, Virginia 22314–3428.

• *Hand Delivery/Courier:* Same as mailing address.

*Public Inspection:* You may view all public comments on the Federal eRulemaking Portal at *http:// www.regulations.gov* as submitted, except for those we cannot post for technical reasons. NCUA will not edit or remove any identifying or contact information from the public comments submitted. Due to social distancing measures in effect, the usual opportunity to inspect paper copies of comments in the NCUA's law library is not currently available. After social distancing measures are relaxed, visitors may make an appointment to review paper copies by calling (703) 518–6540 or emailing *OGCMail@ncua.gov.*

**FOR FURTHER INFORMATION CONTACT:** *Policy and Analysis:* Scott Borger, Senior Financial Modeler and Todd Sims, National Payment Systems Officer, Office of National Examinations and Supervision, (703) 518–6640; *Legal:* Thomas Zells, Senior Staff Attorney, Office of General Counsel, (703) 518–6540; or by mail at National Credit Union Administration, 1775 Duke Street, Alexandria, VA 22314.

**SUPPLEMENTARY INFORMATION:** On July 27, 2021, the Board published in the **Federal Register** an RFI inviting comments from interested parties regarding the current and potential impact of activities connected to digital assets and related technologies on FICUs, related entities, and the NCUA.[1] The Board published the RFI with the aim of engaging the broad credit union industry and other stakeholders and learning how emerging DLT and DeFi applications are viewed and used. The RFI emphasized that the NCUA hopes to learn how the credit union community is using these emerging technologies and gain additional feedback as to the role the NCUA can play in safeguarding the financial system and consumers in the context of these emerging technologies. In order to continue to

---

[1] 86 FR 40213 (July 27, 2021).

# EXHIBIT D

September 30, 2021

MEMORANDUM FOR CHIEF ACQUISITION OFFICERS
                            SENIOR PROCUREMENT EXECUTIVES
                            DEFENSE ACQUISITION REGULATIONS COUNCIL
                            CIVILIAN AGENCY ACQUISITION COUNCIL

FROM:              Lesley A. Field   LESLEY FIELD   Digitally signed by LESLEY FIELD
                                                    Date: 2021.09.30 16:48:42 -04'00'
                   Acting Administrator
                        for Federal Procurement Policy
                   Office of Management and Budget

                   John M. Tenaglia   TENAGLIA.JOHN.M.115494592   Digitally signed by
                                      6                           TENAGLIA.JOHN.M.1154945926
                                                                  Date: 2021.09.30 17:04:52 -04'00'
                   Principal Director, Defense Pricing and Contracting
                   Department of Defense

                                       DocuSigned by:
                   Jeffrey A. Koses    Jeffrey A. Koses
                                       21BD80B9E8AC4A0...
                   Senior Procurement Executive &
                   Deputy Chief Acquisition Officer
                   Office of Acquisition Policy
                   General Services Administration

                   Karla Smith Jackson   Karla Jackson   Digitally signed by Karla Jackson
                                                         Date: 2021.09.30 16:53:01 -04'00'
                   Senior Procurement Executive
                   Assistant Administrator for Procurement
                   National Aeronautics and Space Administration

SUBJECT:       Issuance of Agency Deviations to Implement Executive Order 14042

        The purpose of this memorandum is to provide agencies that award contracts under the
Federal Acquisition Regulation (FAR) with initial direction for the incorporation of a clause into
their solicitations and contracts to implement guidance issued by the Safer Federal Workforce
Task Force (Task Force) pursuant to Executive Order 14042 ("the order").

**Background**

        The order directs agencies to ensure that the parties that contract with the Federal
Government provide adequate COVID-19 safeguards to their workers performing on or in
connection with the contract to decrease the spread of COVID-19, reduce worker absence, lower
labor costs, and improve the efficiency of contractors and subcontractors at sites where they are
performing work.

        On September 24, 2021, the Task Force issued guidance to implement the order, COVID-
19 Workplace Safety: Guidance for Federal Contractors and Subcontractors. The Task Force
guidance requires:

- All covered contractor employees to be fully vaccinated for COVID-19 by December 8, 2021, except in limited circumstances where an employee is legally entitled to an accommodation;

- All individuals, including covered contractor employees and visitors, to comply with published Centers for Disease Control and Prevention guidance for masking and physical distancing at a covered contractor workplace, as discussed in the Task Force guidance; and

- Covered contractors to designate a person or persons to coordinate implementation of and compliance with the Task Force guidance and the required workplace safety protocols at covered contractor workplaces.

