# EXHIBIT A

BRIEFING ROOM

# Fact Sheet: Biden Administration Announces Details of Two Major Vaccination Policies

NOVEMBER 04, 2021 • STATEMENTS AND RELEASES

*New OSHA and CMS Rules Mean Two-Thirds of All Workers Now Covered by Vaccination Rules*

Thanks to President Biden's focus on getting Americans vaccinated, 70 percent of adult Americans are now fully vaccinated—up from less than one percent when the President took office. This is significant progress, made possible by a vaccinations program that made shots free and convenient for months. But more vaccinations are needed to save lives, protect the economy, and accelerate the path out of the pandemic. To that end, in July, President Biden began rolling out vaccination requirements for federal employees and contractors and calling on employers to do the same. Thousands of organizations across the country have answered the President's call, and vaccination requirements have already helped reduce the number of unvaccinated Americans by approximately 40 percent since July.

Today, the Biden Administration is announcing the details of two policies to fight COVID-19 that will drive even more progress and result in millions of Americans getting vaccinated, protecting workers, preventing hospitalization, saving lives, and strengthening the economy.

First, the Department of Labor's Occupational Safety and Health Administration (OSHA) is announcing the details of a requirement for employers with 100 or more employees to ensure each of their workers is fully vaccinated or tests for COVID-19 on at least a weekly basis. The OSHA rule will also require that these employers provide paid-time for employees to get vaccinated, and ensure all unvaccinated workers wear a face mask in the workplace. OSHA has a strong 50-year record of requiring employers to take common sense actions to prevent workers from getting sick or injured on the job. This rule will cover 84 million employees.

Second, the Centers for Medicare & Medicaid Services (CMS) at the Department of Health and Human Services is announcing the details of its requirement that health care workers at facilities participating in Medicare and Medicaid are fully vaccinated. The rule applies to more

than 17 million workers at approximately 76,000 health care facilities, including hospitals and long-term care facilities.

The Administration has previously implemented policies requiring millions of federal employees and federal contractors to be fully vaccinated. To make it easy for businesses and workers to comply, the Administration is announcing today that the deadline for workers to receive their shots will be the same for the OSHA rule, the CMS rule, and the previously-announced federal contractor vaccination requirement. Employees falling under the ETS, CMS, or federal contractor rules will need to have their final vaccination dose – either their second dose of Pfizer or Moderna, or single dose of Johnson & Johnson – by January 4, 2022. OSHA is also clarifying that it will not apply its new rule to workplaces covered by either the CMS rule or the federal contractor vaccination requirement. And, both OSHA and CMS are making clear that their new rules preempt any inconsistent state or local laws, including laws that ban or limit an employer's authority to require vaccination, masks, or testing.

The Administration is calling on all employers to ensure that as many of their workers are vaccinated as quickly as possible. As detailed in a recent White House report, vaccination requirements work and are good for the economy. Vaccination requirements have increased vaccination rates by more than 20 percentage points – to over 90 percent – across a wide range of businesses and organizations. According to Wall Street analysts, vaccination requirements could result in as many as 5 million American workers going back to work, and a survey of prominent, independent economists found unanimous agreement that vaccination requirements will "promote a faster and stronger economic recovery."

Today's announcements include:

**New Vaccination Requirement for Employers With 100 or More Employees:** OSHA is issuing a COVID-19 Vaccination and Testing Emergency Temporary Standard (ETS) to require employers with 100 or more employees (i.e., "covered employers") to:

- **Get Their Employees Vaccinated by January 4th and Require Unvaccinated Employees to Produce a Negative Test on at Least a Weekly Basis:** All covered employers must ensure that their employees have received the necessary shots to be fully vaccinated – either two doses of Pfizer or Moderna, or one dose of Johnson & Johnson – by January 4th. After that, all covered employers must ensure that any employees who have not received the necessary shots begin producing a verified negative test to their employer on at least a weekly basis, and they must remove from the workplace any employee who

receives a positive COVID-19 test or is diagnosed with COVID-19 by a licensed health care provider. The ETS lays out the wide variety of tests that comply with the standard. Given that vaccines are safe, free, and the most effective way for workers to be protected from COVID-19 transmission at work, the ETS does not require employers to provide or pay for tests. Employers may be required to pay for testing because of other laws or collective bargaining agreements.

- **Pay Employees for the Time it Takes to Get Vaccinated:** All covered employers are required to provide paid-time for their employees to get vaccinated and, if needed, sick leave to recover from side effects experienced that keep them from working.

- **Ensure All Unvaccinated Employees are Masked:** All covered employers must ensure that unvaccinated employees wear a face mask while in the workplace.

- **Other Requirements and Compliance Date:** Employers are subject to requirements for reporting and recordkeeping that are spelled out in the detailed OSHA materials available here . While the testing requirement for unvaccinated workers will begin after January 4th, employers must be in compliance with all other requirements – such as providing paid-time for employees to get vaccinated and masking for unvaccinated workers – on December 5th. The Administration is calling on all employers to step up and make these changes as quickly as possible.

**New Vaccination Requirements for Health Care Workers:** CMS is requiring workers at health care facilities participating in Medicare or Medicaid to have received the necessary shots to be fully vaccinated – either two doses of Pfizer or Moderna, or one dose of Johnson & Johnson – by January 4th. The rule covers approximately 76,000 health care facilities and more than 17 million health care workers – the majority of health care workers in America – and will enhance patient safety in health care settings. The rule applies to employees regardless of whether their positions are clinical or non-clinical and includes employees, students, trainees, and volunteers who work at a covered facility that receives federal funding from Medicare or Medicaid. It also includes individuals who provide treatment or other services for the facility under contract or other arrangements. Among the facility types covered by the rule are hospitals, ambulatory surgery centers, dialysis facilities, home health agencies, and long-term care facilities. Today's action will help provide patients assurance about the vaccination status of those delivering care, create a level playing field across health care facilities, and help to address challenges facilities have faced with staff sickness and quarantines impacting delivery of care.

**Streamlining Implementation and Setting One Deadline Across Different Vaccination Requirements:** The rules released today ensure employers know which requirements apply to

11/14/21, 2:15 PM  Fact Sheet: Biden Administration Announces Details of Two Major Vaccination Policies | The White House

Case 3:21-cv-00309  Document 6-1  Filed on 11/15/21 in TXSD  Page 5 of 136

which workplaces. Federal contractors may have some workplaces subject to requirements for federal contractors and other workplaces subject to the newly-released COVID-19 Vaccination and Testing ETS. To make it easy for all employers to comply with the requirements, the deadline for the federal contractor vaccination requirement will be aligned with those for the CMS rule and the ETS. Employees falling under the ETS, CMS, or federal contractor rules will need to have their final vaccination dose – either their second dose of Pfizer or Moderna, or single dose of Johnson & Johnson – by January 4, 2022. This will make it easier for employers to ensure their workforce is vaccinated, safe, and healthy, and ensure that federal contractors implement their requirements on the same timeline as other employers in their industries. And, the newly-released ETS will not be applied to workplaces subject to the federal contractor requirement or CMS rule, so employers will not have to track multiple vaccination requirements for the same employees.

# EXHIBIT B



GOVERNOR GREG ABBOTT

August 25, 2021

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
____2 PM____ O'CLOCK
AUG 2 5 2021
Secretary of State

Mr. Joe A. Esparza
Deputy Secretary of State
State Capitol Room 1E.8
Austin, Texas 78701

Dear Deputy Secretary Esparza:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

Executive Order No. GA-39 relating to prohibiting vaccine mandates and vaccine passports subject to legislative action.

The original executive order is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

# 𝕴𝖝𝖊𝖈𝖚𝖙𝖎𝖛𝖊 𝕺𝖗𝖉𝖊𝖗

**BY THE**
**GOVERNOR OF THE STATE OF TEXAS**

**Executive Department**
**Austin, Texas**
**August 25, 2021**

**EXECUTIVE ORDER**
**GA 39**

*Relating to prohibiting vaccine mandates and vaccine passports*
*subject to legislative action.*

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all Texas counties; and

WHEREAS, in each subsequent month effective through today, I have renewed the COVID-19 disaster declaration for all Texas counties; and

WHEREAS, I have issued a series of executive orders aimed at protecting the health and safety of Texans, ensuring uniformity throughout Texas, and achieving the least restrictive means of combatting the evolving threat to public health; and

WHEREAS, COVID-19 vaccines are strongly encouraged for those eligible to receive one, but have always been voluntary for Texans; and

WHEREAS, I issued Executive Orders GA-35 and GA-38, addressing COVID-19 vaccines administered under an "emergency use authorization" by prohibiting vaccine mandates from governmental entities and by prohibiting "vaccine passports" from governmental entities and certain others; and

WHEREAS, subsequently, on August 23, 2021, while the legislature was already convened in a special session, the U.S. Food and Drug Administration (FDA) approved one of the COVID-19 vaccines for certain age groups, such that this vaccine is no longer administered under an emergency use authorization for those age groups; and

WHEREAS, while this COVID-19 vaccine is now FDA-approved for certain age groups, others are not yet approved and still are administered under an emergency use authorization; and

WHEREAS, through Chapter 161 of the Texas Health and Safety Code, as well as other laws including Chapters 38 and 51 of the Texas Education Code, the legislature has established its primary role over immunizations, and all immunization laws and regulations in Texas stem from the laws established by the legislature; and

WHEREAS, in other contexts where the legislature has imposed immunization requirements, it has also taken care to provide exemptions that allow people to opt out of being forced to take a vaccine; and

WHEREAS, given the legislature's primacy and the need to avoid a patchwork of regulations with respect to vaccinations, it is appropriate to maintain the status quo of

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2 PM        O'CLOCK

AUG 2 5 2021

*Governor Greg Abbott*                                    *Executive Order GA-39*
August 25, 2021                                                            Page 2

prohibiting vaccine mandates through executive order while allowing the legislature to consider this issue while in session; and

WHEREAS, in this instance, given the legislature's prior actions, maintaining the status quo of prohibiting vaccine mandates and ensuring uniformity pending the legislature's consideration means extending the voluntariness of COVID-19 vaccinations to all COVID-19 vaccinations, regardless of regulatory status; and

WHEREAS, I am also adding this issue to the agenda for the Second Called Session of the legislature that is currently convened so that the legislature has the opportunity to consider this issue through legislation; and

WHEREAS, I will rescind this executive order upon the effective date of such legislation;

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective immediately:

1.   No governmental entity can compel any individual to receive a COVID-19 vaccine. I hereby suspend Section 81.082(f)(1) of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that no governmental entity can compel any individual to receive a COVID-19 vaccine.

2.   State agencies and political subdivisions shall not adopt or enforce any order, ordinance, policy, regulation, rule, or similar measure that requires an individual to provide, as a condition of receiving any service or entering any place, documentation regarding the individual's vaccination status for any COVID-19 vaccine. I hereby suspend Section 81.085(i) of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to enforce this prohibition. This paragraph does not apply to any documentation requirements necessary for the administration of a COVID-19 vaccine.

3.   Any public or private entity that is receiving or will receive public funds through any means, including grants, contracts, loans, or other disbursements of taxpayer money, shall not require a consumer to provide, as a condition of receiving any service or entering any place, documentation regarding the consumer's vaccination status for any COVID-19 vaccine. No consumer may be denied entry to a facility financed in whole or in part by public funds for failure to provide documentation regarding the consumer's vaccination status for any COVID-19 vaccine.

4.   Nothing in this executive order shall be construed to limit the ability of a nursing home, state supported living center, assisted living facility, or long-term care facility to require documentation of a resident's vaccination status for any COVID-19 vaccine.

5.   This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster. Pursuant to Section 418.016(a) of the Texas Government Code, I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
____2PM____ O'CLOCK

AUG 2 5 2021

*Governor Greg Abbott*
August 25, 2021

*Executive Order GA-39*
Page 3

other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions in response to the COVID-19 disaster that are inconsistent with this executive order.

This executive order supersedes only paragraph No. 2 of Executive Order GA-38, and does not supersede or otherwise affect the remaining paragraphs of Executive Order GA-38. This executive order shall remain in effect and in full force unless it is modified, amended, rescinded, or superseded by the governor. This executive order may also be amended by proclamation of the governor.

Given under my hand this the 25th day of August, 2021.

GREG ABBOTT
Governor

ATTESTED BY:

JOE A. ESPARZA
Deputy Secretary of State

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2PM O'CLOCK

AUG 2 5 2021

# EXHIBIT C



GOVERNOR GREG ABBOTT

October 11, 2021

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
4:30pm O'CLOCK

OCT 11 2021

Secretary of State

Mr. Joe A. Esparza
Deputy Secretary of State
State Capitol Room 1E.8
Austin, Texas  78701

Dear Deputy Secretary Esparza:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

> Executive Order No. GA-40 relating to prohibiting vaccine mandates, subject to legislative action.

The original executive order is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

# Executive Order

## BY THE
## GOVERNOR OF THE STATE OF TEXAS

**Executive Department**
**Austin, Texas**
**October 11, 2021**

### EXECUTIVE ORDER
### GA 40

*Relating to prohibiting vaccine mandates,*
*subject to legislative action.*

——————————————

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all Texas counties; and

WHEREAS, in each subsequent month effective through today, I have renewed the COVID-19 disaster declaration for all Texas counties; and

WHEREAS, I have issued a series of executive orders aimed at protecting the health and safety of Texans, ensuring uniformity throughout Texas, and achieving the least restrictive means of combatting the evolving threat to public health; and

WHEREAS, COVID-19 vaccines are strongly encouraged for those eligible to receive one, but must always be voluntary for Texans; and

WHEREAS, I issued Executive Orders GA-35, GA-38, and GA-39 to prohibit governmental entities and certain others from imposing COVID-19 vaccine mandates or requiring vaccine passports; and

WHEREAS, in yet another instance of federal overreach, the Biden Administration is now bullying many private entities into imposing COVID-19 vaccine mandates, causing workforce disruptions that threaten Texas's continued recovery from the COVID-19 disaster; and

WHEREAS, countless Texans fear losing their livelihoods because they object to receiving a COVID-19 vaccination for reasons of personal conscience, based on a religious belief, or for medical reasons, including prior recovery from COVID-19; and

WHEREAS, through Chapter 161 of the Texas Health and Safety Code, as well as other laws including Chapters 38 and 51 of the Texas Education Code, the legislature has established its primary role over immunizations, and all immunization laws and regulations in Texas stem from the laws established by the legislature; and

WHEREAS, the legislature has taken care to provide exemptions that allow people to opt out of being forced to take a vaccine for reasons of conscience or medical reasons; and

WHEREAS, I am adding this issue to the agenda for the Third Called Session of the legislature that is currently convened so that the legislature has the opportunity to consider this issue through legislation; and

WHEREAS, I will rescind this executive order upon the effective date of such legislation;

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
4:30PM O'CLOCK

OCT 1 1 2021

*Governor Greg Abbott*
October 11, 2021

*Executive Order GA-40*
Page 2

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective immediately:

1.　No entity in Texas can compel receipt of a COVID-19 vaccine by any individual, including an employee or a consumer, who objects to such vaccination for any reason of personal conscience, based on a religious belief, or for medical reasons, including prior recovery from COVID-19. I hereby suspend all relevant statutes to the extent necessary to enforce this prohibition.

2.　The maximum fine allowed under Section 418.173 of the Texas Government Code and the State's emergency management plan shall apply to any "failure to comply with" this executive order. Confinement in jail is not an available penalty for violating this executive order.

3.　This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster. Pursuant to Section 418.016(a) of the Texas Government Code, I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions in response to the COVID-19 disaster that are inconsistent with this executive order.

This executive order does not supersede Executive Orders GA-13, GA-37, GA-38, or GA-39. This executive order shall remain in effect and in full force unless it is modified, amended, rescinded, or superseded by the governor. This executive order may also be amended by proclamation of the governor.

Given under my hand this the 11th day of October, 2021.

GREG ABBOTT
Governor

ATTESTED BY:

JOE A. ESPARZA
Deputy Secretary of State

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
4:30 pm O'CLOCK

OCT 1 1 2021

# EXHIBIT D

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2021

Lyle W. Cayce
Clerk

No. 21-60845

BST Holdings, L.L.C.; RV Trosclair, L.L.C.; Trosclair
Airline, L.L.C.; Trosclair Almonaster, L.L.C.;
Trosclair and Sons, L.L.C.; Trosclair ; Trosclair,
Incorporated; Trosclair Carrollton, L.L.C.; Trosclair
Claiborne, L.L.C.; Trosclair Donaldsonville, L.L.C.;
Trosclair Houma, L.L.C.; Trosclair Judge Perez, L.L.C.;
Trosclair Lake Forest, L.L.C.; Trosclair Morrison,
L.L.C.; Trosclair Paris, L.L.C.; Trosclair Terry, L.L.C.;
Trosclair Williams, L.L.C.; Ryan Dailey; Jasand
Gamble; Christopher L. Jones; David John Loschen;
Samuel Albert Reyna; Kip Stovall; Answers in Genesis,
Incorporated; American Family Association,
Incorporated; Burnett Specialists; Choice Staffing,
L.L.C.; Staff Force, Incorporated; Leadingedge
Personnel, Limited; State of Texas; HT Staffing,
Limited; doing business as HT Group; The State of
Louisiana; Cox Operating, L.L.C.; Dis-Tran Steel,
L.L.C.; Dis-Tran Packaged Substations, L.L.C.; Beta
Engineering, L.L.C. Optimal Field Services, L.L.C.; The
State of Mississippi; Gulf Coast Restaurant Group,
Incorporated; The State of South Carolina; The State
of Utah; Word of God Fellowship, Incorporated, doing
busines as Daystar Television Network,

*Petitioners*,

*versus*

Occupational Safety and Health Administration,
United States Department of Labor; United States

No. 21-60845

Department of Labor; Martin J. Walsh, Secretary, U.S.
Department of Labor; Douglas Parker, in his Official
Capacity as Assistant Secretary of Labor for
Occupational Safety and Health,

*Respondents.*

---

Petition for Review of
Occupational Safety and Health Administration
Emergency Temporary Standard

---

Before Jones, Duncan, and Engelhardt, *Circuit Judges.*

Kurt D. Engelhardt, *Circuit Judge*:

The Occupational Safety and Health Administration (OSHA) "reasonably determined" in June 2020 that an emergency temporary standard (ETS) was "not necessary" to "protect working people from occupational exposure to infectious disease, including COVID-19." *In re AFL-CIO*, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020). This was not the first time OSHA had done this; it has refused several times to issue ETSs despite legal action urging it do so. *See, e.g.*, *In re Int'l Chem. Workers Union*, 830 F.2d 369 (D.C. Cir. 1987) (per curiam). In fact, in its fifty-year history, OSHA has issued just ten ETSs.[1] Six were challenged in court; only one survived.[2] The reason for the rarity of this form of emergency action is

---

[1] Cong. Rsch. Serv., Occupational Safety and Health Administration (OSHA): Emergency Temporary Standards (ETS) and COVID-19, at 34 tbl. A-1 (Nov. 10, 2021), *available at* https://crsreports.congress.gov/product/pdf/R/R46288.

[2] It bears noting at the outset that most of the few ETSs issued by OSHA were immediately stayed pending merits review. *See Asbestos Info. Ass'n/N. Am. v. OSHA*, 727 F.2d 415, 418 (5th Cir. 1984); *Indus. Union Dep't, AFL-CIO v. Bingham*, 570 F.2d 965, 968 (D.C. Cir. 1977); *Taylor Diving Salvage Co. v. U.S. Dep't of Lab.*, 537 F.2d 819, 820–21 (5th

simple: courts and the Agency have agreed for generations that "[e]xtraordinary power is delivered to [OSHA] under the emergency provisions of the Occupational Safety and Health Act," so "[t]hat power should be delicately exercised, and only in those emergency situations which require it." *Fla. Peach Growers Ass'n v. U.S. Dep't of Lab.*, 489 F.2d 120, 129–30 (5th Cir. 1974).

This case concerns OSHA's most recent ETS—the Agency's November 5, 2021 Emergency Temporary Standard (the "Mandate") requiring employees of covered employers to undergo COVID-19 vaccination or take weekly COVID-19 tests and wear a mask.[3] An array of petitioners seeks a stay barring OSHA from enforcing the Mandate during the pendency of judicial review. On November 6, 2021, we agreed to stay the Mandate pending briefing and expedited judicial review. Having conducted that expedited review, we reaffirm our initial stay.

## I.

OSHA promulgated its much anticipated[4] vaccine mandate on November 5, 2021. Framed as an ETS, the Mandate requires all employers of 100 or more employees to "develop, implement, and enforce a mandatory COVID-19 vaccination policy" and require any workers who remain

---

Cir. 1976) (per curiam); *Fla. Peach Growers Ass'n v. U.S. Dep't of Lab.*, 489 F.2d 120, 126 (5th Cir. 1974).

[3] *See* COVID-19 Vaccination and Testing; Emergency Temporary Standard, 86 Fed. Reg. 61,402 (Nov. 5, 2021) (to be codified at 29 C.F.R. pts. 1910, 1915, 1917, 1918, 1926, and 1928).

[4] Debates over the Biden Administration's forthcoming vaccine mandate roiled the country throughout much of the Fall. For obvious reasons, the Mandate affects every person in America in one way or another.

No. 21-60845

unvaccinated to "undergo [weekly] COVID-19 testing and wear a face covering at work in lieu of vaccination." 86 Fed. Reg. 61,402, 61,402.

On the afternoon of the Mandate's publication, a diverse group of petitioners (including covered employers, States, religious groups, and individual citizens) moved to stay and permanently enjoin the mandate in federal courts of appeals across the nation. Finding "cause to believe there are grave statutory and constitutional issues with the Mandate," we intervened and imposed a temporary stay on OSHA's enforcement of the Mandate. For ease of judicial review, and in light of the pressing need to act immediately, we consolidated our court's petitions under the case number captioned above.

Many of the petitioners are covered private employers within the geographical boundaries of this circuit.[5] Their standing[6] to sue is obvious— the Mandate imposes a financial burden upon them by deputizing their participation in OSHA's regulatory scheme, exposes them to severe financial risk if they refuse or fail to comply, and threatens to decimate their workforces (and business prospects) by forcing unwilling employees to take their shots, take their tests, or hit the road.

---

[5] Because these petitioners are the targets of the Mandate and bear the brunt of OSHA's regulatory power, we principally analyze the petitions from their perspective. This is not to say that the claims of other petitioners such as States or individual citizens would be any less successful on a thorough analysis.