Section 3(a) of the order directs the Federal Acquisition Regulatory Council (FAR Council) to develop a contract clause requiring contractors and subcontractors at any tier to comply with all guidance for contractor or subcontractor workplace locations published by the Task Force and to provide initial policy direction to acquisition offices for use of the clause by recommending that agencies exercise their authority under FAR subpart 1.4., Deviations from the FAR.

**Guidance**

The FAR Council has developed the attached clause pursuant to section 3(a) of the order to support agencies in meeting the applicability requirements and deadlines set forth in the order. Contracting officers should follow the direction for use of the clause set forth in the deviations issued by their respective agencies.

Agencies are reminded of the following points as they develop and issue their deviations:

1. <u>Applicability and effective dates</u>. In accordance with section 5 of the order, agencies are required to include an implementing clause in solicitations and contracts for services, including construction, in accordance with the following dates specified in section 6 of the order:

- new contracts awarded on or after November 14 from solicitations issued before October 15 (this includes new orders awarded on or after November 14 from solicitations issued before October 15 under existing indefinite-delivery contracts);
- new solicitations issued on or after October 15 and contracts awarded pursuant to those solicitations (this includes new solicitations issued on or after October 15 for orders awarded pursuant to those solicitations under existing indefinite-delivery contracts);
- extensions or renewals of existing contracts and orders awarded on or after October 15, 2021; and
- options on existing contracts and orders exercised on or after October 15, 2021.

To maximize the goal of getting more people vaccinated and decrease the spread of COVID-19, the Task Force strongly encourages agencies to apply the requirements of its guidance broadly, consistent with applicable law, by including the clause in:

- contracts that have been or will be awarded prior to November 14 on solicitations issued before October 15; and
- contracts that are not covered or directly addressed by the order because the contract or subcontract is under the simplified acquisition threshold or is a contract or subcontract for the manufacturing of products.

2. Exclusions.  The clause shall not be applied to:

- contracts and subcontracts with Indian Tribes under the Indian Self-Determination and Education Assistance Act (the exclusion would not apply to a procurement contract or subcontract under the FAR to an Indian-owned or tribally-owned business entity); or
- solicitations and contracts if performance is outside the United States or its outlying areas (the exclusion is limited to employees who are performing work only outside the U.S. or its outlying areas).

3. Timing of deviations. Agencies should act expeditiously to issue their deviations so that their contracting officers may begin to apply the clause on or before October 15, as explained above.  Agencies should review, and update as necessary, any relevant guidance previously provided to contractors to ensure consistency with the deviated FAR text.

4. Civilian agency coordination of deviations. Civilian agencies that adopt the attached clause language without change in their deviations will be presumed to have consulted with the Chair of the Civilian Agency Acquisition Council (CAAC) required by FAR 1.404(a)(1). However, if a civilian agency intends to use clause text different than the deviated clause text provided, the agency must consult with the CAAC Chair, William Clark, who will consult with OMB and the Task Force to ensure consistency with Administration policy.  Any such request must be emailed to william.clark@gsa.gov.

Once processed, agencies are requested to share the deviation widely among their workforces to ensure full awareness of, and compliance with, the order.

Civilian agencies should furnish a copy of their approved class deviations (including direction to the workforce, prescription for use of clause, and clause text) to the FAR Secretariat, General Services Administration, by emailing the deviation to GSARegSec@gsa.gov. Agencies must submit their class deviations no later than October 15, 2021.

5. Length of deviation.  The FAR Council has opened a case (FAR Case 2021-021, Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors) to make appropriate amendments in the FAR to reflect the requirements of the order.  Agencies are encouraged to make their deviations effective until the FAR is amended or the deviation is otherwise rescinded by the agency.

Attachment

**FAR Deviation Clause**

**Executive Order 14042**
**Ensuring Adequate COVID Safety Protocols for Federal Contractors**

Baseline is FAC 2021-07, published in the Federal Register on August 11, 2021.