[6] "Only one of the petitioners needs to have standing to permit us to consider the petition for review." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

No. 21-60845

The petitioners seek a stay—and ultimately a permanent injunction—of the Mandate's enforcement pending full judicial review of the Mandate. We address their request for a stay today.[7]

## II.

The "traditional stay factors . . . govern a request for a stay pending judicial review." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Under the traditional stay standard, a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

Each of these factors favors a stay here.

## A.

We first consider whether the petitioners' challenges to the Mandate are likely to succeed on the merits. For a multitude of reasons, they are.

---

[7] Our November 6, 2021 stay order preserved the status quo during the pendency of briefing. The unusual procedural posture of this case makes for an unusual process. Ordinarily, a federal plaintiff aggrieved by an adversary's threatened course of action must go to a *district court* to seek injunctive relief at the outset. In this ordinary scenario, a preliminary injunction precedes a permanent injunction, and trial-court review precedes appellate review. But this is not a typical case. Here, the statute giving OSHA the power to issue emergency temporary standards like the Mandate also provides for direct and immediate judicial review in "the United States court of appeals for the circuit wherein" "[a]ny person who may be adversely affected by" an ETS "resides or has his principal place of business." *See* 29 U.S.C. § 655(f). Satisfied of our jurisdiction to proceed under that provision, but mindful of our unusual procedural posture, we apply the traditional factors for a stay pending judicial review and draw factual support from the attachments to the pleadings, uncontested facts, and judicial notice.

No. 21-60845

We begin by stating the obvious. The Occupational Safety and Health Act, which created OSHA, was enacted by Congress to assure Americans "safe and healthful working conditions and to preserve our human resources." *See* 29 U.S.C. § 651 (statement of findings and declaration of purpose and policy). It was not—and likely *could* not be, under the Commerce Clause and nondelegation doctrine[8]—intended to authorize a workplace safety administration in the deep recesses of the federal bureaucracy to make sweeping pronouncements on matters of public health affecting every member of society in the profoundest of ways. *Cf. Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488–90 (2021) (per curiam).

On the dubious assumption that the Mandate *does* pass constitutional muster—which we need not decide today[9]—it is nonetheless fatally flawed on its own terms. Indeed, the Mandate's strained prescriptions combine to make it the rare government pronouncement that is both overinclusive (applying to employers and employees in virtually all industries and workplaces in America, with little attempt to account for the obvious differences between the risks facing, say, a security guard on a lonely night shift, and a meatpacker working shoulder to shoulder in a cramped warehouse) *and* underinclusive (purporting to save employees with 99 or more coworkers from a "grave danger" in the workplace, while making no attempt to shield employees with 98 or fewer coworkers from the very same

---

[8] The nondelegation doctrine constrains Congress's ability to delegate its legislative authority to executive agencies. *See, e.g.*, *Mistretta v. United States*, 488 U.S. 361, 371–72 (1989) ("The Constitution provides that '[a]ll legislative Powers herein granted shall be vested in a Congress of the United States' . . . and we have long insisted that 'the integrity and maintenance of the system of government ordered by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch." (first quoting U.S. Const. art. I, § 1; then quoting *Field v. Clark*, 143 U.S. 649, 692 (1892))).

[9] *But see infra* subsection II.A.2.f.

threat). The Mandate's stated impetus—a purported "emergency" that the entire globe has now endured for nearly two years,[10] and which OSHA itself spent nearly two *months* responding to[11]—is unavailing as well. And its promulgation grossly exceeds OSHA's statutory authority.

1.

After the President voiced his displeasure with the country's vaccination rate in September,[12] the Administration pored over the U.S. Code in search of authority, or a "work-around,"[13] for imposing a national

---

[10] As Justice Gorsuch recently observed, society's interest in slowing the spread of COVID-19 "cannot qualify as [compelling] forever," for "[i]f human nature and history teach anything, it is that civil liberties face grave risks when governments proclaim indefinite states of emergency." *Does 1–3 v. Mills*, --- S. Ct. ---, 2021 WL 5027177, at *3 (Oct. 29, 2021) (Gorsuch, J., dissenting); *see also Fla. Peach Growers*, 489 F.2d at 131 (situation ongoing for "last several years . . . fail[ed] to qualify for [OSHA] emergency measures").

[11] The President announced his intention to impose a national vaccine mandate on September 9, 2021. *See, e.g.*, Kevin Liptak & Kaitlan Collins, *Biden Announces New Vaccine Mandates that Could Cover 100 Million Americans*, CNN (Sept. 9, 2021), https://www.cnn.com/2021/09/09/politics/joe-biden-covid-speech/index.html ("'We've been patient, but our patience is wearing thin, and your refusal has cost all of us,' Biden said, his tone hardening toward Americans who still refuse to receive a vaccine despite ample evidence of their safety and full approval of one . . . ."). OSHA issued the Mandate nearly two months later, on November 5, 2021, and the Mandate itself prominently features yet another two-month delay. One could query how an "emergency" could prompt such a "deliberate" response. In similar cases, we've held that OSHA's failure to act promptly "does not conclusively establish that a situation is not an emergency," but "may be evidence that a situation is not a *true* emergency." *Asbestos Info.*, 727 F.2d at 423 (emphasis added).

[12] *See supra* note 11.

[13] On September 9, 2021, White House Chief of Staff Ron Klain retweeted MSNBC anchor Stephanie Ruhle's tweet that stated, "OSHA doing this vaxx mandate as an emergency workplace safety rule *is the ultimate work-around for the Federal govt to require vaccinations*." *See, e.g.*, Pet'rs Burnett Specialists, Choice Staffing, LLC, and Staff Force Inc.'s Reply Brief at 4 (emphasis added).

vaccine mandate. The vehicle it landed on was an OSHA ETS. The statute empowering OSHA allows OSHA to bypass typical notice-and-comment proceedings for six months by providing "for an emergency temporary standard to take immediate effect upon publication in the Federal Register" if it "determines (A) that employees are exposed to grave danger from exposure to substances or agents determined to be toxic or physically harmful or from new hazards, and (B) that such emergency standard is necessary to protect employees from such danger." 29 U.S.C. § 655(c)(1).

As the name suggests, *emergency* temporary standards "are an 'unusual response' to 'exceptional circumstances.'" *Int'l Chem. Workers*, 830 F.2d at 371 (quoting *Pub. Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d 1150, 1155 (D.C. Cir. 1983)). Thus, courts have uniformly observed that OSHA's authority to establish emergency temporary standards under § 655(c) "is an 'extraordinary power' that is to be 'delicately exercised' in only certain 'limited situations.'" *Id.* at 370 (quoting *Pub. Citizen*, 702 F.2d at 1155).[14]

But the Mandate at issue here is anything *but* a "delicate[] exercise[]" of this "extraordinary power." *Cf. Pub. Citizen*, 702 F.2d at 1155. Quite the opposite, rather than a delicately handled scalpel, the Mandate is a one-size-fits-all sledgehammer that makes hardly any attempt to account for differences in workplaces (and workers) that have more than a little bearing on workers' varying degrees of susceptibility to the supposedly "grave danger" the Mandate purports to address.

---

[14] The Agency has thus conceded in the past that "[t]he OSH Act does not authorize OSHA to issue sweeping health standards to address entire classes of known and unknown infectious diseases on an emergency basis without notice and comment." *See* Department of Labor's Resp. to the Emergency Pet. for a Writ of Mandamus at 33–34, *In re AFL-CIO*, No. 20-1158 (D.C. Cir. May 29, 2020) [hereinafter OSHA D.C. Circuit Brief].

2.

Thus, as § 655(c)(1) plainly provides, to be lawfully enacted, an ETS must: (1) address "substances or agents determined to be toxic or physically harmful"—or "new hazards"—in the workplace; (2) show that workers are exposed to such "substances," "agents," or "new hazards" in the workplace; (3) show that said exposure places workers in "grave danger"; and (4) be "necessary" to alleviate employees' exposure to gravely dangerous hazards in the workplace. As we have noted in the past, the precision of this standard makes it a difficult one to meet. *See Fla. Peach Growers*, 489 F.2d at 130 (observing that OSHA's ETS authority "requires determination of danger from exposure to harmful substances, not just a danger of exposure; and, not exposure to just a danger, but to a grave danger; and, not the necessity of just a temporary standard, but that an emergency [temporary] standard is necessary").[15]

(a)

In its brief, Texas makes a compelling argument that § 655(c)(1)'s neighboring phrases "substances or agents" and "toxic or physically harmful" place an airborne virus beyond the purview of an OSHA ETS in the first place. To avoid "giving unintended breadth to the Acts of Congress," courts "rely on the principle of *noscitur a sociis*—a word is known by the company it keeps." *Yates v. United States*, 574 U.S. 528, 543 (2015) (cleaned up). Here, OSHA's attempt to shoehorn an airborne virus that is both widely present in society (and thus not particular to any workplace) and non-life-

---

[15] In prior litigation, OSHA acknowledged that many "workplaces" covered by a COVID-19 ETS "are not merely workplaces," but are also "stores, restaurants, and other places occupied by workers and the general public alike, in which the measures called for require a broader lens—and at times a broader mandate—than available to OSHA." *See* OSHA D.C. Circuit Brief at 20.

threatening to a vast majority of employees into a neighboring phrase connoting *toxicity* and *poisonousness* is yet another transparent stretch. Other cases involving OSHA (though not ETSs per se) shed further light on the intended meaning of these terms. *See, e.g.*, *UAW v. OSHA*, 938 F.2d 1310, 1314 (D.C. Cir. 1991). *See generally Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607 (1980). Any argument OSHA may make that COVID-19 is a "new hazard[]" would directly contradict OSHA's prior representation to the D.C. Circuit that "[t]here can be no dispute that COVID-19 is a *recognized* hazard." *See* OSHA D.C. Circuit Brief at 25 (emphasis added).

(b)

A natural first step in enacting a lawful ETS is to show that employees covered by the ETS are in fact *exposed* to the dangerous substances, agents, or hazards at issue—here, COVID-19. *See, e.g.*, *Int'l Chem. Workers*, 830 F.2d at 371 (noting OSHA's stated view "that a finding of 'grave danger' to support an ETS be based upon exposure in actual levels found in the workplace"). As it pertains to the vast majority of private employees covered by the Mandate, however, OSHA fails to meet this threshold burden. In defending the Mandate before this court, the Government credits OSHA with "describ[ing] myriad studies showing workplace [COVID-19] 'clusters' and 'outbreaks' and other significant 'evidence of workplace transmission' and 'exposure.'" *See* Resp'ts' Opp'n to Emergency Stay Mot. at 8. But this misses the mark, as OSHA is required to make findings of exposure—or at least the presence of COVID-19—in *all* covered workplaces.

Of course, OSHA cannot possibly show that every workplace covered by the Mandate currently has COVID-positive employees, or that every industry covered by the Mandate has had or will have "outbreaks." As

discussed below, this kind of overbreadth plagues the Mandate generally. *See infra* subsection II.A.2.d.

(c)

Equally problematic, however, is that it remains unclear that COVID-19—however tragic and devastating the pandemic has been—poses the kind of grave danger § 655(c)(1) contemplates. *See, e.g.*, *Int'l Chem. Workers*, 830 F.2d at 371 (noting that OSHA itself once concluded "that to be a 'grave danger,' it is not sufficient that a chemical, such as cadmium, can cause *cancer* or *kidney damage* at a high level of exposure" (emphasis added)). For starters, the Mandate itself concedes that the effects of COVID-19 may range from "mild" to "critical." As important, however, the status of the spread of the virus has varied since the President announced the general parameters of the Mandate in September. (And of course, this all assumes that COVID-19 poses any significant danger to workers to begin with; for the more than *seventy-eight* percent[16] of Americans aged 12 and older either fully or partially inoculated against it, the virus poses—the Administration assures us—little risk at all.) *See, e.g.*, 86 Fed. Reg. 61,402, 61,402–03 ("COVID-19 vaccines authorized or approved by the [FDA] effectively protect vaccinated individuals against severe illness and death from COVID-19.").

The Administration's prior statements in this regard further belie the notion that COVID-19 poses the kind of emergency that allows OSHA to take the extreme measure of an ETS. In reviewing agency pronouncements, courts need not turn a blind eye to the statements of those issuing such pronouncements. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). In fact, courts have an affirmative duty *not* to do so. It is thus

---

[16] *See* CDC, Covid Data Tracker, https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

critical to note that the Mandate makes no serious attempt to explain why OSHA and the President himself[17] were against vaccine mandates before they were for one here. *See, e.g.*, Occupational Exposure to Bloodborne Pathogens, 54 Fed. Reg. 23,042, 23,045 (May 30, 1989) ("Health in general is an intensely personal matter. . . . OSHA prefers to encourage rather than try to force by governmental coercion, employee cooperation in [a] vaccination program."); Letter from Loren Sweatt, Principal Deputy Assistant Sec'y, OSHA, to Richard L. Trumka, President, AFL-CIO at 3 (May 29, 2020) [hereinafter Sweatt Letter] (acknowledging as a general matter that it "would not be necessary for OSHA to issue an ETS to protect workers from infectious diseases" because "OSHA lacks evidence to conclude that all infectious diseases to which employees may be exposed at a workplace constitute a 'grave danger' for which an ETS is an appropriate remedy"). Because it is generally "arbitrary or capricious" to "depart from a prior policy *sub silentio*," agencies must typically provide a "detailed explanation" for contradicting a prior policy, particularly when the "prior policy has engendered serious reliance interests." *FCC v. Fox*, 556 U.S. at 515. OSHA's reversal here strains credulity, as does its pretextual basis.[18] Such shortcomings are all hallmarks of unlawful agency actions.

To be sure, "OSHA's assessment of . . . scientifically complex [facts] and its balancing of the competing policies that underlie the decision whether to issue an ETS . . . are entitled to great deference," but this is not a case

---

[17] In December of 2020, the President was quoted as saying, "No I don't think [vaccines] should be mandatory." *See, e.g.*, Jacob Jarvis, *Fact Check: Did Joe Biden Reject Idea of Mandatory Vaccines in December 2020*, NEWSWEEK (Sept. 10, 2021), https://www.newsweek.com/fact-check-joe-biden-no-vaccines-mandatory-december-2020-1627774.

[18] *See supra* note 13 (Klain endorsement of the term "work-around").

where any amount of deference would make a bit of difference. *Int'l Chem. Workers*, 830 F.2d at 371.

(d)

We next consider the necessity of the Mandate. The Mandate is staggeringly overbroad. Applying to 2 out of 3 private-sector employees in America, in workplaces as diverse as the country itself, the Mandate fails to consider what is perhaps the most salient fact of all: the ongoing threat of COVID-19 is more dangerous to *some* employees than to *other* employees. All else equal, a 28 year-old trucker spending the bulk of his workday in the solitude of his cab is simply less vulnerable to COVID-19 than a 62 year-old prison janitor. Likewise, a naturally immune unvaccinated worker is presumably at less risk than an unvaccinated worker who has never had the virus. The list goes on, but one constant remains—the Mandate fails almost completely to address, or even respond to, much of this reality and common sense.

Moreover, earlier in the pandemic, the Agency recognized the practical impossibility of tailoring an effective ETS in response to COVID-19. *See* OSHA D.C. Circuit Brief at 16, 17, 21, 26 ("Based on substantial evidence, OSHA determined that an ETS is not necessary both because there are existing OSHA and non-OSHA standards that address COVID-19 and because an ETS would actually be counterproductive. . . . To address all employers and to do so with the requisite dispatch, an ETS would at best be an enshrinement of these general and universally known measures that are already enforceable through existing OSHA tools that require employers to assess and address extant hazards. OSHA's time and resources are better spent issuing industry-specific guidance that adds real substance and permits flexibility as we learn more about this virus. Given that we learn more about COVID-19 every day, setting rules in stone through an ETS (and later a

permanent rule) may undermine worker protection by permanently mandating precautions that later prove to be inefficacious. . . . [A]n ETS could only enshrine broad legal standards that are already in place or direct employers to develop COVID-19 response plans specific to their businesses, something employers are already doing. Such a step would be superfluous at best and could be counterproductive to ongoing state, local, and private efforts. . . . Additionally, employers may choose any effective method to abate a recognized hazard under the general duty clause. Contrary to AFL-CIO's argument, this flexibility is likely to improve worker safety, because employers must choose a means of abatement that eliminates the hazard or materially reduces it to the extent feasible."). OSHA itself admitted that "an ETS once issued could very well become ineffective or counterproductive, as it may be informed by incomplete or ultimately inaccurate information." *Id.* at 30, 32–33 (acknowledging further that "[a]dequate safeguards for workers could differ substantially based on geographic location, as the pandemic has had dramatically different impacts on different parts of the country. State and local requirements and guidance on COVID-19 are thus critical to employers in determining how to best protect workers, and OSHA must retain flexibility to adapt its advice regarding incorporation of such local guidance, where appropriate. . . . [A]n ETS meant to broadly cover all workers with potential exposure to COVID-19—effectively *all* workers across the country—would have to be written at such a general level that it would risk providing very little assistance at all").

In light of this immense complexity, one might naturally ask the Agency—is this situation truly amenable to a one-size-fits-all Mandate? The likely answer may be why OSHA has in the past "determined that the best approach for responding to the pandemic is to enforce the existing OSH Act requirements that address infectious disease hazards, while also issuing detailed, industry-specific guidance," which is generally "more effective

than promulgating a rigid set of requirements for all employers in all industries based on limited information." *See* Sweatt Letter at 2. In sum, as OSHA itself has previously acknowledged, an ETS appears to be a "poorly-suited approach for protecting workers against [COVID-19] because no standard that covers all of the Nation's workers would protect all those workers equally." *See id.* at 9.

At the same time, the Mandate is also *underinclusive*. The most vulnerable worker in America draws no protection from the Mandate if his company employs 99 workers or fewer. The reason why? Because, as even OSHA admits, companies of 100 or more employers will be better able to administer (and sustain) the Mandate. *See* 86 Fed. Reg. 61,402, 61,403 ("OSHA seeks information about the ability of employers with fewer than 100 employees to implement COVID-19 vaccination and/or testing programs."). That may be true. But this kind of thinking belies the premise that any of this is truly an *emergency*. Indeed, underinclusiveness of this sort is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact "compelling." *Cf. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542–46 (1993) (city's ban on religious animal sacrifice but corresponding allowance of other activities similarly endangering public health belied its purportedly "compelling" interest in safe animal disposal practices). The underinclusive nature of the Mandate implies that the Mandate's true purpose is not to enhance workplace safety, but instead to ramp up vaccine uptake by any means necessary.[19]

---

[19] The Mandate is also underinclusive in the solutions it proposes. Indeed, even in its fullest force, the Mandate cannot prevent vaccinated employees from spreading the virus in the workplace, or prevent unvaccinated employees from spreading the virus in between weekly tests.

(e)

If the deficiencies we've already covered aren't enough, other miscellaneous considerations seal the Mandate's fate. For one, "[t]he Agency cannot use its ETS powers as a stop-gap measure," *Asbestos Info.*, 727 F.2d at 422, but concedes that that is precisely what the Mandate is intended to do here. *See* 86 Fed. Reg. 61,402, 61,434–35 (admitting that "[c]rafting a multi-layered standard that is comprehensive and feasible for all covered work settings, including mixed settings of vaccinated and unvaccinated workers, is an extraordinarily challenging and complicated undertaking, yet the grave danger that COVID-19 poses to unvaccinated workers obliges the agency to act as quickly as possible"). For another, courts have consistently recognized that the "protection afforded to workers [by an ETS] should outweigh the economic consequences to the regulated industry," *Asbestos Info.*, 727 F.2d at 423, but for all the reasons we've previously noted, the Mandate flunks a cost-benefit analysis here.

(f)

It lastly bears noting that the Mandate raises serious constitutional concerns that either make it more likely that the petitioners will succeed on the merits, or at least counsel against adopting OSHA's broad reading of § 655(c) as a matter of statutory interpretation.

First, the Mandate likely exceeds the federal government's authority under the Commerce Clause because it regulates noneconomic inactivity that falls squarely within the States' police power. A person's choice to remain unvaccinated and forgo regular testing is noneconomic inactivity. *Cf. NFIB v. Sebelius*, 567 U.S. 519, 522 (2012) (Roberts, C.J., concurring); *see also id.* at 652–53 (Scalia, J., dissenting). And to mandate that a person receive a vaccine or undergo testing falls squarely within the States' police power. *Zucht v. King*, 260 U.S. 174, 176 (1922) (noting that precedent had long "settled that

it is within the police power of a state to provide for compulsory vaccination"); *Jacobson v. Massachusetts*, 197 U.S. 11, 25–26 (1905) (similar). The Mandate, however, commandeers U.S. employers to compel millions of employees to receive a COVID-19 vaccine or bear the burden of weekly testing. 86 Fed. Reg. 61,402, 61,407, 61,437, 61,552. The Commerce Clause power may be expansive, but it does not grant Congress the power to regulate noneconomic inactivity traditionally within the States' police power. *See Sebelius*, 567 U.S. at 554 (Roberts, C.J., concurring) ("People, for reasons of their own, often fail to do things that would be good for them or good for society. Those failures—joined with the similar failures of others—can readily have a substantial effect on interstate commerce. Under the Government's logic, that authorizes Congress to use its commerce power to compel citizens to act as the Government would have them act."); *see also Bond v. United States*, 572 U.S. 844, 854 (2014) ("The States have broad authority to enact legislation for the public good—what we have often called a 'police power.' . . . The Federal Government, by contrast, has no such authority. . . ." (citations omitted)). Indeed, the courts "*always* have rejected readings of the Commerce Clause . . . that would permit Congress to exercise a police power." *United States v. Lopez*, 514 U.S. 549, 584 (1995) (Thomas, J., concurring). In sum, the Mandate would far exceed current constitutional authority.

Second, concerns over separation of powers principles cast doubt over the Mandate's assertion of virtually unlimited power to control individual conduct under the guise of a workplace regulation. As Judge Duncan points out, the major questions doctrine confirms that the Mandate exceeds the bounds of OSHA's statutory authority. Congress must "speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (cleaned up). The Mandate derives its authority from an old statute employed in a

novel manner,[20] imposes nearly $3 billion in compliance costs, involves broad medical considerations that lie outside of OSHA's core competencies, and purports to definitively resolve one of today's most hotly debated political issues. *Cf. MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 231 (1994) (declining to hold that the FCC could eliminate telecommunications rate-filing requirements); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000) (declining to hold that the FDA could regulate cigarettes); *Gonzales v. Oregon*, 546 U.S. 243, 262 (2006) (declining to allow DOJ to ban physician-assisted suicide). There is no clear expression of congressional intent in § 655(c) to convey OSHA such broad authority, and this court will not infer one. Nor can the Article II executive breathe new power into OSHA's authority—no matter how thin patience wears.