*September 24, 2021*

**PART 52—SOLICITATION PROVISIONS AND CONTRACT CLAUSES**

*****

**Subpart 52.2—Text of Provisions and Clauses**

*****

**[52.223-99 Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors.**

**ENSURING ADEQUATE COVID-19 SAFETY PROTOCOLS FOR FEDERAL CONTRACTORS (OCT 2021) (DEVIATION)**

**(a) *Definition*. As used in this clause -**

***United States or its outlying areas* means—**

> **(1) The fifty States;**
>
> **(2) The District of Columbia;**
>
> **(3) The commonwealths of Puerto Rico and the Northern Mariana Islands;**
>
> **(4) The territories of American Samoa, Guam, and the United States Virgin Islands; and**
>
> **(5) The minor outlying islands of Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Islands, Navassa Island, Palmyra Atoll, and Wake Atoll.**

**(b) *Authority*. This clause implements Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, dated September 9, 2021 (published in the Federal Register on September 14, 2021, 86 FR 50985).**

**(c)** *Compliance.* **The Contractor shall comply with all guidance, including guidance conveyed through Frequently Asked Questions, as amended during the performance of this contract, for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force (Task Force Guidance) at** https://www.saferfederalworkforce.gov/contractors/

**(d)** *Subcontracts.* **The Contractor shall include the substance of this clause, including this paragraph (d), in subcontracts at any tier that exceed the simplified acquisition threshold, as defined in Federal Acquisition Regulation 2.101 on the date of subcontract award, and are for services, including construction, performed in whole or in part within the United States or its outlying areas.**

**(End of clause)]**

*****

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **THE STATE OF TEXAS, et al.** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | **No: _____** |
| **JOSEPH R. BIDEN in his official capacity as** | § | |
| **President of the United States, et al.,** | § | |
| *Defendants.* | § | |
| | § | |

**DECLARATION OF ERIC BENTLEY**

My name is Eric Bentley, and I am over the age of 18 and fully competent in all respects
to make this declaration. I have personal knowledge and expertise of the matters herein stated.

1.      I am the Vice Chancellor and General Counsel of the Texas Tech University System
("TTUS") and have been in my current position since September of 2018. In this capacity, I
oversee the legal matters for TTUS and its five component institutions: Texas Tech University
("TTU"), Texas Tech University Health Sciences Center ("TTUHSC"), Texas Tech University Health
Sciences Center El Paso ("TTUHSC EP"), Angelo State University ("ASU"), and Midwestern State
University ("MSU") (hereinafter collectively referred to as "TTUS").

2.      TTUS has numerous contracts with federal agencies that provide millions of dollars
in funding, significant research, and important objectives that are critical to the educational
mission of TTUS. Since Joe Biden's Executive Order 14042 ("Executive Order") was issued, some
of the federal agencies that contract with TTUS have communicated with component institutions
within TTUS regarding implementation of a contract provision to be in compliance with the

Executive Order. Some of these instances include, but are not limited to, the instances described herein.

3.      On October 27, 2021, TTU received notice from Sandia National Lab ("Sandia" or "SNL") (managed by NTESS – National Technology and Engineering Solutions of Sandia LLC) regarding their process for the implementation of the vaccine mandate contained in the Executive Order. In this notice, Sandia directed subcontractors to review the Covid 19 Workplace Safety Guidance for Federal Contractors and Subcontractors issued by the Safer Federal Workforce Task Force ("Task Force"). Sandia additionally stated covered subcontractors would be required to ensure their employees comply with the vaccine mandate and guidance published by the Task Force, with such requirements passed down to their lower tiered subcontractors. The notice stated that over the next few weeks, NTESS would start to include a new subcontract clause ensuring adequate COVID-19 protocols for subcontractors in new subcontracts. NTESS additionally indicated that they would notify current subcontractors if NTESS planned to add the clause to existing subcontracts. Within this notice, NTESS indicated that the vaccine mandate applies to (a) any subcontractor employee working on a covered contract, (b) any subcontractor employee working in connection with a covered contract, and (c) any subcontractor employee who would come into contact with individuals identified in (a) or (b) at subcontractor facilities (identified as a covered workplace location).

4.      TTU currently has four awards from Sandia. We have one additional award currently under negotiation. Combined, these awards amount to over $2 million currently, with the cumulative impact to TTU over the years that TTU has partnered with Sandia in excess of $10 million. Of the four awards currently held by TTU with Sandia, two currently meet or exceed the

Simplified Acquisition Threshold that would trigger the vaccine mandate. The additional award under negotiation also exceeds the Simplified Acquisition Threshold.