At the very least, even if the statutory language were susceptible to OSHA's broad reading—which it is not—these serious constitutional concerns would counsel this court's rejection of that reading. *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018).

\* \* \*

Accordingly, the petitioners' challenges to the Mandate show a great likelihood of success on the merits, and this fact weighs critically in favor of a stay.

## B.

It is clear that a denial of the petitioners' proposed stay would do them irreparable harm. For one, the Mandate threatens to substantially burden the

---

[20] Here, it is simply unlikely that Congress assigned authority over such a monumental policy decision to OSHA—hard hats and safety goggles, this is not.

liberty interests[21] of reluctant individual recipients put to a choice between their job(s) and their jab(s). For the individual petitioners, the loss of constitutional freedoms "for even minimal periods of time . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Likewise, the companies seeking a stay in this case will also be irreparably harmed in the absence of a stay, whether by the business and financial effects of a lost or suspended employee, compliance and monitoring costs associated with the Mandate, the diversion of resources necessitated by the Mandate, or by OSHA's plan to impose stiff financial penalties on companies that refuse to punish or test unwilling employees. The Mandate places an immediate and irreversible imprint on all covered employers in America, and "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *See Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment)).

The States, too, have an interest in seeing their constitutionally reserved police power over public health policy defended from federal overreach.

## C.

In contrast, a stay will do *OSHA* no harm whatsoever. Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) ETS is illegitimate. Moreover, any abstract "harm" a stay might cause the Agency

---

[21] Not to mention the free religious exercise of certain employees. *See* U.S. Const. amend. I; *cf. Holt v. Hobbs*, 574 U.S. 352, 361 (2015).

pales in comparison and importance to the harms the absence of a stay threatens to cause countless individuals and companies.

## D.

For similar reasons, a stay is firmly in the public interest. From economic uncertainty to workplace strife, the mere specter of the Mandate has contributed to untold economic upheaval in recent months. Of course, the principles at stake when it comes to the Mandate are not reducible to dollars and cents. The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions—even, or perhaps *particularly*, when those decisions frustrate government officials.

\* \* \*

The Constitution vests a limited legislative power in Congress. For more than a century, Congress has routinely used this power to delegate policymaking specifics and technical details to executive agencies charged with effectuating policy principles Congress lays down. In the mine run of cases—a transportation department regulating trucking on an interstate highway, or an aviation agency regulating an airplane lavatory—this is generally well and good. But health agencies do not make housing policy, and occupational safety administrations do not make health policy. *Cf. Ala. Ass'n of Realtors*, 141 S. Ct. at 2488–90. In seeking to do so here, OSHA runs afoul of the statute from which it draws its power and, likely, violates the constitutional structure that safeguards our collective liberty.

For these reasons, the petitioners' motion for a stay pending review is GRANTED. Enforcement of the Occupational Safety and Health Administration's "COVID-19 Vaccination and Testing; Emergency

No. 21-60845

Temporary Standard"[22] remains STAYED pending adequate judicial review of the petitioners' underlying motions for a permanent injunction.[23]

In addition, IT IS FURTHER ORDERED that OSHA take no steps to implement or enforce the Mandate until further court order.

---

[22] 86 Fed. Reg. 61,402 (Nov. 5, 2021) (to be codified at 29 C.F.R. pts. 1910, 1915, 1917, 1918, 1926, and 1928).

[23] The Clerk of Court shall ensure that this order applies with equal force to all related motions consolidated into this case in accordance with the court's November 6, 2021 order.

No. 21-60845

STUART KYLE DUNCAN, *Circuit Judge*, concurring:

In addition to the many reasons ably identified by Judge Engelhardt's opinion, I underscore one reason why these challenges to OSHA's unprecedented mandate are virtually certain to succeed.

Courts "expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'" *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (quoting *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). OSHA's rule reaches "two-thirds of all private-sector workers in the nation." 86 Fed. Reg. 61,402, 61,403 (Nov. 5, 2021). It compels covered employers to (1) make employees get vaccinated or get weekly tests at their expense and wear masks; (2) "remove" non-complying employees; (3) pay per-violation fines; and (4) keep records of employee vaccination or testing status. 86 Fed. Reg. at 61,402–03, 61,551–54; 29 U.S.C. § 666. OHSA invokes no statute expressly authorizing the rule. Instead, OSHA issued it under an emergency provision addressing workplace "substances," "agents," or "hazards" that it has used only ten times in the last 50 years and never to mandate vaccines. 86 Fed. Reg. at 61,403; *see* 29 U.S.C. § 655(c)(1).

Whether Congress could enact such a sweeping mandate under its interstate commerce power would pose a hard question. *See NFIB v. Sebelius*, 567 U.S. 519, 549–61 (2012). Whether OSHA can do so does not.

I concur in granting a stay.

# EXHIBIT E

BRIEFING ROOM

# Remarks by President Biden on Fighting the COVID-19 Pandemic

SEPTEMBER 09, 2021 • SPEECHES AND REMARKS

5:02 P.M. EDT

THE PRESIDENT:  Good evening, my fellow Americans.  I want to talk to you about where we are in the battle against COVID-19, the progress we've made, and the work we have left to do.

And it starts with understanding this: Even as the Delta variant 19 [sic] has — COVID-19 — has been hitting this country hard, we have the tools to combat the virus, if we can come together as a country and use those tools.

If we raise our vaccination rate, protect ourselves and others with masking and expanded testing, and identify people who are infected, we can and we will turn the tide on COVID-19.

It will take a lot of hard work, and it's going to take some time.  Many of us are frustrated with the nearly 80 million Americans who are still not vaccinated, even though the vaccine is safe, effective, and free.

You might be confused about what is true and what is false about COVID-19.  So before I outline the new steps to fight COVID-19 that I'm going to be announcing tonight, let me give you some clear information about where we stand.

First, we have cons- — we have made considerable progress
in battling COVID-19.  When I became President, about 2 million Americans were fully vaccinated.  Today, over 175 million Americans have that protection.

Before I took office, we hadn't ordered enough vaccine for every American.  Just weeks in office, we did.  The week before I took office, on January 20th of this year, over 25,000 Americans died that week from COVID-19.  Last week, that grim weekly toll was down 70 percent.

And in the three months before I took office, our economy was faltering, creating just 50,000 jobs a month.  We're now averaging 700,000 new jobs a month in the past three months.

This progress is real.  But while America is in much better shape than it was seven months ago when I took office, I need to tell you a second fact.

We're in a tough stretch, and it could last for a while.  The highly contagious Delta variant that I began to warn America about back in July spread in late summer like it did in other countries before us.

While the vaccines provide strong protections for the vaccinated, we read about, we hear about, and we see the stories of hospitalized people, people on their death beds, among the unvaccinated over these past few weeks.

This is a pandemic of the unvaccinated.  And it's caused by the fact that despite America having an unprecedented and successful vaccination program, despite the fact that for almost five months free vaccines have been available in 80,000 different locations, we still have nearly 80 million Americans
who have failed to get the shot.

And to make matters worse, there are elected officials actively working to undermine the fight against COVID-19.  Instead of encouraging people to get vaccinated and mask up, they're ordering mobile morgues for the unvaccinated dying from COVID in their communities.  This is totally unacceptable.

Third, if you wonder how all this adds up, here's the math:  The vast majority of Americans are doing the right thing.  Nearly three quarters of the eligible have gotten at least one shot, but one quarter has not gotten any.  That's nearly 80 million Americans not vaccinated.  And in a country as large as ours, that's 25 percent minority.  That 25 percent can cause a lot of damage — and they are.

The unvaccinated overcrowd our hospitals, are overrunning the emergency rooms and intensive care units, leaving no room for someone with a heart attack, or ~~pancreitis~~ [pancreatitis], or cancer.

And fourth, I want to emphasize that the vaccines provide very strong protection from severe illness from COVID-19.  I know there's a lot of confusion and misinformation.  But the world's leading scientists confirm that if you are fully vaccinated, your risk of severe illness from COVID-19 is very low.

Case 3:21-cv-00309 Document 6-1 Filed on 11/15/21 in TXSD Page 4 of 136

In fact, based on available data from the summer, only one of out of every 160,000 fully vaccinated Americans was hospitalized for COVID per day.

These are the facts.

So here's where we stand: The path ahead, even with the Delta variant, is not nearly as bad as last winter.  But what makes it incredibly more frustrating is that we have the tools to combat COVID-19, and a distinct minority of Americans –supported by a distinct minority of elected officials — are keeping us from turning the corner.  These pandemic politics, as I refer to, are making people sick, causing unvaccinated people to die.

We cannot allow these actions to stand in the way of protecting the large majority of Americans who have done their part and want to get back to life as normal.

As your President, I'm announcing tonight a new plan to require more Americans to be vaccinated, to combat those blocking public health.

My plan also increases testing, protects our economy, and will make our kids safer in schools. It consists of six broad areas of action and many specific measures in each that — and each of those actions that you can read more about at WhiteHouse.gov.  WhiteHouse.gov.

The measures — these are going to take time to have full impact.  But if we implement them, I believe and the scientists indicate, that in the months ahead we can reduce the number of unvaccinated Americans, decrease hospitalizations and deaths, and allow our children to go to school safely and keep our economy strong by keeping businesses open.

First, we must increase vaccinations among the unvaccinated with new vaccination requirements.  Of the nearly 80 million eligible Americans who have not gotten vaccinated, many said they were waiting for approval from the Food and Drug Administration — the FDA. Well, last month, the FDA granted that approval.

So, the time for waiting is over.  This summer, we made progress through the combination of vaccine requirements and incentives, as well as the FDA approval.  Four million more people got their first shot in August than they did in July.

But we need to do more.  This is not about freedom or personal choice.  It's about protecting yourself and those around you — the people you work with, the people you care about, the people you love.

My job as President is to protect all Americans.

So, tonight, I'm announcing that the Department of Labor is developing an emergency rule to require all employers with 100 or more employees, that together employ over 80 million workers, to ensure their workforces are fully vaccinated or show a negative test at least once a week.

Some of the biggest companies are already requiring this: United Airlines, Disney, Tysons Food, and even Fox News.

The bottom line: We're going to protect vaccinated workers from unvaccinated co-workers. We're going to reduce the spread of COVID-19 by increasing the share of the workforce that is vaccinated in businesses all across America.

My plan will extend the vaccination requirements that I previously issued in the healthcare field.  Already, I've announced, we'll be requiring vaccinations that all nursing home workers who treat patients on Medicare and Medicaid, because I have that federal authority.

Tonight, I'm using that same authority to expand that to cover those who work in hospitals, home healthcare facilities, or other medical facilities –- a total of 17 million healthcare workers.

If you're seeking care at a health facility, you should be able to know that the people treating you are vaccinated.  Simple.  Straightforward.  Period.

Next, I will sign an executive order that will now require all executive branch federal employees to be vaccinated — all.  And I've signed another executive order that will require federal contractors to do the same.

If you want to work with the federal government and do business with us, get vaccinated.  If you want to do business with the federal government, vaccinate your workforce.

And tonight, I'm removing one of the last remaining obstacles that make it difficult for you to get vaccinated.

The Department of Labor will require employers with 100 or more workers to give those workers paid time off to get vaccinated.  No one should lose pay in order to get vaccinated or take a loved one to get vaccinated.

Case 3:21-cv-00309    Document 6-1    Filed on 11/15/21 in TXSD    Page 48 of 136

Today, in total, the vaccine requirements in my plan will affect about 100 million Americans –– two thirds of all workers.

And for other sectors, I issue this appeal: To those of you running large entertainment venues — from sports arenas to concert venues to movie theaters — please require folks to get vaccinated or show a negative test as a condition of entry.

And to the nation's family physicians, pediatricians, GPs — general practitioners –– you're the most trusted medical voice to your patients. You may be the one person who can get someone to change their mind about being vaccinated.

Tonight, I'm asking each of you to reach out to your unvaccinated patients over the next two weeks and make a personal appeal to them to get the shot. America needs your personal involvement in this critical effort.

And my message to unvaccinated Americans is this: What more is there to wait for? What more do you need to see? We've made vaccinations free, safe, and convenient.

The vaccine has FDA approval. Over 200 million Americans have gotten at least one shot.

We've been patient, but our patience is wearing thin. And your refusal has cost all of us. So, please, do the right thing. But just don't take it from me; listen to the voices of unvaccinated Americans who are lying in hospital beds, taking their final breaths, saying, "If only I had gotten vaccinated." "If only."

It's a tragedy. Please don't let it become yours.

The second piece of my plan is continuing to protect the vaccinated.

For the vast majority of you who have gotten vaccinated, I understand your anger at those who haven't gotten vaccinated. I understand the anxiety about getting a "breakthrough" case.

But as the science makes clear, if you're fully vaccinated, you're highly protected from severe illness, even if you get COVID-19.

In fact, recent data indicates there is only one confirmed positive case per 5,000 fully vaccinated Americans per day.

You're as safe as possible, and we're doing everything we can to keep it that way — keep it that way, keep you safe.

That's where boosters come in — the shots that give you even more protection than after your second shot.

Now, I know there's been some confusion about boosters.  So, let me be clear: Last month, our top government doctors announced an initial plan for booster shots for vaccinated Americans.  They believe that a booster is likely to provide the highest level of protection yet.

Of course, the decision of which booster shots to give, when to start them, and who will give them, will be left completely to the scientists at the FDA and the Centers for Disease Control.

But while we wait, we've done our part.  We've bought enough boosters — enough booster shots — and the distribution system is ready to administer them.

As soon as they are authorized, those eligible will be able to get a booster right away in tens of thousands of site across the — sites across the country for most Americans, at your nearby drug store, and for free.

The third piece of my plan is keeping — and maybe the most important — is keeping our children safe and our schools open.  For any parent, it doesn't matter how low the risk of any illness or accident is when it comes to your child or grandchild.  Trust me, I know.

So, let me speak to you directly.  Let me speak to you directly to help ease some of your worries.

It comes down to two separate categories: children ages 12 and older who are eligible for a vaccine now, and children ages 11 and under who are not are yet eligible.

The safest thing for your child 12 and older is to get them vaccinated.  They get vaccinated for a lot of things.  That's it.  Get them vaccinated.

As with adults, almost all the serious COVID-19 cases we're seeing among adolescents are in unvaccinated 12- to 17-year-olds — an age group that lags behind in vaccination rates.

So, parents, please get your teenager vaccinated.

What about children under the age of 12 who can't get vaccinated yet?  Well, the best way for a parent to protect their child under the age of 12 starts at home.  Every parent, every teen

sibling, every caregiver around them should be vaccinated.

Children have four times higher chance of getting hospitalized if they live in a state with low vaccination rates rather than the states with high vaccination rates.

Now, if you're a parent of a young child, you're wondering when will it be — when will it be — the vaccine available for them.  I strongly support an independent scientific review for vaccine uses for children under 12.  We can't take shortcuts with that scientific work.

But I've made it clear I will do everything within my power to support the FDA with any resource it needs to continue to do this as safely and as quickly as possible, and our nation's top doctors are committed to keeping the public at large updated on the process so parents can plan.

Now to the schools.  We know that if schools follow the science and implement the safety measures — like testing, masking, adequate ventilation systems that we provided the money for, social distancing, and vaccinations — then children can be safe from COVID-19 in schools.

Today, about 90 percent of school staff and teachers are vaccinated.  We should get that to 100 percent.  My administration has already acquired teachers at the schools run by the Defense Department — because I have the authority as President in the federal system — the Defense Department and the Interior Department — to get vaccinated.  That's authority I possess.

Tonight, I'm announcing that we'll require all of nearly 300,000 educators in the federal paid program, Head Start program, must be vaccinated as well to protect your youngest — our youngest — most precious Americans and give parents the comfort.

And tonight, I'm calling on all governors to require vaccination for all teachers and staff.  Some already have done so, but we need more to step up.

Vaccination requirements in schools are nothing new.  They work.  They're overwhelmingly supported by educators and their unions.  And to all school officials trying to do the right thing by our children: I'll always be on your side.

Let me be blunt.  My plan also takes on elected officials and states that are undermining you and these lifesaving actions.  Right now, local school officials are trying to keep children safe in a pandemic while their governor picks a fight with them and even threatens their salaries or their jobs.  Talk about bullying in schools.  If they'll not help — if these governors won't help us beat the pandemic, I'll use my power as President to get them out of the way.

The Department of Education has already begun to take legal action against states undermining protection that local school officials have ordered.  Any teacher or school official whose pay is withheld for doing the right thing, we will have that pay restored by the federal government 100 percent.  I promise you I will have your back.

The fourth piece of my plan is increasing testing and masking.  From the start, America has failed to do enough COVID-19 testing.  In order to better detect and control the Delta variant, I'm taking steps tonight to make testing more available, more affordable, and more convenient.  I'll use the Defense Production Act to increase production of rapid tests, including those that you can use at home.

While that production is ramping up, my administration has worked with top retailers, like Walmart, Amazon, and Kroger's, and tonight we're announcing that, no later than next week, each of these outlets will start to sell at-home rapid test kits at cost for the next three months.  This is an immediate price reduction for at-home test kits for up to 35 percent reduction.

We'll also expand — expand free testing at 10,000 pharmacies around the country.  And we'll commit — we're committing $2 billion to purchase nearly 300 million rapid tests for distribution to community health centers, food banks, schools, so that every American, no matter their income, can access free and convenient tests.  This is important to everyone, particularly for a parent or a child — with a child not old enough to be vaccinated.  You'll be able to test them at home and test those around them.

In addition to testing, we know masking helps stop the spread of COVID-19.  That's why when I came into office, I required masks for all federal buildings and on federal lands, on airlines, and other modes of transportation.

Today — tonight, I'm announcing that the Transportation Safety Administration — the TSA — will double the fines on travelers that refuse to mask.  If you break the rules, be prepared to pay.

And, by the way, show some respect.  The anger you see on television toward flight attendants and others doing their job is wrong; it's ugly.

The fifth piece of my plan is protecting our economic recovery.  Because of our vaccination program and the American Rescue Plan, which we passed early in my administration, we've had record job creation for a new administration, economic growth unmatched in 40 years.  We cannot let unvaccinated do this progress — undo it, turn it back.

So tonight, I'm announcing additional steps to strengthen our economic recovery. We'll be expanding COVID-19 Economic Injury Disaster Loan programs. That's a program that's going to allow small businesses to borrow up to $2 million from the current $500,000 to keep going if COVID-19 impacts on their sales.

These low-interest, long-term loans require no repayment for two years and be can used to hire and retain workers, purchase inventory, or even pay down higher cost debt racked up since the pandemic began. I'll also be taking additional steps to help small businesses stay afloat during the pandemic.

Sixth, we're going to continue to improve the care of those who do get COVID-19. In early July, I announced the deployment of surge response teams. These are teams comprised of experts from the Department of Health and Human Services, the CDC, the Defense Department, and the Federal Emergency Management Agency — FEMA — to areas in the country that need help to stem the spread of COVID-19.

Since then, the federal government has deployed nearly 1,000 staff, including doctors, nurses, paramedics, into 18 states. Today, I'm announcing that the Defense Department will double the number of military health teams that they'll deploy to help their fellow Americans in hospitals around the country.

Additionally, we're increasing the availability of new medicines recommended by real doctors, not conspir- — conspiracy theorists. The monoclonal antibody treatments have been shown to reduce the risk of hospitalization by up to 70 percent for unvaccinated people at risk of developing sefe- — severe disease.

We've already distributed 1.4 million courses of these treatments to save lives and reduce the strain on hospitals. Tonight, I'm announcing we will increase the average pace of shipment across the country of free monoclonal antibody treatments by another 50 percent.

Before I close, let me say this: Communities of color are disproportionately impacted by this virus. And as we continue to battle COVID-19, we will ensure that equity continues to be at the center of our response. We'll ensure that everyone is reached. My first responsibility as President is to protect the American people and make sure we have enough vaccine for every American, including enough boosters for every American who's approved to get one.

We also know this virus transcends borders. That's why, even as we execute this plan at home, we need to continue fighting the virus overseas, continue to be the arsenal of vaccines.

We're proud to have donated nearly 140 million vaccines over 90 countries, more than all other countries combined, including Europe, China, and Russia combined.  That's American leadership on a global stage, and that's just the beginning.

We've also now started to ship another 500 million COVID vaccines — Pfizer vaccines — purchased to donate to 100 lower-income countries in need of vaccines.  And I'll be announcing additional steps to help the rest of the world later this month.

As I recently released the key parts of my pandemic preparedness plan so that America isn't caught flat-footed when a new pandemic comes again — as it will — next month, I'm also going to release the plan in greater detail.

So let me close with this: We have so- — we've made so much progress during the past seven months of this pandemic.  The recent increases in vaccinations in August already are having an impact in some states where case counts are dropping in recent days.  Even so, we remain at a critical moment, a critical time.  We have the tools.  Now we just have to finish the job with truth, with science, with confidence, and together as one nation.

Look, we're the United States of America.  There's nothing — not a single thing — we're unable to do if we do it together.  So let's stay together.

God bless you all and all those who continue to serve on the frontlines of this pandemic.  And may God protect our troops.

Get vaccinated.

5:28 P.M. EDT

# EXHIBIT F

September 30, 2021

MEMORANDUM FOR CHIEF ACQUISITION OFFICERS
                SENIOR PROCUREMENT EXECUTIVES
                DEFENSE ACQUISITION REGULATIONS COUNCIL
                CIVILIAN AGENCY ACQUISITION COUNCIL

FROM:           Lesley A. Field    LESLEY FIELD  Digitally signed by LESLEY FIELD
                                                 Date: 2021.09.30 16:48:42 -04'00'
                Acting Administrator
                  for Federal Procurement Policy
                Office of Management and Budget

                John M. Tenaglia     TENAGLIA.JOHN.M.115494592  Digitally signed by
                                     6                          TENAGLIA.JOHN.M.1154945926
                                                                Date: 2021.09.30 17:04:52 -04'00'
                Principal Director, Defense Pricing and Contracting
                Department of Defense

                Jeffrey A. Koses
                Senior Procurement Executive &
                Deputy Chief Acquisition Officer
                Office of Acquisition Policy
                General Services Administration

                Karla Smith Jackson     Karla Jackson  Digitally signed by Karla Jackson
                                                        Date: 2021.09.30 16:53:01 -04'00'
                Senior Procurement Executive
                Assistant Administrator for Procurement
                National Aeronautics and Space Administration

SUBJECT:        Issuance of Agency Deviations to Implement Executive Order 14042

The purpose of this memorandum is to provide agencies that award contracts under the Federal Acquisition Regulation (FAR) with initial direction for the incorporation of a clause into their solicitations and contracts to implement guidance issued by the Safer Federal Workforce Task Force (Task Force) pursuant to Executive Order 14042 ("the order").