5.      The award under negotiation relates to the Wind Farm project that began in 2011 at the SNL/TTU Experimental Wind Farm. Since that time, it has evolved into the current SWiFT – Scaled Wind Farm Technology project. Since 2011, TTU has received approximately $2.5 million from Sandia for this project. Additionally, this project has assisted in generating several additional awards, as well as partnerships with other research collaborators. Sandia provided an additional $515,000 for an environmental research impact study specific to wind turbines, as well as $25,000 for a student intern program specific to wind engineering. Funding from Sandia has helped support approximately 25 graduate and undergraduate students. Sandia continues to make investments in the Wind Farm for future research. Losing this collaboration may affect future funding opportunities from Sandia, as well as other research partners that rely on the research from SWiFT. Additionally, it may affect the research space availability for both faculty and students studying wind engineering.

6.      TTU is currently under contract with NASA in an agreement that will be subject to renewal or extension in the Spring of 2022. On October 15, 2021, TTU received correspondence from NASA requesting that TTU sign a modification to the NASA contract incorporating clause 52.223-99 (Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors to implement the requirements of the Executive Order). The correspondence from NASA requested the amendment be signed and returned ASAP to ensure compliance with the directive.

7.      The current agreement TTU has with NASA exceeds $3 million, with an additional $1 million expected to be allocated for the final phase of the project. Consequently, the current

agreement meets the Simplified Acquisition Threshold. This Agreement is not, however, up for renewal as the current term does not expire until February 2022. In addition to one dedicated faculty member on this project, TTU uses project funds to pay two subcontractors who have substantial participation on the project, including several engineers and support personnel. Loss of this contract would result in the loss of these relationships as TTU would be unable to engage these subcontractors without the project funds.

8.      TTU has a long-standing relationship with NASA. For example, since 2008, TTU has received approximately $5 million in research funding from NASA.  Due to the nature of this specific project, should it be lost before completion of the final phase, the initial time and money spent on the project would be rendered useless. The research and innovations achieved by TTU and its subcontractors related to this project would not be fulfilled, thereby hindering TTU's research objectives.

9.      On October 21, 2021, TTUHSC received a memorandum from the U.S. Department of Justice Federal Bureau of Prisons regarding their process for the implementation of the Federal Vaccine Mandate. In this memorandum, the Bureau of Prisons stated that if TTUHSC's contract is identified as having activities that require immediate implementation the Bureau of Prisons would issue a bilateral modification as soon as practicable.

10.     The memorandum also stated that, in the interim, onsite contractor employees are required to comply with COVID-19 protocols. To allow the Bureau of Prisons to determine which protocols apply to onsite contractor employees, TTUHSC is required to (i) provide a roster of contract employees who are working onsite at a Department of Justice facility, annotating the

vaccination status of each employee within seven days of receipt of the Memorandum and (ii) collect and retain a Certification of Vaccination Form for each identified employee.

11.     TTUHSC was required to acknowledge receipt of the memorandum within 24 hours. TTUHSC acknowledged receipt and advised the Bureau of Prisons that it currently has no onsite contractor employees because all services are performed at TTUHSC. TTUHSC received a follow-up email from the Bureau of Prisons once again requesting a completed roster of onsite contractor employees. The current agreement TTUHSC has with the Bureau of Prisons totals in excess of $3 million.

12.     TTU entered into a 50-year ground lease with the U.S. Department of Agriculture ("USDA") for use of 50 acres of land on the TTU campus for nominal consideration in 1990. This lease is not subject to renewal or extension until 2040. On October 27, 2021, TTU received correspondence from the USDA indicating the USDA was strongly encouraged contractors holding leases that exceed the Simplified Acquisition Threshold to accept and incorporate the FAR clause derived from Executive Order by means of a contract modification at this time. The USDA further indicated that the modification to incorporate the FAR Clause was mandatory before the USDA will renew or extend the period of performance of a contract or exercise an option. For contracts below the Simplified Acquisition Threshold, the USDA similarly strongly encouraged contactors to accept the modification at this time.

13.     The requested modification made no other changes to the agreement other than the inclusion of the FAR clause related to Executive Order 14042. The lease in question is for nominal consideration and is therefore below the Simplified Acquisition Threshold.

14.     All the facts and information contained within this declaration are within my personal knowledge and are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day, October 2021, in Lubbock, Texas.

ERIC BENTLEY