**Background**

The order directs agencies to ensure that the parties that contract with the Federal Government provide adequate COVID-19 safeguards to their workers performing on or in connection with the contract to decrease the spread of COVID-19, reduce worker absence, lower labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work.

On September 24, 2021, the Task Force issued guidance to implement the order, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors. The Task Force guidance requires:

- All covered contractor employees to be fully vaccinated for COVID-19 by December 8, 2021, except in limited circumstances where an employee is legally entitled to an accommodation;

- All individuals, including covered contractor employees and visitors, to comply with published Centers for Disease Control and Prevention guidance for masking and physical distancing at a covered contractor workplace, as discussed in the Task Force guidance; and

- Covered contractors to designate a person or persons to coordinate implementation of and compliance with the Task Force guidance and the required workplace safety protocols at covered contractor workplaces.

Section 3(a) of the order directs the Federal Acquisition Regulatory Council (FAR Council) to develop a contract clause requiring contractors and subcontractors at any tier to comply with all guidance for contractor or subcontractor workplace locations published by the Task Force and to provide initial policy direction to acquisition offices for use of the clause by recommending that agencies exercise their authority under FAR subpart 1.4., Deviations from the FAR.

**Guidance**

The FAR Council has developed the attached clause pursuant to section 3(a) of the order to support agencies in meeting the applicability requirements and deadlines set forth in the order. Contracting officers should follow the direction for use of the clause set forth in the deviations issued by their respective agencies.

Agencies are reminded of the following points as they develop and issue their deviations:

1. Applicability and effective dates. In accordance with section 5 of the order, agencies are required to include an implementing clause in solicitations and contracts for services, including construction, in accordance with the following dates specified in section 6 of the order:

- new contracts awarded on or after November 14 from solicitations issued before October 15 (this includes new orders awarded on or after November 14 from solicitations issued before October 15 under existing indefinite-delivery contracts);
- new solicitations issued on or after October 15 and contracts awarded pursuant to those solicitations (this includes new solicitations issued on or after October 15 for orders awarded pursuant to those solicitations under existing indefinite-delivery contracts);
- extensions or renewals of existing contracts and orders awarded on or after October 15, 2021; and
- options on existing contracts and orders exercised on or after October 15, 2021.

To maximize the goal of getting more people vaccinated and decrease the spread of COVID-19, the Task Force strongly encourages agencies to apply the requirements of its guidance broadly, consistent with applicable law, by including the clause in:

- contracts that have been or will be awarded prior to November 14 on solicitations issued before October 15; and
- contracts that are not covered or directly addressed by the order because the contract or subcontract is under the simplified acquisition threshold or is a contract or subcontract for the manufacturing of products.

2. <u>Exclusions</u>.  The clause shall not be applied to:

- contracts and subcontracts with Indian Tribes under the Indian Self-Determination and Education Assistance Act (the exclusion would not apply to a procurement contract or subcontract under the FAR to an Indian-owned or tribally-owned business entity); or
- solicitations and contracts if performance is outside the United States or its outlying areas (the exclusion is limited to employees who are performing work only outside the U.S. or its outlying areas).

3. <u>Timing of deviations</u>. Agencies should act expeditiously to issue their deviations so that their contracting officers may begin to apply the clause on or before October 15, as explained above.  Agencies should review, and update as necessary, any relevant guidance previously provided to contractors to ensure consistency with the deviated FAR text.

4. <u>Civilian agency coordination of deviations</u>. Civilian agencies that adopt the attached clause language without change in their deviations will be presumed to have consulted with the Chair of the Civilian Agency Acquisition Council (CAAC) required by FAR 1.404(a)(1). However, if a civilian agency intends to use clause text different than the deviated clause text provided, the agency must consult with the CAAC Chair, William Clark, who will consult with OMB and the Task Force to ensure consistency with Administration policy.  Any such request must be emailed to <u>william.clark@gsa.gov</u>.

Once processed, agencies are requested to share the deviation widely among their workforces to ensure full awareness of, and compliance with, the order.

Civilian agencies should furnish a copy of their approved class deviations (including direction to the workforce, prescription for use of clause, and clause text) to the FAR Secretariat, General Services Administration, by emailing the deviation to <u>GSARegSec@gsa.gov</u>. Agencies must submit their class deviations no later than October 15, 2021.

5. <u>Length of deviation</u>.  The FAR Council has opened a case (FAR Case 2021-021, Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors) to make appropriate amendments in the FAR to reflect the requirements of the order.  Agencies are encouraged to make their deviations effective until the FAR is amended or the deviation is otherwise rescinded by the agency.

Attachment

DocuSign Envelope ID: 10A45C98-0721-4A14-9A28-456B20F035C8

**FAR Deviation Clause**

**Executive Order 14042**
**Ensuring Adequate COVID Safety Protocols for Federal Contractors**

Baseline is FAC 2021-07, published in the Federal Register on August 11, 2021.

*September 24, 2021*

**PART 52—SOLICITATION PROVISIONS AND CONTRACT CLAUSES**

\*\*\*\*\*

**Subpart 52.2—Text of Provisions and Clauses**

\*\*\*\*\*

**[52.223-99 Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors.**

**ENSURING ADEQUATE COVID-19 SAFETY PROTOCOLS FOR FEDERAL CONTRACTORS (OCT 2021) (DEVIATION)**

**(a) *Definition*. As used in this clause -**

***United States or its outlying areas* means—**

   **(1) The fifty States;**

   **(2) The District of Columbia;**

   **(3) The commonwealths of Puerto Rico and the Northern Mariana Islands;**

   **(4) The territories of American Samoa, Guam, and the United States Virgin Islands; and**

   **(5) The minor outlying islands of Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Islands, Navassa Island, Palmyra Atoll, and Wake Atoll.**

**(b) *Authority*. This clause implements Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, dated September 9, 2021 (published in the Federal Register on September 14, 2021, 86 FR 50985).**

**(c) *Compliance*. The Contractor shall comply with all guidance, including guidance conveyed through Frequently Asked Questions, as amended during the performance of this contract, for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force (Task Force Guidance) at** https://www.saferfederalworkforce.gov/contractors/

**(d) *Subcontracts*. The Contractor shall include the substance of this clause, including this paragraph (d), in subcontracts at any tier that exceed the simplified acquisition threshold, as defined in Federal Acquisition Regulation 2.101 on the date of subcontract award, and are for services, including construction, performed in whole or in part within the United States or its outlying areas.**

**(End of clause)]**

*****

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **THE STATE OF TEXAS, et al.** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | **No:** _____ |
| **JOSEPH R. BIDEN in his official capacity as** | § | |
| **President of the United States, et al.,** | § | |
| *Defendants.* | § | |
| | § | |

**DECLARATION OF ERIC BENTLEY**

My name is Eric Bentley, and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge and expertise of the matters herein stated.

1.      I am the Vice Chancellor and General Counsel of the Texas Tech University System ("TTUS") and have been in my current position since September of 2018. In this capacity, I oversee the legal matters for TTUS and its five component institutions: Texas Tech University ("TTU"), Texas Tech University Health Sciences Center ("TTUHSC"), Texas Tech University Health Sciences Center El Paso ("TTUHSC EP"), Angelo State University ("ASU"), and Midwestern State University ("MSU") (hereinafter collectively referred to as "TTUS").

2.      TTUS has numerous contracts with federal agencies that provide millions of dollars in funding, significant research, and important objectives that are critical to the educational mission of TTUS. Since Joe Biden's Executive Order 14042 ("Executive Order") was issued, some of the federal agencies that contract with TTUS have communicated with component institutions within TTUS regarding implementation of a contract provision to be in compliance with the

Executive Order. Some of these instances include, but are not limited to, the instances described herein.

3.      On October 27, 2021, TTU received notice from Sandia National Lab ("Sandia" or "SNL") (managed by NTESS – National Technology and Engineering Solutions of Sandia LLC) regarding their process for the implementation of the vaccine mandate contained in the Executive Order. In this notice, Sandia directed subcontractors to review the Covid 19 Workplace Safety Guidance for Federal Contractors and Subcontractors issued by the Safer Federal Workforce Task Force ("Task Force"). Sandia additionally stated covered subcontractors would be required to ensure their employees comply with the vaccine mandate and guidance published by the Task Force, with such requirements passed down to their lower tiered subcontractors. The notice stated that over the next few weeks, NTESS would start to include a new subcontract clause ensuring adequate COVID-19 protocols for subcontractors in new subcontracts. NTESS additionally indicated that they would notify current subcontractors if NTESS planned to add the clause to existing subcontracts. Within this notice, NTESS indicated that the vaccine mandate applies to (a) any subcontractor employee working on a covered contract, (b) any subcontractor employee working in connection with a covered contract, and (c) any subcontractor employee who would come into contact with individuals identified in (a) or (b) at subcontractor facilities (identified as a covered workplace location).

4.      TTU currently has four awards from Sandia. We have one additional award currently under negotiation. Combined, these awards amount to over $2 million currently, with the cumulative impact to TTU over the years that TTU has partnered with Sandia in excess of $10 million. Of the four awards currently held by TTU with Sandia, two currently meet or exceed the

Simplified Acquisition Threshold that would trigger the vaccine mandate. The additional award under negotiation also exceeds the Simplified Acquisition Threshold.

5.      The award under negotiation relates to the Wind Farm project that began in 2011 at the SNL/TTU Experimental Wind Farm. Since that time, it has evolved into the current SWiFT – Scaled Wind Farm Technology project. Since 2011, TTU has received approximately $2.5 million from Sandia for this project. Additionally, this project has assisted in generating several additional awards, as well as partnerships with other research collaborators. Sandia provided an additional $515,000 for an environmental research impact study specific to wind turbines, as well as $25,000 for a student intern program specific to wind engineering. Funding from Sandia has helped support approximately 25 graduate and undergraduate students. Sandia continues to make investments in the Wind Farm for future research. Losing this collaboration may affect future funding opportunities from Sandia, as well as other research partners that rely on the research from SWiFT. Additionally, it may affect the research space availability for both faculty and students studying wind engineering.

6.      TTU is currently under contract with NASA in an agreement that will be subject to renewal or extension in the Spring of 2022. On October 15, 2021, TTU received correspondence from NASA requesting that TTU sign a modification to the NASA contract incorporating clause 52.223-99 (Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors to implement the requirements of the Executive Order). The correspondence from NASA requested the amendment be signed and returned ASAP to ensure compliance with the directive.

7.      The current agreement TTU has with NASA exceeds $3 million, with an additional $1 million expected to be allocated for the final phase of the project. Consequently, the current

agreement meets the Simplified Acquisition Threshold. This Agreement is not, however, up for renewal as the current term does not expire until February 2022. In addition to one dedicated faculty member on this project, TTU uses project funds to pay two subcontractors who have substantial participation on the project, including several engineers and support personnel. Loss of this contract would result in the loss of these relationships as TTU would be unable to engage these subcontractors without the project funds.

8.      TTU has a long-standing relationship with NASA. For example, since 2008, TTU has received approximately $5 million in research funding from NASA.  Due to the nature of this specific project, should it be lost before completion of the final phase, the initial time and money spent on the project would be rendered useless. The research and innovations achieved by TTU and its subcontractors related to this project would not be fulfilled, thereby hindering TTU's research objectives.

9.      On October 21, 2021, TTUHSC received a memorandum from the U.S. Department of Justice Federal Bureau of Prisons regarding their process for the implementation of the Federal Vaccine Mandate. In this memorandum, the Bureau of Prisons stated that if TTUHSC's contract is identified as having activities that require immediate implementation the Bureau of Prisons would issue a bilateral modification as soon as practicable.

10.      The memorandum also stated that, in the interim, onsite contractor employees are required to comply with COVID-19 protocols. To allow the Bureau of Prisons to determine which protocols apply to onsite contractor employees, TTUHSC is required to (i) provide a roster of contract employees who are working onsite at a Department of Justice facility, annotating the

vaccination status of each employee within seven days of receipt of the Memorandum and (ii) collect and retain a Certification of Vaccination Form for each identified employee.

11.     TTUHSC was required to acknowledge receipt of the memorandum within 24 hours. TTUHSC acknowledged receipt and advised the Bureau of Prisons that it currently has no onsite contractor employees because all services are performed at TTUHSC. TTUHSC received a follow-up email from the Bureau of Prisons once again requesting a completed roster of onsite contractor employees. The current agreement TTUHSC has with the Bureau of Prisons totals in excess of $3 million.

12.     TTU entered into a 50-year ground lease with the U.S. Department of Agriculture ("USDA") for use of 50 acres of land on the TTU campus for nominal consideration in 1990. This lease is not subject to renewal or extension until 2040. On October 27, 2021, TTU received correspondence from the USDA indicating the USDA was strongly encouraged contractors holding leases that exceed the Simplified Acquisition Threshold to accept and incorporate the FAR clause derived from Executive Order by means of a contract modification at this time. The USDA further indicated that the modification to incorporate the FAR Clause was mandatory before the USDA will renew or extend the period of performance of a contract or exercise an option. For contracts below the Simplified Acquisition Threshold, the USDA similarly strongly encouraged contactors to accept the modification at this time.

13.     The requested modification made no other changes to the agreement other than the inclusion of the FAR clause related to Executive Order 14042. The lease in question is for nominal consideration and is therefore below the Simplified Acquisition Threshold.

14.     All the facts and information contained within this declaration are within my personal knowledge and are true and correct.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on this 29th day, October 2021, in Lubbock, Texas.


_____
ERIC BENTLEY

# EXHIBIT H

| From: | Amis, Wade S. (MSFC-PS51) |
| To: | Romo, Cui |
| Cc: | Spencer, Kim (MSFC-PS51); Cochran, Tyler C. (MSFC-PS50) |
| Subject: | RE: [EXTERNAL] RE: 80MSC20C0022 Mod 07 - COVID Admin Mod |
| Date: | Wednesday, November 10, 2021 11:22:23 AM |

Hi Cui,

Last week, the Safer Federal Workforce Task Force (Task Force) amended the deadline for the Federal contractor vaccination requirement in E.O. 14042 to align with the deadline in the Centers for Medicare & Medicaid Services rule and the OSHA COVID-19 Vaccination and Testing Emergency Temporary Standard.  Federal contractor employees covered under the requirements of the E.O. will now need to be fully vaccinated by January 18, 2022. The previous date was December 8, 2021. Given this extension, MSFC Procurement is continuing to pay invoices submitted by contractors who have not incorporated the COVID-19 clause into their contract while we await further guidance.

Do you have any updates on TTU's signing of the modification?

Thanks,
Wade S. Amis
Contracting Officer
NASA/Marshall Space Flight Center
Office of Procurement (PS51)

███████████████
███████████████
███████████████

---

**From:** Romo, Cui ███████████████
**Sent:** Tuesday, November 9, 2021 8:46 AM
**To:** Amis, Wade S. (MSFC-PS51) ███████████████
**Cc:** Spencer, Kim (MSFC-PS51) ███████████████; Cochran, Tyler C. (MSFC-PS50) ███████████████

**Subject:** RE: [EXTERNAL] RE: 80MSC20C0022 Mod 07 - COVID Admin Mod

Good afternoon Mr. Amis,

Thank you for the response.  Just to be clear, we have an outstanding amount left on the contract (approximately $800,000) that we were planning to submit for reimbursement of approximately $340,000 that will be paid by TTU to a subcontractor.  Just for clarification, are you saying that reimbursement for this amount paid by TTU to a subcontractor will be withheld if the current contract is not updated to incorporate the COVID-19 clause, or that payment associated with the anticipated new agreement in the spring of 2022 will be withheld?

Regards,

*Cui Romo, J.D.\*, CRA*
Senior Director
Office of Research Services
Texas Tech University

███████████████

*\*Not legal counsel for Texas Tech University (TTU). The Office of the General Counsel is the only authorized legal counsel for TTU. Any information provided in this e-mail, unrelated to TTU, is the sole opinion of the sender and does not reflect the view, endorsement, or opinion of the institution.*

*This e-mail transmission and attachments may contain privilege/confidential information only for the intended recipient(s). Intended recipients must secure the contents in compliance with all applicable state and/or federal requirements related to the privacy and confidentiality of such information, including the FERPA, FACTA and HIPAA Privacy guidelines.*

**From:** Amis, Wade S. (MSFC-PS51) ██████████████████
**Sent:** Wednesday, November 3, 2021 11:19 AM
**To:** Romo, Cui ███████████████
**Cc:** Spencer, Kim (MSFC-PS51) ██████████████████; Cochran, Tyler C. (MSFC-PS50)
██████████████████

**Subject:** RE: [EXTERNAL] RE: 80MSC20C0022 Mod 07 - COVID Admin Mod

Good Morning Cui,

Thank you for providing Texas Tech's response and rationale as to why the University is unable to sign the COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors modification at this time. While I understand TTU's reluctance to sign the modification, the NASA Associate Administrator for Procurement issued direction that payment on future invoices to all NASA contractors is to be withheld until the modification is executed to incorporate the COVID-19 clause into the contract. For full disclosure purposes, I wanted the University to be aware of the ramifications of not signing the modification.

Please let me know if you have any questions or would like to discuss further.

Thanks you,
Wade S. Amis
Contracting Officer
NASA/Marshall Space Flight Center
Office of Procurement (PS51)
█████████████
███████████████
██████████████████████

**From:** Romo, Cui ███████████████████
**Sent:** Tuesday, November 2, 2021 3:19 PM
**To:** Amis, Wade S. (MSFC-PS51) ███████████████████
**Subject:** [EXTERNAL] RE: 80MSC20C0022 Mod 07 - COVID Admin Mod

Good afternoon Mr. Amis.

Sorry for the delay.  Due to the nature of the modification, it was necessary for our office to receive guidance from our Office of General Counsel.  Attached are two letters.  One from our office, the Office of Research Services, and one from Texas Tech University System's Office of the General Counsel.

Please let me or our Office of General Counsel know if there are any questions concerning their letter.

Thank you,

*Cui Romo, J.D.\*, CRA*
Senior Director
Office of Research Services
Texas Tech University
███████████████

*\*Not legal counsel for Texas Tech University (TTU).  The Office of the General Counsel is the only authorized legal counsel for TTU.  Any information provided in this e-mail, unrelated to TTU, is the sole opinion of the sender and does not reflect the view, endorsement, or opinion of the institution.*

*This e-mail transmission and attachments may contain privilege/confidential information only for the intended recipient(s).  Intended recipients must secure the contents in compliance with all applicable state and/or federal requirements related to the privacy and confidentiality of such information, including the FERPA, FACTA and HIPAA Privacy guidelines.*

**From:** Amis, Wade S. (MSFC-PS51) ███████████████████
**Sent:** Monday, November 1, 2021 3:59 PM
**To:** Romo, Cui ███████████████
**Subject:** RE: 80MSC20C0022 Mod 07 - COVID Admin Mod

Good Afternoon Cui,

Hate to be a pest, but can you provide any update on the signature of the subject COVID mod?  My leadership is asking for status updates.  Thank you!

Thanks,
Wade S. Amis
Contracting Officer

NASA/Marshall Space Flight Center
Office of Procurement (PS51)



---

**From:** Amis, Wade S. (MSFC-PS51)
**Sent:** Friday, October 15, 2021 2:39 PM
**To:** Romo, Cui
**Cc:** Nagihara, Seiichi
**Subject:** 80MSC20C0022 Mod 07 - COVID Admin Mod

Good Afternoon Cui,

Please see the attached modification for TTU's review and signature.  The purpose of this modification is to incorporate 52.223-99 Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors (DEVIATION 21-03) to provide a procurement class deviation (PCD) from the FAR to implement the requirements of Executive Order (E.O.) 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, signed by the President on September 9, 2021 (and published in the Federal Register on September 14, 2021 at 86 FR 50985).

It would be greatly appreciated if you could ensure a signed copy of the modification is returned ASAP to ensure compliance with this directive.

Please let me know if you have any questions or need any additional information.  Thank you!

Thanks,
Wade S. Amis
Contracting Officer
NASA/Marshall Space Flight Center
Office of Procurement (PS51)



# EXHIBIT I

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al. | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Cause No. 3:21-cv-00309 |
| | § | |
| JOSEPH R. BIDEN, in his official | § | |
| Capacity as President of the | § | |
| United States, et al., | § | |
| *Defendants* | § | |

<u>DECLARATION OF MANDA HALL, M.D.</u>

My name is Manda Hall, M.D. and I am over 18 years of age and am competent to make this declaration.  I have personal knowledge and expertise of the matters stated herein.

1.    I am the Associate Commissioner for Community Health Improvement for the Department of State Health Services (DSHS).  In this capacity, I oversee four sections within the Division:  Maternal and Child Health, Environmental Epidemiology and Disease Registries, Vital Statistics (VSS), and Health Promotion and Chronic Disease Prevention.

2.    DSHS has contracts with federal agencies that provide millions of dollars in funding.  Since President Joseph Biden's Executive Order 14042 (Executive Order) was issued, some of the federal agencies who contract with DSHS have communicated with DSHS regarding implementation of contract addendums in order to be in compliance with the Executive Order.

1

3. On November 4, 2021, the National Cancer Institute of the National Institutes of Health (NCI/NIH) contacted DSHS regarding the implementation of Federal Acquisition Regulation (FAR) 52.223-99 with an existing contract (NCI/NIH contract). (Exhibit A) The addendum would require DSHS to comply with all guidance, including guidance conveyed through Frequently Asked Questions, as amended during the performance of the contract, for contractor workplace locations published by the Safer Federal Workforce Task Force (Task Force Guidance).  The due date given for signing the contract addendum was November 14, 2021.

4. The NCI/NIH contract is for $8,887,704 over seven years and partially funds the Texas Cancer Registry (TCR). (Exhibit B) If that money is lost, TCR will lose ten full-time equivalent (FTE) positions and an additional 1.25 FTE spread over six positions.  TCR will no longer be able to replace the current registry software with the Surveillance, Epidemiology, and End Results (SEER) program, meaning TCR would no longer be a SEER registry.  If TCR is no longer a SEER registry, that will impact others outside of DSHS.  Certain NCI/NIH grants require data from a SEER registry; four Texas cancer research institutions will not be able to apply for NCI/NIH grants using Texas data.

5. On October 22, 2021, the Centers for Disease Control and Prevention (CDC) contacted DSHS regarding the implementation of Federal Acquisition Regulation (FAR) 52.223-99 with an existing contract with the Pregnancy Mortality Surveillance System (PMSS contract).  (Exhibit C) The addendum would require DSHS to comply with all guidance, including guidance conveyed through Frequently Asked Questions, as amended during the performance of the contract, for contractor workplace locations published by the Safer Federal Workforce Task Force (Task Force Guidance).  The due date given for signing the contract addendum was November 9, 2021.  DSHS sought and obtained an extension to November 16, 2021.

6. DSHS provides records to the CDC Division of Reproductive Health in accordance with the Pregnancy Mortality Surveillance System (PMSS) contract. (Exhibit D) DSHS provides data regarding pregnancy-associated deaths and the corresponding birth or fetal death. If DSHS does not sign the amendment, CDC-PMSS will have incomplete surveillance data. This data is analyzed to provide a better understanding of the risk factors for and causes of pregnancy-related deaths in the United States and is used to identify prevention strategies.

7. All facts and information contained within this declaration are within my personal knowledge and are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct.

Executed on the 15th day of November, 2021 in Austin, Texas.

Manda Hall, MD
Digitally signed by Manda Hall, MD
Date: 2021.11.15 10:54:31 -06'00'

Manda Hall, M.D.

# EXHIBIT J

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, | |
| *Plaintiff,* | |
| v. | No. 3:21-cv-309 |
| JOSEPH R. BIDEN, in his official capacity as President of the United States; *et al.*, | |
| *Defendants.* | |

## DECLARATION OF CHERYL FULLER

1.   My name is Cheryl Fuller. I am over 18 and competent to make this declaration. The facts in this Declaration are based on my personal knowledge, and I would testify to these facts in open court if called upon to do so.

2.   I have served as the Vocational Rehabilitation (VR) Director for the Texas Workforce Commission (TWC) since September 1, 2016.

3.   My responsibilities in that position include overseeing VR Division programs that support people with disabilities to prepare for, obtain, maintain, and advance in meaningful employment. One of these VR Division programs is the Business Enterprises of Texas (BET), which provides employment opportunities for legally blind individuals to manage food service facilities on state, federal, and private properties. TWC is the designated State Licensing

Agency (SLA) which operates BET pursuant to the Randolph-Sheppard Act, 20 U.S.C. § 107 et seq., and corresponding regulations found at 34 C.F.R. § 395.1 et seq.

4.   I am aware of the President's Executive Order 14042 issued on September 9, 2021. I understand that order to require a clause, hereinafter referred to as "the clause", in certain federal contracts and contract-like instruments that would require contractors and subcontractors to comply with guidance published by the Safer Federal Workforce Task Force. This guidance, issued on September 24, 2021, requires, among other things, that contractor employees be fully vaccinated for COVID-19 by December 8, 2021, except in limited circumstances where an employee is legally entitled to an accommodation.

5.   I am also aware that the Governor of Texas has issued Executive Order GA-40 on October 11, 2021, which makes it illegal for any entity in Texas to compel the receipt of a COVID-19 vaccine by any individual, including an employee or consumer, who objects to such vaccination for "any reason of personal conscience, based on religious belief, or for medical reasons, including prior recovery from COVID-19."

6.   The BET program manages food services facilities on multiple federal properties located throughout Texas. The U.S. General Services Administration (GSA) has issued permits for vending facilities for the BET program pursuant to 34 C.F.R. § 395.34, which are issued for an indefinite period of time pursuant to 34 C.F.R. § 395.35(b). Additionally, the BET program has contracted directly

with the federal government to service cafeterias on four military bases pursuant to 34 C.F.R. § 395.33.

7.   On November 8, 2021, a Contract Specialist representing the interests of the Joint Base San Antonio (JBSA) contacted the BET program to request a bilateral modification to add the clause to Contract ID FA301618D0009. A summary dated September 29, 2021 of this contract award on the Department of Defense website states as follows:

> The Texas Workforce Commission, Austin, Texas, has been awarded a $17,056,243 firm-fixed-price modification (P00008) to previously awarded contract FA301618D0009 for full food services at Joint Base San Antonio (JBSA) - Fort Sam Houston, Texas. This modification exercises the third option period. Work will be performed at JSBSA - Fort Sam Houston and Camp Bullis, Texas, and is expected to be completed by Sept. 30, 2022. This modification brings the total cumulative face value of the contract to $68,957,537. Fiscal 2022 operation and maintenance funds in the amount of $1,531,775 are being obligated on Oct. 1, 2021. The 502d Contracting Squadron, JBSA-Randolph, Texas, is the contracting activity.

8.   Additionally, the GSA has contacted the BET director with a request to include the clause in all GSA permits for the BET program.

9.   Losing any of the BET contracts or permits would result in substantial harm to the BET program and TWC's ability to provide employment opportunities for legally blind Texans. In addition to the loss of employment opportunities, the BET program would also stand to lose a five-percent set-aside fee from net proceeds of these federal facilities. The BET program relies on these set-aside fees for purposes outlined in 40 Texas Administrative Code § 854.41, including the maintenance and replacement of equipment for use in BET,

purchase of new equipment, management services, and ensuring a fair minimum return to managers.

10. All the facts and information contained within this declaration are within my personal knowledge and are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 12, 2021.

_____
Cheryl Fuller

# EXHIBIT K

| potential_total_value_of_award | awarding_sub_agency_name | recipient_name |
|---|---|---|
| 33600 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 5629.6 | DEPT OF THE ARMY | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 461000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 221716.24 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS SYSTEM, THE |
| 10750000 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 9400000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 85000 | CENTERS FOR DISEASE CONTROL AND PREVENTION | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 4705000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 74797.6 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 244103.46 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 5460975 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 1022280 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, THE |
| 911653 | FOOD AND DRUG ADMINISTRATION | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 4695000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 971919.41 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 389280.51 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS SYSTEM |
| 1425250.9 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 999843.18 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 1686900 | EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | WORKFORCE COMMISSION, TEXAS |
| 630872 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 670000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 108938 | OFFICE OF THE SECRETARY | UNIVERSITY OF HOUSTON SYSTEM |
| 547054 | FOOD AND DRUG ADMINISTRATION | UNIVERSITY OF TEXAS M. D. ANDERSON CANCER CENTER, THE |
| 8670000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 3503988 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 4258096.67 | FOOD AND DRUG ADMINISTRATION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 171623.04 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 7635420.5 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 4616495.57 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 2039000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 209301.77 | DEPARTMENTAL OFFICES | UNIVERSITY OF TEXAS AT AUSTIN |
| 190655 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1197034.4 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 11788816 | DEFENSE ADVANCED RESEARCH PROJECTS AGENCY (DARPA) | UNIVERSITY OF TEXAS AT AUSTIN |
| 4648783.4 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 0 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 135000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 0 | DEPT OF THE NAVY | SAM HOUSTON STATE UNIVERSITY |
| 1030000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 666000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 12732 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A & M UNIVERSITY |
| 50000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 235600 | CENTERS FOR DISEASE CONTROL AND PREVENTION | TEXAS A & M UNIVERSITY |

| | | |
|---|---|---|
| 273103146 | OFFICE OF ASSISTANT SECRETARY FOR PREPAREDNESS AND RESPONSE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 750000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 315000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 50000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 697653 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 0 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 200000 | NATIONAL INSTITUTES OF HEALTH | TEXAS A & M UNIVERSITY |
| 120000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 36749.98 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF HOUSTON SYSTEM |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 37477 | CENTERS FOR DISEASE CONTROL AND PREVENTION | UNIVERSITY OF NORTH TEXAS |
| 156680.59 | STATE, DEPARTMENT OF | UNIVERSITY OF TEXAS AT AUSTIN |
| 24981.92 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 500000000 | NATIONAL INSTITUTES OF HEALTH | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 2379000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 720000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 5120 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 16320 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | LAMAR STATE COLLEGE-PORT ARTHUR |
| 1929739.85 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 106558.41 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 138370.06 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS SYSTEM, THE |
| 4686500 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 0 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 225000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 188418.94 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 5629.6 | DEPT OF THE ARMY | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 999999 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 8940 | INDIAN HEALTH SERVICE | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 106000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 9277896.2 | NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 9590922 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 210101 | DEPT OF THE ARMY | TEXAS TECH UNIVERSITY SYSTEM |
| 40416.67 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS ENGINEERING EXTENSION SERVICE |
| 20338760.35 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 63108.25 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 5629.6 | DEPT OF THE ARMY | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1557000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 175000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 99854.52 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 611157.22 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 287005 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 400000 | NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY | UNIVERSITY OF TEXAS AT AUSTIN |
| 53731.8 | DEPT OF THE ARMY | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 134724 | MARITIME ADMINISTRATION | TEXAS A & M UNIVERSITY AT GALVESTON |
| 250000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1276000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |

| | |
|---|---|
| 7732872.03 SOCIAL SECURITY ADMINISTRATION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 28000 US GEOLOGICAL SURVEY | TEXAS A&M AGRILIFE RESEARCH |
| 1526783.89 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 209265.36 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 147170 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 146780.3 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 150000 DEPT OF THE AIR FORCE | TEXAS A & M UNIVERSITY |
| 224715 FOOD AND DRUG ADMINISTRATION | UNIVERSITY OF TEXAS M. D. ANDERSON CANCER CENTER, THE |
| 1768156.42 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 3203633 FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 5317257.85 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 747215.32 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 3709488.9 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 200000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 4500 DEPT OF THE ARMY | TEXAS A&M UNIVERSITY-COMMERCE |
| 9999000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1532017 FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 115252.92 FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS ENGINEERING EXTENSION SERVICE |
| 4360000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 645767.72 VETERANS AFFAIRS, DEPARTMENT OF | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 7400 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 70000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2000 DRUG ENFORCEMENT ADMINISTRATION | WORKFORCE COMMISSION, TEXAS |
| 23000 DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 692128 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 151000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 2048000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 932948 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 20167951 FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 399996 FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 186411 OFFICE OF PROCUREMENT OPERATIONS | TEXAS A&M AGRILIFE RESEARCH |
| 4500000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 960814 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 400000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 100000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 222849 CENTERS FOR DISEASE CONTROL AND PREVENTION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 1343692.98 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 1500000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 32555.45 NATIONAL INSTITUTES OF HEALTH | TEXAS A&M AGRILIFE RESEARCH |
| 200000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 7333000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 342696.66 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 1953000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1741716.45 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1725000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 752180 VETERANS AFFAIRS, DEPARTMENT OF | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 635712 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |

| | | |
|---|---|---|
| 1530646.35 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT ARLINGTON |
| 36596.6 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A&M AGRILIFE RESEARCH |
| 8400 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 24750 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 197505.9 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS ENGINEERING EXTENSION SERVICE |
| 8250 | U.S. SECRET SERVICE | WORKFORCE COMMISSION, TEXAS |
| 841990 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 373204.7 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 266588.4 | DEPT OF THE ARMY | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 360979.21 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 3588516 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 20570 | DEPT OF THE AIR FORCE | UNIVERSITY OF TEXAS AT ARLINGTON |
| 5591578.11 | NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | TEXAS A & M UNIVERSITY |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1166274 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 301687 | U.S. CUSTOMS AND BORDER PROTECTION | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 18354 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A & M UNIVERSITY |
| 579345 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 3029581 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 496156.2 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 1371121 | DEPT OF THE ARMY | TEXAS TECH UNIVERSITY SYSTEM |
| 0 | MARITIME ADMINISTRATION | TEXAS A & M UNIVERSITY AT GALVESTON |
| 300 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | LICENSING & REGULATION, TEXAS DEPARTMENT OF |
| 11000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 33600 | DEPT OF THE AIR FORCE | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 820240 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 767947.5 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 9100 | INDIAN HEALTH SERVICE | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 320000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 0 | AGRICULTURAL RESEARCH SERVICE | TEXAS A&M AGRILIFE RESEARCH |
| 10778524.76 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 75327 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 421411.57 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 3541928.82 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 1380614.98 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 763542.05 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 360797.69 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 10000 | INTERNAL REVENUE SERVICE | TEXAS WORKFORCE COMMISSION |
| 3484507.88 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 2351288 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 77573.6 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT EL PASO |
| 526789 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 123510 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A & M UNIVERSITY |
| 10500 | OFFICE OF PERSONNEL MANAGEMENT | TRANSPORTATION, TEXAS DEPARTMENT OF |
| 800646 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |

| 6250 | DEPT OF THE ARMY | ENVIRONMENTAL QUALITY, TEXAS COMMISSION ON |
|---|---|---|
| 996041.54 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 110943 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A&M AGRILIFE RESEARCH |
| 30000000 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 653000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 8274 | AGRICULTURAL RESEARCH SERVICE | TEXAS TECH UNIVERSITY SYSTEM |
| 4600000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 473062.25 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 990000 | DEPT OF THE ARMY | TEXAS WORKFORCE COMMISSION |
| 57831 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 53330 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 92980 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS AT AUSTIN |
| 8887704 | NATIONAL INSTITUTES OF HEALTH | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 3525000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 9600000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 56333.27 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 9940000 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 53642.12 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF HOUSTON SYSTEM |
| 60300 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 947990.79 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 379600 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 62479.49 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS ENGINEERING EXTENSION SERVICE |
| 387352.62 | OFFICE OF PROCUREMENT OPERATIONS | TEXAS A&M AGRILIFE RESEARCH |
| 48000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 80399.7 | U.S. FISH AND WILDLIFE SERVICE | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 169503.25 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 145109 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 10322 | US GEOLOGICAL SURVEY | UNIVERSITY OF TEXAS AT AUSTIN |
| 3752362.88 | CENTERS FOR DISEASE CONTROL AND PREVENTION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 26837630.46 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 56000 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 3310943032 | OFFICE OF ASSISTANT SECRETARY FOR PREPAREDNESS AND RESPONSE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 12000 | CENTERS FOR DISEASE CONTROL AND PREVENTION | TEXAS A & M UNIVERSITY |
| 1513532 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2758943 | DEPT OF THE ARMY | TEXAS A & M UNIVERSITY |
| 137100 | US GEOLOGICAL SURVEY | TEXAS A&M AGRILIFE RESEARCH |
| 1371184.91 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 750000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2755030.4 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 638138.61 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 32070 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M. D. ANDERSON CANCER CENTER, THE |
| 5495000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 599828 | OFFICE OF PROCUREMENT OPERATIONS | TEXAS A&M AGRILIFE RESEARCH |
| 48000 | OFFICE OF PROCUREMENT OPERATIONS | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 1191330 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 4512607 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 310463.26 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |

| | | |
|---|---|---|
| 810140 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, THE |
| 81989926.61 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 90000 | DEPT OF THE ARMY | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| 733441 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 1261710.05 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 7090.59 | VETERANS AFFAIRS, DEPARTMENT OF | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 23940 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A & M UNIVERSITY |
| 225000 | BUREAU OF OCEAN ENERGY MANAGEMENT | UNIVERSITY OF TEXAS AT AUSTIN |
| 29089.32 | DRUG ENFORCEMENT ADMINISTRATION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 48687682.62 | HEALTH RESOURCES AND SERVICES ADMINISTRATION | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 4933.85 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 40595 | NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY | UNIVERSITY OF TEXAS AT AUSTIN |
| 649714.37 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 50000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 995000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 83178 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | TEXAS A&M UNIVERSITY-CORPUS CHRISTI |
| 240000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 2000720 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 885554 | DEPT OF THE ARMY | WORKFORCE COMMISSION, TEXAS |
| 250000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 120000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 124674.35 | DEPARTMENTAL OFFICES | UNIVERSITY OF TEXAS AT EL PASO |
| 1200000 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 9640000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2850 | AGRICULTURAL RESEARCH SERVICE | TEXAS A & M UNIVERSITY |
| 4939.78 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY THE |
| 2006000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 4446326.68 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 498253.76 | FOOD AND DRUG ADMINISTRATION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 29283.45 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 200000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 180250 | FOOD AND DRUG ADMINISTRATION | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 47720.32 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 1200923 | CENTERS FOR DISEASE CONTROL AND PREVENTION | TEXAS A&M AGRILIFE RESEARCH |
| 12498.24 | DEPT OF THE NAVY | UNIVERSITY OF HOUSTON SYSTEM |
| 419837 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1063451.57 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1362272 | FEDERAL HIGHWAY ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 50000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 767000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 6530 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 1095185.54 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 3080775 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1369403.75 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 159790.36 | DRUG ENFORCEMENT ADMINISTRATION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1740487.32 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS SYSTEM |
| 698779 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |

| | | |
|---|---|---|
| 114699 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 218000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 382352 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 347335.18 | VETERANS AFFAIRS, DEPARTMENT OF | GENERAL LAND OFFICE, TEXAS |
| 200349 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1896433 | DEPT OF THE ARMY | UNIVERSITY OF HOUSTON SYSTEM |
| 627582.48 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 1847543.88 | VETERANS AFFAIRS, DEPARTMENT OF | GENERAL LAND OFFICE, TEXAS |
| 71138 | NUCLEAR REGULATORY COMMISSION | UNIVERSITY OF TEXAS AT AUSTIN |
| 45161417 | DEPT OF THE ARMY | WORKFORCE COMMISSION, TEXAS |
| 372598 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 2688 | FOREST SERVICE | UNIVERSITY OF TEXAS AT AUSTIN |
| 20000 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 979494 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 2007700 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 700000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 4000000 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 12000 | FEDERAL BUREAU OF INVESTIGATION | WORKFORCE COMMISSION, TEXAS |
| 550800 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | LAMAR STATE COLLEGE-PORT ARTHUR |
| 1318393.47 | DEPT OF THE ARMY | TEXAS TECH UNIVERSITY SYSTEM |
| 895129 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 38000000 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 50000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 400000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 0 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 76022.59 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS ENGINEERING EXTENSION SERVICE |
| 2986946.19 | SOCIAL SECURITY ADMINISTRATION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 170141.89 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1740109.27 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 427335.34 | NUCLEAR REGULATORY COMMISSION | UNIVERSITY OF TEXAS AT AUSTIN |
| 9728703 | FOOD AND DRUG ADMINISTRATION | TEXAS STATE UNIVERSITY |
| 7710593 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 495248.4 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 80165 | ANIMAL AND PLANT HEALTH INSPECTION SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 136294.91 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 90000 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M. D. ANDERSON CANCER CENTER, THE |
| 591562.36 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 3712326 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 202975 | PUBLIC BUILDINGS SERVICE | UNIVERSITY OF TEXAS AT AUSTIN |
| 1492831.08 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 40595 | NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY | UNIVERSITY OF TEXAS AT AUSTIN |
| 9999052 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 442000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 11087.76 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 750000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 8537947.67 | NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | TEXAS A&M UNIVERSITY SYSTEM,THE |

| | | |
|---|---|---|
| 108504 | OFFICE OF PERSONNEL MANAGEMENT | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 684410 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 5532125.6 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 273568 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 241000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 4986145.81 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 20678 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT EL PASO |
| 281029.43 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 3488000.15 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 4276018.4 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 765003.26 | VETERANS AFFAIRS, DEPARTMENT OF | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 569586.41 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1126809.26 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 534594.07 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 19000000 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 12034 | PEACE CORPS | UNIVERSITY OF TEXAS AT AUSTIN |
| 169000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 23750 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 67003.47 | DRUG ENFORCEMENT ADMINISTRATION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 0 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | TEXAS A M UNIVERSITY AT GALVESTON |
| 1448665 | DEFENSE THREAT REDUCTION AGENCY (DTRA) | UNIVERSITY OF TEXAS AT AUSTIN |
| 16318565 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 440000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 89199000 | FEDERAL ACQUISITION SERVICE | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 127000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 100000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2600000 | FEDERAL ACQUISITION SERVICE | TEXAS A&M AGRILIFE RESEARCH |
| 48000000 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 259000 | SOCIAL SECURITY ADMINISTRATION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 720422 | NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 1135958 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 2039000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 103528.56 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 1200000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 402358.17 | VETERANS AFFAIRS, DEPARTMENT OF | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 14895.91 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 25000 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 200000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 225000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 849016 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 19012.18 | DEPT OF THE AIR FORCE | ENVIRONMENTAL QUALITY, TEXAS COMMISSION ON |
| 4252000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 455975 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS AT AUSTIN |
| 1661000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 229398 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 114666 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 15387.29 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |

| | | |
|---|---|---|
| 6743340.37 | NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 185200 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 33230 | DEPT OF THE ARMY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 18000 | ANIMAL AND PLANT HEALTH INSPECTION SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 5241000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 41100 | CONSUMER PRODUCT SAFETY COMMISSION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 26800 | DEPT OF THE AIR FORCE | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| 41910.87 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 3465000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 809604 | DEPT OF THE AIR FORCE | UNIVERSITY OF TEXAS AT AUSTIN |
| 9486000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 9068.36 | DEPT OF THE NAVY | UNIVERSITY OF HOUSTON SYSTEM |
| 600000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 91309 | DRUG ENFORCEMENT ADMINISTRATION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 51188.28 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 179852 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 132642.56 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1700000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1700000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1414000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 10000 | ANIMAL AND PLANT HEALTH INSPECTION SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 109673.21 | DRUG ENFORCEMENT ADMINISTRATION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 160464.25 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 736837.78 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 182625 | BUREAU OF LAND MANAGEMENT | TEXAS A&M AGRILIFE RESEARCH |
| 712518 | CENTERS FOR DISEASE CONTROL AND PREVENTION | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 49995000 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 200000 | ENERGY, DEPARTMENT OF | UNIVERSITY OF TEXAS AT AUSTIN |
| 600604.01 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 2173690.18 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 41998 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1745000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 50000000 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 77677.04 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 3037 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 54250 | FOOD AND DRUG ADMINISTRATION | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 74985.75 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 316847 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 691345.6 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 579563.81 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 103500 | OFFICES, BOARDS AND DIVISIONS | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 181460 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF TEXAS AT EL PASO |
| 288679.05 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 21380092 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 233124.9 | OFFICE OF PROCUREMENT OPERATIONS | TEXAS A&M AGRILIFE RESEARCH |
| 4608 | US GEOLOGICAL SURVEY | TEXAS TECH UNIVERSITY SYSTEM |

| | | |
|---|---|---|
| 73003.23 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 300000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 4012000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 300000 | STATE, DEPARTMENT OF | UNIVERSITY OF TEXAS AT AUSTIN |
| 3939.73 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 10000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 200000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 4255735 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 252463 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT EL PASO |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 15161.4 | DEPT OF THE NAVY | UNIVERSITY OF HOUSTON SYSTEM |
| 63336.79 | DEPT OF THE NAVY | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER AT EL PASO |
| 1106425.12 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1127642 | DEPT OF THE ARMY | WORKFORCE COMMISSION, TEXAS |
| 7970187 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 56695.89 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS ENGINEERING EXTENSION SERVICE |
| 4500000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 902000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 204891 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 153111.71 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 67282 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF HOUSTON SYSTEM |
| 10500 | FEDERAL PRISON INDUSTRIES / UNICOR | TEXAS DEPARTMENT OF CRIMINAL JUSTICE |
| 1228362.36 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1740000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 255000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2162000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 750000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 239931.51 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 6849924.55 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 47500 | INTERNAL REVENUE SERVICE | TEXAS WORKFORCE COMMISSION |
| 165000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 46533.28 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 3000000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 3060 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | LAMAR STATE COLLEGE-PORT ARTHUR |
| 2584514.32 | VETERANS AFFAIRS, DEPARTMENT OF | GENERAL LAND OFFICE, TEXAS |
| 15000 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | TEXAS A&M UNIVERSITY-CORPUS CHRISTI |
| 0 | OFFICE OF PROCUREMENT OPERATIONS | TEXAS A & M UNIVERSITY |
| 5000 | FOREST SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 2517999 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1017000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 200000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 6869.16 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 3779451.84 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 6000 | DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 530628.33 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 310586.1 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |

| | | |
|---|---|---|
| 106000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 292865.73 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 283141.6 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 191958.4 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 54823.84 | DRUG ENFORCEMENT ADMINISTRATION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 693237 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF TEXAS AT DALLAS |
| 125942 | DEPT OF THE ARMY | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| 246744 | FEDERAL HIGHWAY ADMINISTRATION | UNIVERSITY OF TEXAS AT SAN ANTONIO, THE |
| 446648.17 | OFFICE OF PROCUREMENT OPERATIONS | TEXAS A&M AGRILIFE RESEARCH |
| 456800 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 648403.39 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 20000000 | ANIMAL AND PLANT HEALTH INSPECTION SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 1136408.44 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 99798 | DEPT OF THE ARMY | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| 24645.92 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 3185246 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 547718.84 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 5925 | OFFICES, BOARDS AND DIVISIONS | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, THE |
| 67200 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 2880 | US GEOLOGICAL SURVEY | UNIVERSITY OF TEXAS AT AUSTIN |
| 20000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SYSTEM, THE |
| 1678844.56 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 86849.68 | MARITIME ADMINISTRATION | TEXAS A & M UNIVERSITY AT GALVESTON |
| 614850 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 27271.02 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 15332.43 | DEPT OF THE NAVY | TEXAS A & M UNIVERSITY |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 71000 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 22400 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 499998 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 59353.75 | DRUG ENFORCEMENT ADMINISTRATION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 3428123.02 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 567500 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT ARLINGTON |
| 401203 | CENTERS FOR DISEASE CONTROL AND PREVENTION | UNIVERSITY OF TEXAS AT AUSTIN |
| 1322099.58 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 50000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1519754.1 | HEALTH RESOURCES AND SERVICES ADMINISTRATION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 2235000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2779794 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 50000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1711427.98 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 50000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 113315.38 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 460586.08 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 465943.32 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 1217228 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT AUSTIN |

| | |
|---|---|
| 6319.3 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 1114732 FOOD AND DRUG ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 1389491.27 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 73256.09 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 163080 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 2982755.48 OFFICE OF PROCUREMENT OPERATIONS | UNIVERSITY OF TEXAS AT SAN ANTONIO |
| 1262094.5 DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 210200 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 489800 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 296217.03 DEPT OF THE ARMY | TEXAS TECH UNIVERSITY SYSTEM |
| 100000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1403837.46 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 258188.16 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 11060 INDIAN HEALTH SERVICE | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 650000 FEDERAL ACQUISITION SERVICE | UNIVERSITY OF TEXAS AT ARLINGTON |
| 4013000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 128250 SMITHSONIAN INSTITUTION | TEXAS SOUTHERN UNIVERSITY |
| 0 OFFICE OF PROCUREMENT OPERATIONS | UNIVERSITY OF HOUSTON SYSTEM |
| 100000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 3000000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 109935 DEPT OF THE AIR FORCE | ANGELO STATE UNIVERSITY |
| 155999.04 DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT SAN ANTONIO, THE |
| 53641.12 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF HOUSTON SYSTEM |
| 860000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 65885.88 DEPT OF THE NAVY | TEXAS A&M UNIVERSITY THE |
| 1423522.93 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 978859 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 10957998.7 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 3680000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 27475007.82 DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 275426.18 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 2046471.74 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 144000 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 500000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 23594745 FEDERAL ACQUISITION SERVICE | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 77973 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 625000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 764000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1103000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 240638 DEPT OF THE AIR FORCE | ANGELO STATE UNIVERSITY |
| 28000 U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT | TEXAS WORKFORCE COMMISSION |
| 778389 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 189191 FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 200000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 90000 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 750 DEPT OF THE NAVY | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 616516 MISSILE DEFENSE AGENCY (MDA) | TEXAS A & M UNIVERSITY |

| | | |
|---|---|---|
| 1391170 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 215010 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 159925.83 | VETERANS AFFAIRS, DEPARTMENT OF | GENERAL LAND OFFICE, TEXAS |
| 18045.22 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A&M AGRILIFE RESEARCH |
| 175000 | SMITHSONIAN INSTITUTION | UNIVERSITY OF TEXAS AT AUSTIN |
| 1485939 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M. D. ANDERSON CANCER CENTER, THE |
| 5100000 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 50860.15 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 3884831.6 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 1500000 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 17940 | OFFICE OF PERSONNEL MANAGEMENT | TEXAS STATE TECHNICAL COLLEGE |
| 671436 | FOOD AND DRUG ADMINISTRATION | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 2040 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | LAMAR STATE COLLEGE-PORT ARTHUR |
| 199797 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 335045 | U.S. SECRET SERVICE | UNIVERSITY OF TEXAS AT SAN ANTONIO, THE |
| 1526000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 100800 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 98009.6 | DRUG ENFORCEMENT ADMINISTRATION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 26550 | OFFICES, BOARDS AND DIVISIONS | MIDWESTERN STATE UNIVERSITY |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 32611.75 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 252342.01 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 5300000 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 287990.7 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1777200 | EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | TEXAS WORKFORCE COMMISSION |
| 1467602.71 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 1059187 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 849214.17 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 419680.88 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 155577.88 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 9170519.33 | SOCIAL SECURITY ADMINISTRATION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 30000 | DEPT OF THE NAVY | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| 4889773 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 114565.62 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 11996 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 40595 | ENERGY, DEPARTMENT OF | UNIVERSITY OF TEXAS AT AUSTIN |
| 66613.25 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS SYSTEM, THE |
| 431310 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | TEXAS A&M AGRILIFE EXTENSION SERVICE |
| 952900 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1645000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 25325062.75 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 507738.86 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 156000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 93450 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 349863 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 1939250 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1179383.38 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |

| | |
|---|---|
| 500000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 860000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 450471.78 NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 157948.6 DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 258927.44 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 1500000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 50000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 292947 DEPT OF THE ARMY | TEXAS A & M UNIVERSITY |
| 219662.6 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 1119623.31 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 103385.55 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 136000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 997110.81 DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 1000000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 0 DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 37531.22 DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 107274471 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 126264 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 5629.6 DEPT OF THE ARMY | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 200000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 110000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 31634.17 FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 925000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 47000 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 165000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 3600000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 803000 DEPT OF THE AIR FORCE | ANGELO STATE UNIVERSITY |
| 490491.22 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 100000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 106000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 2243292.61 VETERANS AFFAIRS, DEPARTMENT OF | GENERAL LAND OFFICE, TEXAS |
| 61305.36 FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 789112 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1756150.55 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 3465763 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 6575 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 5886000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 9969816 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 682560 FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 149205.2 DEPT OF THE NAVY | UNIVERSITY OF TEXAS SYSTEM, THE |
| 16750 DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 1440000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 15354.72 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 246500 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 699713 CENTERS FOR DISEASE CONTROL AND PREVENTION | TEXAS A&M AGRILIFE RESEARCH |
| 2544179.75 VETERANS AFFAIRS, DEPARTMENT OF | GENERAL LAND OFFICE, TEXAS |
| 0 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS AT DALLAS |

| | |
|---|---|
| 110000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1400000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 138277117.5 DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 15000 NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 9500000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 3000000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 185000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1604250 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 200000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 18000 DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 72000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 933217.02 DEPT OF THE NAVY | CENTRAL TEXAS COLLEGE |
| 9916201 DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 76000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 200000 ENVIRONMENTAL PROTECTION AGENCY | TEXAS A & M UNIVERSITY |
| 8200 OFFICE OF PERSONNEL MANAGEMENT | TRANSPORTATION, TEXAS DEPARTMENT OF |
| 6539216 DEFENSE THREAT REDUCTION AGENCY (DTRA) | UNIVERSITY OF TEXAS AT AUSTIN |
| 1432000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1189183.79 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 71028.06 FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 139541.56 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 3959.43 VETERANS AFFAIRS, DEPARTMENT OF | GENERAL LAND OFFICE, TEXAS |
| 5800000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 198324 DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT AUSTIN |
| 10957998.7 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 41960 CENTERS FOR DISEASE CONTROL AND PREVENTION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 149858 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS AT ARLINGTON |
| 20338760.4 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 45000 NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF NORTH TEXAS |
| 76157.68 DEPT OF THE NAVY | TEXAS A&M UNIVERSITY THE |
| 76902.47 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 5384238.64 FOOD AND DRUG ADMINISTRATION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 3399 FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 5000000 U.S. FISH AND WILDLIFE SERVICE | TEXAS A & M UNIVERSITY |
| 8729109.47 CENTERS FOR DISEASE CONTROL AND PREVENTION | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH HEALTH SYSTEMS |
| 78859.02 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 9211.45 U.S. FISH AND WILDLIFE SERVICE | TEXAS A&M AGRILIFE RESEARCH |
| 9280 FEDERAL BUREAU OF INVESTIGATION | PUBLIC SAFETY, TEXAS DEPARTMENT OF |
| 298395 DEPT OF THE AIR FORCE | ANGELO STATE UNIVERSITY |
| 10800 OFFICE OF PERSONNEL MANAGEMENT | TRANSPORTATION, TEXAS DEPARTMENT OF |
| 388380.88 VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 50250 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 200000 FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 562252.76 OFFICE OF PROCUREMENT OPERATIONS | TEXAS TECH UNIVERSITY SYSTEM |
| 5100000 DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 7453927.3 NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 86114763.42 DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |

| | | |
|---|---|---|
| 2821500 | DEPT OF THE NAVY | WORKFORCE COMMISSION, TEXAS |
| 6800000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 6000000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 3190815 | DEFENSE ADVANCED RESEARCH PROJECTS AGENCY (DARPA) | UNIVERSITY OF TEXAS AT AUSTIN |
| 156000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 5200 | DEPT OF THE ARMY | TEXAS A & M UNIVERSITY |
| 985587 | DEPT OF THE ARMY | TEXAS TECH UNIVERSITY SYSTEM |
| 185000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 165000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 76859.05 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS SYSTEM, THE |
| 6000 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT TYLER, THE |
| 65000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1360000 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 30351424.96 | HEALTH RESOURCES AND SERVICES ADMINISTRATION | UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, THE |
| 48818.68 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 649782.68 | OFFICE OF PROCUREMENT OPERATIONS | TEXAS A&M AGRILIFE RESEARCH |
| 5018.75 | DEPT OF THE ARMY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 275080.6 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 12528.96 | DEPT OF THE NAVY | UNIVERSITY OF HOUSTON SYSTEM |
| 4209.25 | NATIONAL INSTITUTES OF HEALTH | TEXAS A & M UNIVERSITY |
| 1940861.06 | NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 1869000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 15750 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 7000000 | NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 3000000 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT EL PASO |
| 3100000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2107057.85 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 157707.8 | DEPT OF DEFENSE EDUCATION ACTIVITY (DODEA) | UNIVERSITY OF TEXAS AT AUSTIN |
| 100000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 787450.19 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 260211.61 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 3500000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 20559.36 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY THE |
| 176951.74 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 250000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 2000 | DRUG ENFORCEMENT ADMINISTRATION | WORKFORCE COMMISSION, TEXAS |
| 1969.87 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 1962119.06 | VETERANS AFFAIRS, DEPARTMENT OF | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 16000 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 600143.96 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 15476741.34 | DEPT OF THE ARMY | CENTRAL TEXAS COLLEGE |
| 60249 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF TEXAS AT EL PASO |
| 1179662 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 3150000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 180000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 65000 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | TEXAS A&M UNIVERSITY-CORPUS CHRISTI |

| | | |
|---|---|---|
| 57120 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1058786.62 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1686804 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 40595 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 1060100 | CENTERS FOR DISEASE CONTROL AND PREVENTION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 162944.65 | DEPT OF THE AIR FORCE | CENTRAL TEXAS COLLEGE |
| 5200 | DEPT OF THE ARMY | TEXAS A & M UNIVERSITY |
| 40208 | CENTERS FOR DISEASE CONTROL AND PREVENTION | TEXAS TECH UNIVERSITY SYSTEM |
| 149985 | ANIMAL AND PLANT HEALTH INSPECTION SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 27262.57 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 2172054.14 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 157000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 905050 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 50000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1819000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 0 | OFFICES, BOARDS AND DIVISIONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 27484 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1090280193 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 14200 | OFFICES, BOARDS AND DIVISIONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 10000 | ANIMAL AND PLANT HEALTH INSPECTION SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 75870 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 43046.54 | US CENSUS BUREAU | UNIVERSITY OF TEXAS AT SAN ANTONIO, THE |
| 1166820.04 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 3321221.4 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 207903.75 | ANIMAL AND PLANT HEALTH INSPECTION SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 373791 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT EL PASO |
| 16800 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 468651.58 | VETERANS AFFAIRS, DEPARTMENT OF | GENERAL LAND OFFICE, TEXAS |
| 505743 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 6636445.37 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 350000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 283455 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT SAN ANTONIO, THE |
| 3151969 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1619559.55 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 10000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 966686 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1648108 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 9900000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 3488000.15 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1487125 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT EL PASO |
| 860248.86 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 8080000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 100000 | CENTERS FOR DISEASE CONTROL AND PREVENTION | TEXAS A&M AGRILIFE RESEARCH |
| 1190000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 172800 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | LAMAR STATE COLLEGE-PORT ARTHUR |
| 2607842 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 42224.89 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |

| | | |
|---|---|---|
| 1338446.03 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 242000 | CENTERS FOR DISEASE CONTROL AND PREVENTION | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1246762.88 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 40595 | STATE, DEPARTMENT OF | UNIVERSITY OF TEXAS AT AUSTIN |
| 987076.1 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 3760900 | VETERANS AFFAIRS, DEPARTMENT OF | TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER |
| 40000 | DEPT OF THE ARMY | PUBLIC SAFETY, TEXAS DEPARTMENT OF |
| 9550 | OFFICE OF PERSONNEL MANAGEMENT | TRANSPORTATION, TEXAS DEPARTMENT OF |
| 0 | CENTERS FOR DISEASE CONTROL AND PREVENTION | STATE HEALTH SERVICES, TEXAS DEPARTMENT OF |
| 4749450 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 750000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 74970 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 53200 | DEPT OF THE AIR FORCE | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 69700 | DEPT OF THE AIR FORCE | UNIVERSITY OF TEXAS AT SAN ANTONIO, THE |
| 22509.65 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 3115187 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | TEXAS TECH UNIVERSITY SYSTEM |
| 2000 | DRUG ENFORCEMENT ADMINISTRATION | WORKFORCE COMMISSION, TEXAS |
| 111180 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, THE |
| 3339000 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 67920 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 846288.93 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 200000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1545776 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 970000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 28560 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A & M UNIVERSITY |
| 50000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 4550000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 5834100.2 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 977043.03 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 250000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 104173.11 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS AT DALLAS |
| 160000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 160689.46 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1220000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 24700 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 52020 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | LAMAR STATE COLLEGE-PORT ARTHUR |
| 3297784.93 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 1410000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 8638 | OFFICES, BOARDS AND DIVISIONS | UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON |
| 860000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 16800 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 10900 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | TEXAS A&M AGRILIFE RESEARCH |
| 750000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 146000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1723085 | U.S. SECRET SERVICE | UNIVERSITY OF TEXAS AT SAN ANTONIO, THE |
| 7517.52 | U.S. FISH AND WILDLIFE SERVICE | TEXAS A&M AGRILIFE RESEARCH |

| | | |
|---|---|---|
| 2440258.16 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 1800 | ANIMAL AND PLANT HEALTH INSPECTION SERVICE | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 9000000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 282.75 | U.S. MARSHALS SERVICE | TEXAS DEPARTMENT OF MOTOR VEHICLES |
| 320 | U.S. COAST GUARD | TEXAS A M UNIVERSITY AT GALVESTON |
| 633243 | FEDERAL HIGHWAY ADMINISTRATION | TEXAS A&M TRANSPORTATION INSTITUTE |
| 470322.87 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER OF SAN ANTONIO |
| 1905000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1234813.06 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 4300488.26 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 33195 | DEPT OF DEFENSE EDUCATION ACTIVITY (DODEA) | UNIVERSITY OF TEXAS AT AUSTIN |
| 147902.69 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | TEXAS A&M UNIVERSITY-CORPUS CHRISTI |
| 892000 | DEPT OF THE NAVY | THE UNIVERSITY OF TEXAS AT AUSTIN |
| 79000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 794987.68 | FOOD AND DRUG ADMINISTRATION | TEXAS A&M AGRILIFE RESEARCH |
| 9400000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 6300 | AGRICULTURAL RESEARCH SERVICE | TEXAS TECH UNIVERSITY SYSTEM |
| 26350 | ATF ACQUISITION AND PROPERTY MGMT DIV | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 1005797.99 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS AT EL PASO |
| 214488.86 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, THE |
| 36847 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM,THE |
| 1340619.47 | NATIONAL INSTITUTES OF HEALTH | UNIVERSITY OF TEXAS M D ANDERSON |
| 48412 | DEPT OF THE ARMY | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 200095.21 | FEDERAL EMERGENCY MANAGEMENT AGENCY | TEXAS ENGINEERING EXTENSION SERVICE |
| 200000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 1317929.86 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 29684837.47 | DEPT OF THE AIR FORCE | TEXAS WORKFORCE COMMISSION |
| 612558.1 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 243296.27 | VETERANS AFFAIRS, DEPARTMENT OF | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER |
| 31085 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 173947 | NATIONAL AERONAUTICS AND SPACE ADMINISTRATION | UNIVERSITY OF TEXAS AT ARLINGTON |
| 84000 | DEPT OF THE NAVY | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 106000 | FEDERAL PRISON SYSTEM / BUREAU OF PRISONS | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| 148500 | FOOD AND DRUG ADMINISTRATION | UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, THE |
| 2535 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER |
| 0 | FEDERAL ACQUISITION SERVICE | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 184900 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 620150 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 1085754 | WASHINGTON HEADQUARTERS SERVICES (WHS) | TEXAS A&M UNIVERSITY SYSTEM, THE |
| 810000 | U.S. COAST GUARD | TEXAS A&M ENGINEERING EXTENSION SERVICE |
| 2995000 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |
| 4800000 | FEDERAL AVIATION ADMINISTRATION | TEXAS A&M UNIVERSITY-CORPUS CHRISTI |
| 7689 | NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION | UNIVERSITY OF TEXAS AT AUSTIN |
| 12092.38 | MARITIME ADMINISTRATION | TEXAS A M UNIVERSITY AT GALVESTON |
| 0 | DEPT OF THE NAVY | UNIVERSITY OF TEXAS AT AUSTIN |

7,331,711,335.65

# EXHIBIT L

| prime_award_awarding_sub_agency_name | prime_awardee_name | subaward_amount | subawardee_name |
|---|---|---|---|
| NATIONAL INSTITUTES OF HEALTH | BAYLOR COLLEGE OF MEDICINE | 6746364 | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, THE |
| DEPT OF THE AIR FORCE | UNIVERSITY OF ILLINOIS | 145000 | UNIVERSITY OF TEXAS AT DALLAS |
| DEFENSE THREAT REDUCTION AGENCY (DTRA) | BOARD OF REGENTS OF THE UNIVERSITY OF NEBR | 74857 | UNIVERSITY OF TEXAS AT AUSTIN |
| WASHINGTON HEADQUARTERS SERVICES (WHS) | STEVENS INSTITUTE OF TECHNOLOGY (INC) | 92183 | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| AGENCY FOR HEALTHCARE RESEARCH AND QUALI | UNIVERSITY OF NEW MEXICO | 1800000 | TEXAS A&M UNIVERSITY SYSTEM, THE |
| DEPT OF THE ARMY | CARNEGIE MELLON UNIVERSITY | 200000 | UNIVERSITY OF TEXAS AT AUSTIN |
| AGENCY FOR HEALTHCARE RESEARCH AND QUALI | UNIVERSITY OF NEW MEXICO | 600000 | UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH |
| DEFENSE THREAT REDUCTION AGENCY (DTRA) | BOARD OF REGENTS OF THE UNIVERSITY OF NEBR | 83042 | UNIVERSITY OF TEXAS AT AUSTIN |
| DEPT OF THE AIR FORCE | UNIVERSITY OF MARYLAND | 122000 | TEXAS A&M UNIVERSITY SYSTEM, THE |
| DEPT OF THE ARMY | CARNEGIE MELLON UNIVERSITY | 474390 | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| DEPT OF THE ARMY | CARNEGIE MELLON UNIVERSITY | 299215 | UNIVERSITY OF TEXAS AT AUSTIN |
| DEPT OF THE AIR FORCE | UNIVERSITY OF MARYLAND | 650000 | TEXAS A & M UNIVERSITY |
| OFFICE OF PROCUREMENT OPERATIONS | UNIVERSITY OF FLORIDA | 850854 | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| US GEOLOGICAL SURVEY | UNIVERSITY OF CONNECTICUT | 21292 | TEXAS TECH UNIVERSITY SYSTEM |
| DEPT OF THE ARMY | CARNEGIE MELLON UNIVERSITY | 300000 | TEXAS A&M ENGINEERING EXPERIMENT STATION |
| NATIONAL AERONAUTICS AND SPACE ADMINISTR | CORNELL UNIVERSITY, INC | 37998 | TEXAS A & M UNIVERSITY |
| AGENCY FOR HEALTHCARE RESEARCH AND QUALI | UNIVERSITY OF NEW MEXICO | 600000 | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, THE |
| AGENCY FOR HEALTHCARE RESEARCH AND QUALI | UNIVERSITY OF NEW MEXICO | 600000 | TEXAS A&M UNIVERSITY SYSTEM, THE |
| AGENCY FOR HEALTHCARE RESEARCH AND QUALI | UNIVERSITY OF NEW MEXICO | 200000 | UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, THE |
| NATIONAL AERONAUTICS AND SPACE ADMINISTR | REGENTS OF THE UNIVERSITY OF CALIFORNIA, THE | 6442251 | UNIVERSITY OF TEXAS AT DALLAS |

20,339,446.00

# EXHIBIT M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | Case No. 3-21-CV-309 |
| | § | |
| | § | |
| JOSEPH R. BIDEN in his official capacity as | § | |
| President of the United States, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

I, James Carducci, declare as follows:

1. I am 39 years of age and I am a resident of Randall County, Texas.

2. I have personal knowledge of the facts asserted herein and could and would testify to these facts if called as a witness.

3. I hold both an engineering degree and a Master of Business Administration from West Texas A&M University and have 20 years of relevant experience.

4. I am employed at Consolidated Nuclear Security LLC, Pantex Plant, ("Pantex") as a Senior Contract Administrator and have served in this position for the last three years. My job responsibilities require me to plan, solicit, award and administer different types of contracts in accordance with established policies and procedures; interpret specifications and statements of work; analyze proposals where price and/or technical evaluations are involved and makes decisions involving multiple objectives.

5. I have obtained Q clearance authorization, the United States Department of Energy security clearance required to access Top Secret Restricted Data, Formerly Restricted Data, and National Security Information, as well as Secret Restricted Data. It would take at a minimum of six months to a year to train a candidate to replace my position plus additional time for a security clearance.

6. I research and interpret regulations and contract requirements and I establish objectives, performance criteria and measures regarding contract administration. My position requires knowledge of computerized purchasing operations, legal and ethical aspects of procurement procedures,and the selection and evaluation of contractors; comprehensive

knowledge of cost/price analysis theories and techniques, negotiation strategies and techniques, and the award andadministration of various types of contracts including fixed-price, cost reimbursement and labor-hour/time-and-material.  All of these task are carefully tailored to the nuclear industry.

7.  To do my job I have to daily demonstrate proficiency and knowledge of business and project management, particularly the economics of materials and operations management required as well as specific knowledge of automated procurement applications, supply chain management, quality assurance (ISO 9000), training programs and audit/assessment techniques.

8.   I have fully complied with all previous Pantex protocols for prevention of transmission of the COVID-19 virus, including self-assessment, social distancing, frequent hand washing and temperature checks on site and wearing a mask at all times while at the plant.  I fully agree to continue complying with these precautions.

9.  On or about October 12, 2021, I learned that CNS Pantex will require all employees to be vaccinated for COVID-19 or be terminated from their employment.

10. My sincerely held religious beliefs prevent me receiving any of the three currently available COVID-19 vaccines because they are derived from aborted fetal cell lines. Additionally, I have concerns regarding the lack of research and disturbing data regarding the potential effects of the vaccine on fertility.  Our family plans to have more children and taking action that would prevent us from having more children would be a violation of my sincerely held religious beliefs.

11. If I am terminated from my employment, it will cause a major disruption in the Pantex operations, and the hardships on myself and my family will be devastating.

12. I am currently the sole provider for my wife, two young children and my father. My father lives with us and is in hospice care following a deterioration in health while he was awaiting a lung transplant for which he is no longer eligible.  If I were to lose my employment, I could no longer support my father or pay for his expensive prescription medications.  This would undoubtably result in his death.

13. My wife and children would also be horrifically impacted as I am the sole provider for the family and would be unable to obtain any comparable employment to care for them without the vaccination. This stress and pressure regarding the vaccine mandate has already caused significant pain, fear and uncertainly for my family.

14. I would like to continue to work at Pantex in my current position, working remotely from home, maintain the status quo with the same safety precautions in place to prevent any potential transmission or contraction of the Covid 19 virus.

15. There is no reason to force me to be vaccinated or alter any of my work conditions.  I will work and follow all safety precautions previously provided by Pantex there is no safety risk that I could transmit COVID-19 to others.Allowing me to complete my important work and maintain the status quo as to preventative measures against COVID would accommodate my religious beliefs andwould  not cause any hardship.

I declare under penalty of perjury that this was executed in Amarillo Texas, on November 11, 2021

*James Carducci*

Digitally signed by James Carducci
Date: 2021.11.11 17:44:55 -06'00'

_____

James Carducci, Declarant

# EXHIBIT N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | Case No.  3:21-CV-309 |
| | § | |
| | § | |
| JOSEPH R. BIDEN in his official capacity as | § | |
| President of the United States, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

I,  Justin Whitehead, declare as follows:

1. I am over 18 years of age and I am a resident of Panhandle, Texas.

2. I have personal knowledge of the facts asserted herein and would and could competently testify to them if called as a witness.

3. I object to the vaccine mandate on religious and personal objections and will not accept a forced injection of the current vaccines that Pantex is requiring. I will not take this inoculation out of our sincerely held religious beliefs against abortion and using mRNA. All of the three currently available COVID-19 vaccines are produced by, derived from, manufactured with, tested on, developed with, or otherwise connected with aborted fetal cell lines.  I believe that the use of aborted fetuses in development of vaccines incentivizes abortion, which is wrong and against my religious beliefs.  Also, mRNA is genetic material, and the mRNA vaccines can be looked at as a genetic-based therapy which I believe is wrong and against the teaching of the Bible.

4. I am employed at Consolidated Nuclear Security LLC,  Pantex Plant, ("Pantex") for 15 years.  My current title is Nuclear High Explosive Operations Supervisor and I have served in this position for the last two years. I currently supervise up to 60 individuals at the plant and I am certified in four different weapons programs.

5.   Prior to this position I served for 13 years as a production technician.  My job responsibilities require me to manage, oversee, and supervise the assembling, disassembling, inspection and testing of components and parts associated with the nuclear explosive stockpile with a high degree of skill and accuracy using written procedures. I must keep accurate records, including completion of applicable weapons processing forms and inputs data into related computer equipment as directed on work assigned.

6.   I am required to perform assignments with a high degree of quality and efficiency exercising prescribed safety and security measures while following procedures verbatim with a high degree of accuracy. This includes updating the necessary forms and records essential for a step-by-step performance of work.

7.   Based on my 15 years of training and experience I am able to recognize defects in materials and workmanship which is critical for safety and I am able to verify proper parts, tools, and procedures for job assigned. I am also responsible for maintaining a knowledge of applicable Federal, State, DOE, Corporate and Plant rules, regulations, Labor Agreements and Plant-wide operating policies and procedures.

8.   My position requires Q clearance authorization, the United States Department of Energy security clearance required to access Top Secret Restricted Data, Formerly Restricted Data, and National Security Information, as well as Secret Restricted Data.

9.   I have also obtained Human Reliability Program ("HRP") certification. The HRP is a security and safety reliability program designed to ensure that individuals who occupy positions affording access to nuclear explosive devices, facilities, and programs meet the highest standards of reliability and physical and mental suitability. I am required to attend and successfully complete required training classes for the position pursuant to DOE Order 426.2 and as determined by management.

10. It would be a major disruption to the Pantex nuclear operations if I were to be terminated or forced to resign based on my objection to the vaccine mandate.

11. As a supervisor of four weapons programs and 60 individuals I can attest that every single individual employee is a very important part of the operations.

12.  If we were to lose 5% of our technicians we may have to close facilities and or delay the shipment date of weapons which could put our national security at risk.

13. I would like to continue working at CNS Pantex, in my current position.  I currently comply with all Pantex COVID-19 precautions and will continue to do so including, social distancing, self-assessment, frequent hand washing and temperature and wearing a mask at all times at the plant.  I fully agree to continue complying with these precautions.

14. The termination of myself resulting from refusal to accept the mandated vaccine injection will cause immense personal hardship.

15. My children CAN NOT live without my financial support and medical insurance.  Both of my children have serious, lifelong medical conditions that require tremendous care. My oldest child has Ehlers Danlos Syndrome-hypermobile, a lifelong degenerative condition.  My second child was diagnosed with Robertsonian Translocation Down Syndrome while my wife was still pregnant.

16.  My children have faced many terrifying health obstacles in their young lives, including my youngest undergoing open-heart surgery at 4 months old.   Both of my children require constant medical care and expensive prescription medications.   If I am furloughed or lose my job, their lives will literally be left in the balance between life and death.

17. I would like to continue to work at Pantex in my current position, with the same safety precautions in place to prevent transmission of COVID-19.  As I work and follow all safety precautions previously provided by Pantex there is no safety risk that I could transmit COVID-19 to others.  Allowing me to complete my important work and maintain the status quo as to preventative measures against COVID would accommodate my religious beliefs and would  not cause any hardship on Pantex.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and this was executed in Amarillo Texas, on November 11, 2021.

Digitally signed by Justin Whitehead Date: 2021.11.11 17:44:55 -06'00'

*Justin Whitehead*

Justin Whitehead, Declarant

# EXHIBIT O

## DECLARATION OF MICHAEL FORD

1.      My name is Michael Ford, and I am over the age of 18 and fully competent in all respects to make this declaration.  I have personal knowledge and expertise of the matters herein stated.

2.      I am a 36-year veteran of the nuclear industry with experience in numerous industry sectors, including radioactive waste (high and low level), spent nuclear fuel, nuclear weapons, state and federal policy development affecting the nuclear industry, licensing and safety basis development, worker safety and workforce monitoring in highly hazardous nuclear environments and regulatory compliance auditing within each area of activity.  Most of my career has been dedicated to supporting the United States' nuclear weapon complex (national laboratories, material production sites, and nuclear weapons facility).  I was employed for 16 years in direct support of the US nuclear weapons stockpile.  For approximately ten years, I was a Captain for an element of the Department of Energy's (DOE) Radiological Assistance Program (RAP) as both a trainee and trainer of personnel for responses to nuclear accidents that could involve radiological, nuclear, chemical and/or biological threats. I have two degrees from Texas A&M University: a Bachelor of Science degree in Radiological Health Engineering and a Master of Science degree in Health Physics.

3.      I have served as a governor-appointed official for the state of Texas under Governor Bush and Governor Perry from 1997 to 2011, particularly as a member of the Texas Radiation Advisory Board from 1997 to 2009 and was chair of the board from 2002-2009.   I was honored to serve as the inaugural chair of the Texas Low-Level Radioactive Waste Disposal Compact Commission from 2008 to 2011.

4.      I have personal knowledge of the facts asserted herein and could and would testify to them if called as a witness in this matter.

5.      I have been coordinating with over 100 Pantex employees who are refusing to get vaccinated and will surrender their employment if forced to be vaccinated.  Based on their

sensitive work environment, any accommodations that alter any existing work procedures would need substantial analysis complying with long standing protocols governing the nuclear work force.  Unless careful and thorough analysis is completed, and this cannot be rushed, their work environments must remain identical to what existed before the mandate.

6.      The nuclear weapon industry is extremely complex, and  its work environment cannot be altered with a "one size fits all" order requiring injection of a chemical substance into a nuclear weapon builder's body,  particularly where that injection is objectionable based on personal beliefs, or medical concerns. Disrupting this work force without a tailored, carefully deployed plan assessed on each individual's role, with substantial opportunity to carefully measure the risk on national security, is an exceedingly bad idea.

7.       Individuals who have worked at Pantex for decades and who have amassed high degrees of expertise on highly classified weapon systems and weapon components and/or testing are essential to the success of the United States' national security mission.

8.      The plant is managed and operated for the United States Department of Energy's National Nuclear Security Administration (NNSA) by Consolidated Nuclear Security, LLC (CNS). CNS comprises member companies Bechtel National, Inc., Leidos, Inc., Orbital ATK, Inc, and SOC LLC, with Booz Allen Hamilton, Inc. as a teaming subcontractor.  CNS also operates the Y-12 National Security Complex under the same management and operating (M&O) contract as the Pantex Plant.

9.      If individuals that have amassed the knowledge and expertise are not retained over successive M&O contractor changes/transitions, there could be massive disruption to the nuclear weapon enterprise, which could place the  DOE/NNSA's obligations to deliver certified nuclear weapons to the military on a pre-established schedule in significant jeopardy.

10.      For the last 70 years, the United States has conducted the maintenance, modification, storage, and retirement of its nuclear weapon arsenal at the Pantex Plant, a 16,000-acre site 17-miles east of Amarillo, TX in Carson County.

11.     The personnel that support the nuclear explosive operations, as well as those that review and authorize the safety of those programs, are highly vetted and trusted and have expertise in critical operations that takes years to amass.  Indeed, there are certain individuals at Pantex that are the nation's top experts on a given weapon system, weapon component, or weapon test process that cannot be replaced by merely putting out a job posting for a college graduate or experienced engineer or scientist.

12.     Precisely because of the classified nature of the operations, the acquisition of knowledge and expertise occurs very slowly as persons (a) demonstrate a need-to-know, (b) are granted access to compartmented, classified information, (c) gain understanding of the new information, and (d) repeat the access-knowledge-and-skill-development cycle for all classified operations within their scope of job responsibilities.

13.     Because the main mission of the Pantex Plant involves the highly hazardous processes of assembling, disassembling, and modifying nuclear weapon assemblies where the plutonium core is intentionally wrapped in high explosives, any changes to any part of the processes that govern nuclear weapon operations are highly scrutinized and controlled.

14.     The mere change of a few words in a nuclear weapon assembly or disassembly procedure might require months of review and approvals by experts at Pantex, national laboratories, and the NNSA.  In fact, all changes to procedures, materials, and tooling are heavily scrutinized in these tightly controlled environments.

15.     As a condition of continued indemnification of federal contractors engaged in hazardous nuclear operations on behalf of the federal government via the Price Anderson Act, contractors are required to rigorously adhere to the "Nuclear Safety Management" rules found in 10 CFR 830 that "[govern] the conduct of DOE contractors, DOE personnel, and other persons conducting activities (including providing items and services) that affect, or may affect, the safety of DOE nuclear facilities."[1]

---

[1] 10 CFR 830.1 – Scope.

16.     When reviewing changes that may affect the safety of DOE nuclear facilities, contractors are required to screen the changes for any unanalyzed hazards.  Per the Nuclear Safety Management rules, "hazards" are defined as "a source of danger (i.e., material, energy source, or operation) with *the potential to cause* illness, injury, or death to a person or damage to a facility or to the environment (without regard to the likelihood or credibility of accident scenarios or consequence mitigation)."[2]

17.     In the event that unanalyzed hazards may encroach over time in a nuclear operation or facility at Pantex, a comprehensive, top-to-bottom Nuclear Explosive Safety Study (NESS) is conducted every ten years. An additional Operational Safety Review (OSR) is conducted within five years of the NESS to review all changes (tooling, procedures, testing, materials, etc.) that took place since the last NESS.  Additionally, Master Studies are a NESS conducted every five years on activities and processes that support nuclear explosive programs

18.     Forcing through the rushed mandate of immediate deployment of these vaccines, that may in fact qualify under these strict guidelines as an "unanalyzed hazard", is a direct violation of nuclear safety rules to both Pantex employees and the nation.  This failure to carefully analyze the impact of the rushed and forced deployment of these vaccines, coupled with the fall out of numerous Pantex expert technicians who may be forced to resign in protest, creates a substantial hazard that must be abdicated.

19.     Unless this Executive Order 14042 mandate is reversed, there will be a major disruption in the building, storing, repairing and maintaining of nuclear weapons for the United States, causing a massive safety and security risk to the nation and the world.

---

[2] 10 CFR § 830.3 - Definitions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and this was executed in Amarillo Texas, on November 12, 2021.

_____
Michael Ford

# EXHIBIT P

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | Case No. 3:21-CV-309 |
| | § | |
| | § | |
| JOSEPH R. BIDEN in his official capacity as | § | |
| President of the United States, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

I, Tiina Perlman declare as follows:

1. I am 56 years of age and work out of Dallas, Texas. I currently reside in Globe, Arizona.

2. I have personal knowledge of the facts asserted herein and would and could competently testify to them if called as a witness.

3. I have held my commercial pilot license since 1990 and have consistently worked in the airline industry since that time. I currently have 17,000 hours experience. I am an American Airlines First Officer on the 787 Dreamliner aircraft, which flies international routes.  In that position my primary responsibility includes assisting the Captain.  I have worked for American Airlines for 21 years.  I presently fly internationally for American Airlines at least two times each week (one roundtrip flight) and I am based out of Dallas Texas. I am in Dallas at least once a week for my weekly international flights. I occasionally fly domestic flights; if so, those flights include more legs.

4. I object to taking the Covid 19 vaccines, and I  have requested an exemption to the COVID19 vaccination based on my sincerely held religious beliefs that prevent me from taking the vaccine because it is derived from aborted fetal cell lines. If forced to take the vaccines, I will resign my employment.

5. I am not alone as there a large numbers of American Airline pilots that all are united in objecting to being injected by these vaccines. In addition to religious objections, there is substantial fear of health conditions that could cause catastrophic events if they disrupt mental capacity during flight.

6. My job requires extensive flight experience and not simply aviation knowledge acquired from books or simulator experience. The experience component is critical and I firmly believe that if American Airlines lowered its hiring requirements to accommodate a sudden loss of pilots due to the vaccine mandate, the American public would be in grave danger.

7. A pilot must have real life experience in the cockpit to fully understand how to deal with unanticipated situations and challenging routes. Book and simulator knowledge are inadequate replacements for real world cockpit experience.  Training to learn a new aircraft can take 2-3 months for an *experienced* pilot with decades of experience. Narrow body domestic pilots need roughly 2,000-3,000 hours of experience to fly. Pilots like myself require at least 10,000 flight hours. Most pilots obtain 600-800 hours per year, so it will take roughly 10 years for a new pilot to gain sufficient real world experience to fly white body aircraft.

8.  When I started working for American Airlines (formerly America West) in 1990, I had 4,500 flight hours and could only fly narrow body aircraft (Airbus 320) because of my lack of experience. As time progressed, I flew larger planes, which is typical for this industry. A pilot generally starts with very small planes and incrementally increase the size to ensure the pilot is sufficiently trained to fly larger aircraft with hundreds of souls aboard.  Finally, international flights require detailed training for each continent. Thus, converting a domestic pilot to international will not be an immediate transition and will require adequate time for proper training.

9. If the airline industry, and American Airlines specifically, were to lose even a small number of experienced pilots to COVID-19 vaccine termination the consequences and downflow effects would be substantial.

10. The training and experience necessary to fly commercial aircraft takes years and there is already a shortage of qualified pilots with the abilities to safely transport passengers. Losing pilots will result in shortages, delays, fewer flights and have a negative economic impact on the travel industy in Texas, nationally and postentially worldwide.

11. I would like to continue working at American Airlines, in my capacity as a Captain, until my mandatory retirement at age 65.   I fully agree to continue complying with current American Airlines precautions and protocols, including self-assessment, wearing a mask at all times while on airport property or on the aircraft and periodic COVID-19 testing. Over the last year these precautions have proven to be safe for employees and passengers in preventing transmission of the COVID-19 virus.

12. Pursuant to FAA regulations, if more than 90 days pass wherein I have not engaged in three takeoffs and landings, I am no longer qualified and require additional training.

13. If I am terminated from my employment and essentially rendered unemployable for lack of being vaccinated for COVID-19 the hardships imposed on myself and my family will be drastic. I am married with a 17-year-old daughter who is in her senior year of high

school. If I am terminated by American Airlines, I would have to likely retire early or take an entry level job in a new industry. My family and I would lose our health and travel benefits.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and this was executed in Globe Arizona, on November 12, 2021.

Electronically signed

/s/*Tiina Perlman*

Tiina Perlman

# EXHIBIT Q

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | Case No. 3:21-cv-309 |
| | § | |
| | § | |
| JOSEPH R. BIDEN in his official capacity as | § | |
| President of the United States, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

I, Lori Arcayna, declare as follows:

1. I am 58 years of age and I am a resident of Frisco, Texas.

2. I have personal knowledge of the facts asserted herein and would and could competently testify to them if called as a witness.

3. I am an American Airlines flight attendant and have served in this position for 34 years. The responsibilities of my position include performing safety checks prior to takeoff and landing, demonstrating and explaining emergency procedures such as oxygen masks, emergency exits and flotation devices. If there is an emergency, it is my job to help get people off the plane, extinguish any fires, and take other action as necessary. I receive annual training focused on customer safety.

4. If American Airlines were to lose even a small percentage of its highly experienced flight attendants to COVID-19 vaccine termination, the consequences would include potential flight cancellations and/or extreme delays. Flight attendants require specialized training and having experienced flight attendants is a key aspect of smooth and timely operations of American's flights. American could not continue to operate without noticeable disruption for some period of time if it were to lose a relatively modest number of flight attendants.

5. On October 1, 2021, I learned that American Airlines will require all employees to be

DocuSign Envelope ID: A740SCCA-DEC8-4D49-B189-55E36E21D29A

vaccinated for COVID-19 or be terminated from their employment. On October 6, 2021, American Airlines announced November 24, 2021, as the deadline for employees to complete their vaccination shot regimen.

DocuSign Envelope ID: A740SCCA-DFC8-4D40-B180-55E36E21D29A

On October 29, 2021, I submitted my request for a reasonable accommodation from American Airlines vaccine requirement based on my religious beliefs. I submitted this request through the web-based portal JetNet provided by American Airlines for exemption requests.

6. My sincerely held religious belief, as a Christian, is that God would not want me to take this vaccine and that God has also given me free will to decide what is right or wrong for my body.

7. We are a 2-income family, like a lot of families, and if I am terminated from my employment or placed on unpaid leave the effects on myself and my family will be devastating. We will be in jeopardy of having to potentially file for bankruptcy or, worse, lose our home. My son, who is a dependent, is also covered on my medical insurance and I would no longer have coverage for either of us.

8. I would like to continue working at American Airlines, in my capacity as a flight attendant. I fully agree to continue complying with current American Airlines precautions and protocols, including self-assessment and working on GBAC STAR accreditation aircraft. American Airlines is the first carrier to receive this gold standard rating from the Global Biorisk Advisory Council for American having established effective cleaning, disinfection and infectious disease prevention work practices to prepare for, respond to, and recover from outbreaks and pandemics such as COVID-19.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and this was executed in Frisco Texas, on November 12, 2021.

Declarant
Lori Arcayna

# EXHIBIT R

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Civil Action No. 3:21-cv-309** |
| | ) | |
| **JOSEPH R. BIDEN, et al,** | ) | |
| | ) | |
| *Defendants.* | ) | |

**DECLARATION OF GEOFFREY TAHUAHUA
IN SUPPORT OF PRELIMINARY INJUNCTION**

I, Geoffrey Tahuahua, being duly sworn, hereby state the following based on personal knowledge;

1. I am the President of Associated Builders and Contractors of Texas ("ABCTX"). ABCTX is a Texas-incorporated trade association headquareterd in Austin, representing eight chapters and more than 1500 member construction contractors and related employers in Texas.

2. ABCTX advocates on behalf of its chapters and members in supportof free enterprise and the Merit Shop philosophy, which holds that work in the construction industry should be awarded and performed on the basis of merit, regardless of labor affiliation. ABCTX is affiliated with Associated Builders and Contractors, Inc., a national trade association representing more than 21,000 chapter members."

3.  ABCTX is a chartered regional chapter of Associated Builders and Contractors, Inc. ("ABC"), a national construction industry trade association representing more than 21,000 member contractors and related firms all over the country. ABCTX and ABC as a whole strongly support and encourage vaccination of construction workers, and many ABC member companies have made significant efforts through outreach and incentives to get as many workers as possible vaccinated. But a sizable percentage of construction workers, as with the population as a whole, resist compulsory vaccination and have indicated they will quit their employment rather than submit to mandatory vaccination.

4.  ABCTX and ABC as a whole represent many private businesses that regularly bid on and are awarded federal government contracts of the type covered by the unprecedented vaccination mandates imposed by Executive Order 14042, as implemented by the Safer Federal Workforce Task Force Guidance, the Office of Management and Budget, and the Federal Acquisition Regulatory Council, all of which are being challenged in the above-captioned litigation.

5.  More specifically, absent preliminary injunctive relief staying the unlawfully promulgated Order and regulations at issue here, many ABCTX and ABC members will be compelled to sign agreements with federal agencies as a condition of award of any federal construction contracts after November 14, 2021, to ensure that all "covered contractor employees" are fully vaccinated, including employees "who are not themselves working on or in connection with a covered contract."[1] The vaccination mandate applies even to persons who have already been infected with COVID-19-or who work exclusively in outdoor workplace locations.

---

[1]
https://www.saferfederalworkforce.gov/downloads/Guidance%20for%20Federal%20Contractors_Safer%20Federal%20Workforce@20Task%20Force_20211110.pdf (last visited Nov. 10, 2021).

6. The challenged mandate is being imposed on federal contractors in a manner inconsistent with the recently issued OSHA Emergency Temporary Standard (ETS), in ways that adversely affect many members of ABCTX and ABC. Specifically, many members of the association(s) who perform federal contracts and subcontracts employ fewer than 100 employees, a number which according to OSHA renders such employers unlikely to be able to comply with mandatory vaccination requirements.[2] The majority of ABC members are classified as small businesses. Indeed, construction companies employing fewer than 100 workers compose 99% of construction firms in the United States, accounting for 68% of all construction industry employment.[3] In addition, the federal contractor mandate allows no testing option for unvaccinated employees, contrary to the OSHA ETS.

7. The challenged federal contractor mandate allows exemption from its vaccination requirements only for employees who should not receive a vaccination because of a disability or medical condition and those who qualify for a religious exemption. But the Task Force Guidance and FAR Clauseare inadequate for the needs of employers attempting to determine what employees are exempt from the mandate or what accommodations to make for such exempt status.

8. Many ABCTX and ABC members who regularly bid on and are awarded government contracts covered by the challenged contractor mandate will be irreparably harmed in the absence of

---

[2] 86 Fed. Reg. 61,403 (Nov. 5, 2021) (expressing OSHA's lack of confidence that smaller employers "have the administrative capacity to implement the standard's requirements….")

[3] U.S. Census County Business Patterns by Legal Form of Organization and Employment Size Class for the U.S., States, and Selected Geographies: 2019.

injunctive relief to prevent its implementation. First, if the contractors do not acquiesce to the challenged mandate, they will be disqualified from bidding on or being awarded work on covered federal contracts beginning November 14, 2021. According to recent data posted on the government website www.usaspending.gov, ABC member general contractors compose a crucial segment of the construction industry's federal contracting base[4] as ABC members won 57% of the $118 billion in direct federal U.S. construction contracts exceeding $25 million awarded during fiscal years 2009-2020.[5] Of this amount, a significant share was awarded to and built by members of ABCTX.

9.  If contractors are forced to comply with the challenged mandate in order to be awarded covered federal contracts, many of them will be unable to perform the awarded contracts because a significant percentage of their vaccine-resistant workers will quit or have to be placed on extended leaves of absence rather than be vaccinated. According to published reports, there is already a shortage of 430,000 construction workers needed to fulfill existing demands for construction in the U.S.[6] The shortage is expected to grow larger as a result of the recently passed Infrastructure Bill. If even a small percentage of the existing construction workforce ceases employment due to the vaccine mandate, exacerbating the existing shortage, then the much-needed construction projects of the federal government will not be capable of

---

[4] According to the U.S. Census Bureau (accessed Sept. 15, 2021), there was roughly $30 billion in federal construction put in place in 2020 https://www.census.gov/construction/c30/historical_data.html

[5] USASpending.gov data (accessed Dec. 22, 2020) cross-referenced with ABC membership. This data does not account for ABC members who performed subcontracting work on federal construction jobsites as that subcontractor information is not available on USASpending.gov or other government resources. However, the percentage of government work performed by ABC subcontractors is as high as or higher than the percentage of general contractor work, particularly when amounts below $25 million are included, as they would be under the new mandate.

[6] The Construction Industry Needs to Hire an Additional 430,000 Craft Professionals in 2021, March 23, 2021, ABC News Release.

performance. It is also well known that construction industry workforces are uniquely transitory and temporary, compared to other industries. Any vaccine-resistant worker who wants to avoid vaccination as a condition of employment by a government contractor, can readily obtain employment by a contractor who does not perform government contracts and/or is not covered by the OSHA ETS mandate or test policy, particularly during to the current labor shortage.

10. For each of these reasons, the challenged federal contractor mandate is likely to increase costs and undermine economy and efficiency in federal contracting. An August 2021 ABC survey of its federal contractor members found that 77% of survey respondents said vaccine mandates will increase costs on federal construction projects. Just 1.2% of respondents said vaccine mandates will decrease costs. In addition, the survey results indicated that a vaccine mandate on federal contractor employees would decrease competition for government contracts, with 49% of survey participants saying they would be less likely to bid on federal contracts subjected to vaccine requirements.

I have reviewed the foregoing and hereby swear under penalties of perjury that it is true and correct.

_____                    11/15/2021
                                                     _____
Geoffrey Tahuahua                                    Date

# EXHIBIT S

**Safer Federal Workforce Task Force**
**COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors**
Updated November 10, 2021

**Introduction**

On September 9, President Biden announced his Path Out of the Pandemic: COVID-19 Action Plan. One of the main goals of this science-based plan is to get more people vaccinated. As part of that plan, the President signed Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, ("the order") which directs executive departments and agencies, including independent establishments subject to the Federal Property and Administrative Services Act, 40 U.S.C. § 102(4)(A), to ensure that covered contracts and contract-like instruments include a clause ("the clause") that the contractor and any subcontractors (at any tier) shall incorporate into lower-tier subcontracts. This clause shall specify that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force ("Task Force"), provided that the Director of the Office of Management and Budget ("OMB") approves the Task Force Guidance (the or this "Guidance") and determines that the Guidance, if adhered to by covered contractors, will promote economy and efficiency in Federal contracting.

The actions directed by the order will ensure that parties who contract with the Federal Government provide COVID-19 safeguards in workplaces with individuals working on or in connection with a Federal Government contract or contract-like instrument. These workplace safety protocols will apply to all covered contractor employees, including contractor or subcontractor employees in covered contractor workplaces who are not working on a Federal Government contract or contract-like instrument. These safeguards will decrease the spread of SARS-CoV-2, the virus that causes COVID-19, which will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors performing work for the Federal Government.

Pursuant to this Guidance, and in addition to any requirements or workplace safety protocols that are applicable because a contractor or subcontractor employee is present at a Federal workplace, Federal contractors and subcontractors with a covered contract will be required to conform to the following workplace safety protocols:

1. COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation;
2. Compliance by individuals, including covered contractor employees and visitors, with the Guidance related to masking and physical distancing while in covered contractor workplaces; and
3. Designation by covered contractors of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces.

1

The order also sets out a process for OMB and the Safer Federal Workforce Task Force to update the Guidance for covered contractors, which the Task Force will consider doing based on future changes to Centers for Disease Control and Prevention ("CDC") COVID-19 guidance and as warranted by the circumstances of the pandemic and public health conditions. It also sets out a process for the Federal Acquisition Regulatory Council ("FAR Council") to implement such protocols and guidance for covered Federal procurement solicitations and contracts subject to the Federal Acquisition Regulation ("FAR") and for agencies that are responsible for covered contracts and contract-like instruments not subject to the FAR to take prompt action to ensure that those covered contracts and contract-like instruments include the clause, consistent with the order.

Covered contractors shall adhere to the requirements of this Guidance. The Director of OMB has, as authorized by Executive Order 14042, approved this Guidance and has, an exercise of the delegation of authority (see 3 U.S.C. § 301) under the Federal Property and Administrative Services Act determined that this Guidance will promote economy and efficiency in Federal contracting if adhered to by Government contractors and subcontractors. The Director has published such determination in the Federal Register.

**Definitions**

*Community transmission* – means the level of community transmission as set forth in the CDC COVID-19 Data Tracker County View.

*Contract and contract-like instrument* – has the meaning set forth in the Department of Labor's proposed rule, "Increasing the Minimum Wage for Federal Contractors," 86 Fed. Reg. 38,816, 38,887 (July 22, 2021). If the Department of Labor issues a final rule relating to that proposed rule, this term shall have the meaning set forth in that final rule.

That proposed rule defines a contract or contract-like instrument as an agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law. This definition includes, but is not limited to, a mutually binding legal relationship obligating one party to furnish services (including construction) and another party to pay for them. The term contract includes all contracts and any subcontracts of any tier thereunder, whether negotiated or advertised, including any procurement actions, lease agreements, cooperative agreements, provider agreements, intergovernmental service agreements, service agreements, licenses, permits, or any other type of agreement, regardless of nomenclature, type, or particular form, and whether entered into verbally or in writing. The term contract shall be interpreted broadly as to include, but not be limited to, any contract within the definition provided in the FAR at 48 CFR chapter 1 or applicable Federal statutes. This definition includes, but is not limited to, any contract that may be covered under any Federal procurement statute. Contracts may be the result of competitive bidding or awarded to a single source under applicable authority to do so. In addition to bilateral instruments, contracts include, but are not limited to, awards and notices of awards; job orders or task letters issued under basic ordering agreements; letter contracts; orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance; exercised contract options; and bilateral contract modifications. The term contract includes contracts covered by the Service Contract Act, contracts covered by the Davis-Bacon Act, concessions contracts not otherwise subject to the Service Contract Act, and contracts in connection with Federal property or land and related to offering services for Federal employees, their dependents, or the general public.

*Contractor or subcontractor workplace location* – means a location where covered contract employees work, including a covered contractor workplace or Federal workplace.

*Covered contract* – means any contract or contract-like instrument that includes the clause described in Section 2(a) of the order.

*Covered contractor* – means a prime contractor or subcontractor at any tier who is party to a covered contract.

*Covered contractor employee* – means any full-time or part-time employee of a covered contractor working on or in connection with a covered contract or working at a covered contractor workplace. This includes employees of covered contractors who are not themselves working on or in connection with a covered contract.

*Covered contractor workplace* – means a location controlled by a covered contractor at which any employee of a covered contractor working on or in connection with a covered contract is likely to be present during the period of performance for a covered contract. A covered contractor workplace does not include a covered contractor employee's residence.

*Federal workplace* – means any place, site, installation, building, room, or facility in which any Federal executive department or agency conducts official business, or is within an executive department or agency's jurisdiction, custody, or control.

*Fully vaccinated* – People are considered fully vaccinated for COVID-19 two weeks after they have received the second dose in a two-dose series, or two weeks after they have received a single-dose vaccine. There is currently no post-vaccination time limit on fully vaccinated status; should such a limit be determined by the Centers for Disease Control and Prevention, that limit will be considered by the Task Force and OMB for possible updating of this Guidance.

For purposes of this Guidance, people are considered fully vaccinated if they have received COVID-19 vaccines currently approved or authorized for emergency use by the U.S. Food and Drug Administration (Pfizer-BioNTech, Moderna, and Johnson & Johnson [J&J]/Janssen COVID-19 vaccines) or COVID-19 vaccines that have been listed for emergency use by the World Health Organization (e.g., AstraZeneca/Oxford). More information is available at Interim Clinical Considerations for Use of COVID-19 Vaccines | CDC.

Clinical trial participants from a U.S. site who are documented to have received the full series of an "active" (not placebo) COVID-19 vaccine candidate, for which vaccine efficacy has been independently confirmed (e.g., by a data and safety monitoring board), can be considered fully vaccinated two weeks after they have completed the vaccine series. Currently, the Novavax COVID-19 vaccine meets these criteria. More information is available at the CDC website here.

*Mask* – means any mask that is consistent with CDC recommendations as set forth in Types of Masks and Respirators | CDC. This may include the following: disposable masks, masks that fit properly (snugly around the nose and chin with no large gaps around the sides of the face), masks made with breathable fabric (such as cotton), masks made with tightly woven fabric (i.e., fabrics that do not let light pass through when held up to a light source), masks with two or three layers, masks with inner filter pockets, and filtering facepiece respirators that are approved by the National Institute for Occupational Safety and Health or consistent with international standards. The following do not constitute masks for purposes of this Guidance: masks with exhalation valves, vents, or other openings; face shields only (without mask); or masks with single-layer fabric or thin fabric that does not block light.

**Guidance**

Covered contractors are responsible for ensuring that covered contractor employees comply with the workplace safety protocols detailed below. Covered contractor employees must also comply with agency COVID-19 workplace safety requirements while in Federal workplaces.

Consistent with applicable law, agencies are strongly encouraged to incorporate a clause requiring compliance with this Guidance into contracts that are not covered or directly addressed by the order because the contract is under the Simplified Acquisition Threshold as defined in section 2.101 of the FAR or is a contract or subcontract for the manufacturing of products. Agencies are also strongly encouraged to incorporate a clause requiring compliance with this Guidance into existing contracts and contract-like instruments prior to the date upon which the order requires inclusion of the clause.

1. *Vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation*

Covered contractors must ensure that all covered contractor employees are fully vaccinated for COVID-19, unless the employee is legally entitled to an accommodation. Covered contractor employees must be fully vaccinated no later than January 18, 2022. After that date, all covered contractor employees must be fully vaccinated by the first day of the period of performance on a newly awarded covered contract, and by the first day of the period of performance on an exercised option or extended or renewed contract when the clause has been incorporated into the covered contract.

A covered contractor may be required to provide an accommodation to covered contractor employees who communicate to the covered contractor that they are not vaccinated against COVID-19 because of a disability (which would include medical conditions) or because of a sincerely held religious belief, practice, or observance. A covered contractor should review and consider what, if any, accommodation it must offer. Requests for "medical accommodation" or "medical exceptions" should be treated as requests for a disability accommodation.

Should a Federal agency have an urgent, mission-critical need for a covered contractor to have covered contractor employees begin work on a covered contract or at a covered workplace before becoming fully vaccinated, the agency head may approve an exception for the covered contractor—in the case of such limited exceptions, the covered contractor must ensure these covered contractor employees are fully vaccinated within 60 days of beginning work on a covered contract or at a covered workplace. The covered contractor must further ensure that such employees comply with masking and physical distancing requirements for not fully vaccinated individuals in covered workplaces prior to being fully vaccinated.

The covered contractor must review its covered employees' documentation to prove vaccination status. Covered contractors must require covered contractor employees to show or provide their employer with one of the following documents: a copy of the record of immunization from a health care provider or pharmacy, a copy of the COVID-19 Vaccination Record Card (CDC Form MLS-319813_r, published on September 3, 2020), a copy of medical records documenting

the vaccination, a copy of immunization records from a public health or State immunization information system, or a copy of any other official documentation verifying vaccination with information on the vaccine name, date(s) of administration, and the name of health care professional or clinic site administering vaccine. Covered contractors may allow covered contractor employees to show or provide to their employer a digital copy of such records, including, for example, a digital photograph, scanned image, or PDF of such a record.

The covered contractor shall ensure compliance with the requirements in this Guidance related to the showing or provision of proper vaccination documentation.

Covered contractors are strongly encouraged to incorporate similar vaccination requirements into their non-covered contracts and agreements with non-covered contractors whose employees perform work at covered contractor workplaces but who do not work on or in connection with a Federal contract, such as those contracts and agreements related to the provision of food services, onsite security, or groundskeeping services at covered contractor workplaces.

2. *Requirements related to masking and physical distancing while in covered contractor workplaces*

Covered contractors must ensure that all individuals, including covered contractor employees and visitors, comply with published CDC guidance for masking and physical distancing at a covered contractor workplace, as discussed further in this Guidance.

In addition to the guidance set forth below, CDC's guidance for mask wearing and physical distancing in specific settings, including healthcare, transportation, correctional and detention facilities, and schools, must be followed, as applicable.

In areas of high or substantial community transmission, fully vaccinated people must wear a mask in indoor settings, except for limited exceptions discussed in this Guidance. In areas of low or moderate community transmission, fully vaccinated people do not need to wear a mask. Fully vaccinated individuals do not need to physically distance regardless of the level of transmission in the area.

Individuals who are not fully vaccinated must wear a mask indoors and in certain outdoor settings (see below) regardless of the level of community transmission in the area. To the extent practicable, individuals who are not fully vaccinated should maintain a distance of at least six feet from others at all times, including in offices, conference rooms, and all other communal and work spaces.

Covered contractors must require individuals in covered contractor workplaces who are required to wear a mask to:
- Wear appropriate masks consistently and correctly (over mouth and nose).
- Wear appropriate masks in any common areas or shared workspaces (including open floorplan office space, cubicle embankments, and conference rooms).

- For individuals who are not fully vaccinated, wear a mask in crowded outdoor settings or during outdoor activities that involve sustained close contact with other people who are not fully vaccinated, consistent with CDC guidance.

A covered contractor may be required to provide an accommodation to covered contractor employees who communicate to the covered contractor that they cannot wear a mask because of a disability (which would include medical conditions) or because of a sincerely held religious belief, practice, or observance. A covered contractor should review and consider what, if any, accommodation it must offer.

Covered contractors may provide for exceptions to mask wearing and/or physical distancing requirements consistent with CDC guidelines, for example, when an individual is alone in an office with floor to ceiling walls and a closed door, or for a limited time when eating or drinking and maintaining appropriate distancing. Covered contractors may also provide exceptions for covered contractor employees engaging in activities in which a mask may get wet; high intensity activities where covered contractor employees are unable to wear a mask because of difficulty breathing; or activities for which wearing a mask would create a risk to workplace health, safety, or job duty as determined by a workplace risk assessment. Any such exceptions must be approved in writing by a duly authorized representative of the covered contractor to ensure compliance with this Guidance at covered contractor workplaces, as discussed further below.

Masked individuals may be asked to lower their masks briefly for identification purposes in compliance with safety and security requirements.

Covered contractors must check the CDC COVID-19 Data Tracker County View website for community transmission information in all areas where they have a covered contractor workplace at least weekly to determine proper workplace safety protocols. When the level of community transmission in the area of a covered contractor workplace increases from low or moderate to substantial or high, contractors and subcontractors should put in place more protective workplace safety protocols consistent with published guidelines. However, when the level of community transmission in the area of a covered contractor workplace is reduced from high or substantial to moderate or low, the level of community transmission must remain at that lower level for at least two consecutive weeks before the covered contractor utilizes those protocols recommended for areas of moderate or low community transmission.

3. *Designation by covered contractors of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces.*

Covered contractors shall designate a person or persons to coordinate implementation of and compliance with this Guidance and the workplace safety protocols detailed herein at covered contractor workplaces. The designated person or persons may be the same individual(s) responsible for implementing any additional COVID-19 workplace safety protocols required by local, State, or Federal law, and their responsibilities to coordinate COVID-19 workplace safety protocols may comprise some or all of their regular duties.

The designated individual (or individuals) must ensure that information on required COVID-19 workplace safety protocols is provided to covered contractor employees and all other individuals likely to be present at covered contractor workplaces, including by communicating the required workplace safety protocols and related policies by email, websites, memoranda, flyers, or other means and posting signage at covered contractor workplaces that sets forth the requirements and workplace safety protocols in this Guidance in a readily understandable manner. This includes communicating the COVID-19 workplace safety protocols and requirements related to masking and physical distancing to visitors and all other individuals present at covered contractor workplaces. The designated individual (or individuals) must also ensure that covered contractor employees comply with the requirements in this guidance related to the showing or provision of proper vaccination documentation.

**Frequently Asked Questions**

Frequently Asked Questions regarding this Guidance can be found here:
https://www.saferfederalworkforce.gov/faq/contractors/

All Task Force Guidance, FAQs, and additional information for Federal contractors and
subcontractors can be found here:
https://www.saferfederalworkforce.gov/contractors/