# EXHIBIT A


Dated: November 11, 2021.
**Jessica L. Wechter,**
*Special Assistant to the President, Legal Services Corporation.*
[FR Doc. 2021–25037 Filed 11–12–21; 11:15 am]
**BILLING CODE 7050–01–P**

# OFFICE OF MANAGEMENT AND BUDGET

## Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency Analysis

**AGENCY:** Executive Office of the President, Office of Management and Budget.

**ACTION:** Notice of determination; request for comments.

**SUMMARY:** The Director of the Office of Management and Budget ("OMB") determines that compliance by Federal contractors and subcontractors with the COVID–19 workplace safety protocols detailed in the Safer Federal Workforce Task Force ("Safer Federal Workforce Task Force" or the "Task Force") guidance (the "Guidance") to be issued on November 10, 2021, will promote economy and efficiency in Federal contracting by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a Federal Government contract, and the Director approves the guidance. This notice accordingly rescinds and supersedes the Director's prior notice issued on September 24, 2021.

**DATES:** To be ensured consideration, comments must be received on or before December 16, 2021.

**ADDRESSES:** You should submit comments via the Federal eRulemaking Portal at *https://www.regulations.gov/*. Follow the instructions for submitting comments.

Please be advised OMB will post all comments received that relate to this notice of determination on *https://www.regulations.gov* without making any change to the comments or redacting any information.

All comments posted are available and accessible to the public. So, do not include any information you would not like to be made publicly available, such as Social Security numbers, personal addresses, telephone numbers, and email addresses. It is the responsibility of the *c*ommenter to safeguard personal information.

**FOR FURTHER INFORMATION CONTACT:**
Cristin Dorgelo, 725 17th Street NW, Email address: *cristin.a.dorgelo@omb.eop.gov,* telephone number: (202) 456–4066. Because of delays in the receipt of regular mail related to security screening, respondents are encouraged to use electronic communications.

**SUPPLEMENTARY INFORMATION:** Section 2 of Executive Order 14042 ("Executive Order 14042" or the "order") requires that, before Federal contractors and subcontractors must adhere to any guidance from the Task Force, the Director of OMB must approve such guidance and determine that such guidance will promote economy and efficiency in Federal contracting if adhered to by Government contractors and subcontractors. Based on my review of the Task Force's COVID–19 Workplace Safety: Guidance for Federal Contractors and Subcontractors, scheduled for issuance on November 10, 2021 (reproduced in relevant part in Part I below), as well as the economy-and-efficiency analysis presented in Part II below, and exercising the President's authority under the Federal Property and Administrative Services Act (see 3 U.S.C. 301) delegated to me through Executive Order 14042, I approve the Guidance and have determined that the COVID–19-workplace safety protocols detailed in that Guidance will promote economy and efficiency in Federal contracting if adhered to by Government contractors and subcontractors. This notice accordingly rescinds and supersedes my prior notice issued on September 24, 2021. 86 FR 53691.

This notice consists of the following sections. Part I consists of revised Guidance from the Task Force. Part II consists of an economic analysis of the COVID–19-workplace safety protocols detailed in such Guidance and the effect on economy and efficiency in Federal procurement. Part III addresses procedural requirements.

## Part I. Safer Federal Workforce Task Force Guidance

On September 9, President Biden announced his Path Out of the Pandemic: COVID–19 Action Plan. One of the main goals of this science-based plan is to get more people vaccinated. As part of that plan, the President signed Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, which directs executive departments and agencies, including independent establishments subject to the Federal Property and Administrative Services Act, 40 U.S.C. 102(4)(A), to ensure that covered contracts and contract-like instruments include a clause ("the clause") that the contractor and any subcontractors (at any tier) shall incorporate into lower-tier subcontracts. This clause shall specify that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Task Force, provided that the Director of OMB approves the Task Force Guidance and determines that the Guidance, if adhered to by covered contractors, will promote economy and efficiency in Federal contracting.

The actions directed by the order will ensure that parties who contract with the Federal Government provide COVID–19 safeguards in workplaces with individuals working on or in connection with a Federal Government contract or contract-like instrument. These workplace safety protocols will apply to all covered contractor employees, including contractor or subcontractor employees in covered contractor workplaces who are not working on a Federal Government contract or contract-like instrument. These safeguards will decrease the spread of SARS–CoV–2, the virus that causes COVID–19, which will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors performing work for the Federal Government.

Pursuant to this Guidance, and in addition to any requirements or workplace safety protocols that are applicable because a contractor or subcontractor employee is present at a Federal workplace, Federal contractors and subcontractors with a covered contract will be required to conform to the following workplace safety protocols:

1. COVID–19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation;

2. Compliance by individuals, including covered contractor employees and visitors, with the Guidance related to masking and physical distancing while in covered contractor workplaces; and

3. Designation by covered contractors of a person or persons to coordinate COVID–19 workplace safety efforts at covered contractor workplaces.

The order also sets out a process for OMB and the Safer Federal Workforce Task Force to update the Guidance for covered contractors, which the Task Force will consider doing based on future changes to Centers for Disease Control and Prevention ("CDC") COVID–19 guidance and as warranted by the circumstances of the pandemic and public health conditions. It also sets out a process for the Federal Acquisition

Regulatory Council ("FAR Council") to implement such protocols and guidance for covered Federal procurement solicitations and contracts subject to the Federal Acquisition Regulation ("FAR") and for agencies that are responsible for covered contracts and contract-like instruments not subject to the FAR to take prompt action to ensure that those covered contracts and contract-like instruments include the clause, consistent with the order.

Covered contractors shall adhere to the requirements of this Guidance.

*A. Definitions*

*Community transmission*—means the level of community transmission as set forth in the CDC COVID–19 Data Tracker County View.[1]

*Contract and contract-like instrument*—has the meaning set forth in the Department of Labor's proposed rule, "Increasing the Minimum Wage for Federal Contractors," 86 FR 38816, 38887 (July 22, 2021). If the Department of Labor issues a final rule relating to that proposed rule, this term shall have the meaning set forth in that final rule. That proposed rule defines a contract or contract-like instrument as an agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law. This definition includes, but is not limited to, a mutually binding legal relationship obligating one party to furnish services (including construction) and another party to pay for them. The term contract includes all contracts and any subcontracts of any tier thereunder, whether negotiated or advertised, including any procurement actions, lease agreements, cooperative agreements, provider agreements, intergovernmental service agreements, service agreements, licenses, permits, or any other type of agreement, regardless of nomenclature, type, or particular form, and whether entered into verbally or in writing. The term contract shall be interpreted broadly as to include, but not be limited to, any contract within the definition provided in the FAR at 48 CFR chapter 1 or applicable Federal statutes. This definition includes, but is not limited to, any contract that may be covered under any Federal procurement statute. Contracts may be the result of competitive bidding or awarded to a single source under applicable authority to do so. In addition to bilateral instruments, contracts include, but are not limited to, awards and notices of awards; job orders or task letters issued under basic ordering agreements; letter contracts; orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance; exercised contract options; and bilateral contract modifications. The term contract includes contracts covered by the Service Contract Act, contracts covered by the Davis-Bacon Act, concessions contracts not otherwise subject to the Service Contract Act, and contracts in connection with Federal property or land and related to offering services for Federal employees, their dependents, or the general public.

*Contractor or subcontractor workplace location*—means a location where covered contract employees work, including a covered contractor workplace or Federal workplace.

*Covered contract*—means any contract or contract-like instrument that includes the clause described in Section 2(a) of the order.

*Covered contractor*—means a prime contractor or subcontractor at any tier who is party to a covered contract.

*Covered contractor employee*—means any full-time or part-time employee of a covered contractor working on or in connection with a covered contract or working at a covered contractor workplace. This includes employees of covered contractors who are not themselves working on or in connection with a covered contract.

*Covered contractor workplace*—means a location controlled by a covered contractor at which any employee of a covered contractor working on or in connection with a covered contract is likely to be present during the period of performance for a covered contract. A covered contractor workplace does not include a covered contractor employee's residence.

*Federal workplace*—means any place, site, installation, building, room, or facility in which any Federal executive department or agency conducts official business, or is within an executive department or agency's jurisdiction, custody, or control.

*Fully vaccinated*—people are considered fully vaccinated for COVID–19 two weeks after they have received the second dose in a two-dose series, or two weeks after they have received a single-dose vaccine.[2] There is currently no post-vaccination time limit on fully vaccinated status; should such a limit be determined by the Centers for Disease Control and Prevention, that limit will be considered by the Task Force and OMB for possible updating of this Guidance.

For purposes of this Guidance, people are considered fully vaccinated if they have received COVID–19 vaccines currently approved or authorized for emergency use by the U.S. Food and Drug Administration (Pfizer-BioNTech, Moderna, and Johnson & Johnson [J&J]/Janssen COVID–19 vaccines) or COVID–19 vaccines that have been listed for emergency use by the World Health Organization (*e.g.,* AstraZeneca/Oxford). More information is available at Interim Clinical Considerations for Use of COVID–19 Vaccines | CDC.[3]

Clinical trial participants from a U.S. site who are documented to have received the full series of an "active" (not placebo) COVID–19 vaccine candidate, for which vaccine efficacy has been independently confirmed (*e.g.,* by a data and safety monitoring board), can be considered fully vaccinated two weeks after they have completed the vaccine series. Currently, the Novavax COVID–19 vaccine meets these criteria. More information is available at the CDC website.[4]

*Mask*—means any mask that is consistent with CDC recommendations.[5] This may include the following: Disposable masks, masks that fit properly (snugly around the nose and chin with no large gaps around the sides of the face), masks made with breathable fabric (such as cotton), masks made with tightly woven fabric (*i.e.,* fabrics that do not let light pass through when held up to a light source), masks with two or three layers, masks with inner filter pockets, and filtering facepiece respirators that are approved by the National Institute for Occupational Safety and Health or consistent with international standards. The following do not constitute masks for purposes of this Guidance: Masks with exhalation valves, vents, or other openings; face shields only (without mask); or masks with single-layer fabric or thin fabric that does not block light.

*B. Requirements*

Covered contractors are responsible for ensuring that covered contractor employees comply with the workplace

---

[1] CDC, COVID–19 Integrated County View, *https://covid.cdc.gov/covid-data-tracker/#county-view.*

[2] CDC, When You've Been Fully Vaccinated (last updated Oct. 15, 2021), *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.*

[3] CDC, Interim Clinical Considerations for Use of COVID–19 Vaccines, *https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html.*

[4] CDC, People who received COVID–19 vaccine as part of a clinical trial in the United States, *https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html#vaccinated-part-clinical-trail.*

[5] CDC, Types of Masks and Respirators (Sept. 23, 2021), *https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html.*

safety protocols detailed below. Covered contractor employees must also comply with agency COVID–19 workplace safety requirements while in Federal workplaces.

Consistent with applicable law, agencies are strongly encouraged to incorporate a clause requiring compliance with this Guidance into contracts that are not covered or directly addressed by the order because the contract is under the Simplified Acquisition Threshold as defined in section 2.101 of the FAR or is a contract or subcontract for the manufacturing of products.

Agencies are also strongly encouraged to incorporate a clause requiring compliance with this Guidance into existing contracts and contract-like instruments prior to the date upon which the order requires inclusion of the clause.

1. Vaccination of Covered Contractor Employees, Except in Limited Circumstances Where an Employee Is Legally Entitled to an Accommodation

Covered contractors must ensure that all covered contractor employees are fully vaccinated for COVID–19, unless the employee is legally entitled to an accommodation. Covered contractor employees must be fully vaccinated no later than January 18, 2022. After that date, all covered contractor employees must be fully vaccinated by the first day of the period of performance on a newly awarded covered contract, and by the first day of the period of performance on an exercised option or extended or renewed contract when the clause has been incorporated into the covered contract.

A covered contractor may be required to provide an accommodation to covered contractor employees who communicate to the covered contractor that they are not vaccinated against COVID–19 because of a disability (which would include medical conditions) or because of a sincerely held religious belief, practice, or observance. A covered contractor should review and consider what, if any, accommodation it must offer. Requests for ''medical accommodation'' or ''medical exceptions'' should be treated as requests for a disability accommodation.

Should a Federal agency have an urgent, mission-critical need for a covered contractor to have covered contractor employees begin work on a covered contract or at a covered workplace before becoming fully vaccinated, the agency head may approve an exception for the covered contractor—in the case of such limited exceptions, the covered contractor must ensure these covered contractor employees are fully vaccinated within 60 days of beginning work on a covered contract or at a covered workplace. The covered contractor must further ensure that such employees comply with masking and physical distancing requirements for not fully vaccinated individuals in covered workplaces prior to being fully vaccinated.

The covered contractor must review its covered employees' documentation to prove vaccination status. Covered contractors must require covered contractor employees to show or provide their employer with one of the following documents: A copy of the record of immunization from a health care provider or pharmacy, a copy of the COVID–19 Vaccination Record Card (CDC Form MLS–319813_r, published on September 3, 2020), a copy of medical records documenting the vaccination, a copy of immunization records from a public health or State immunization information system, or a copy of any other official documentation verifying vaccination with information on the vaccine name, date(s) of administration, and the name of health care professional or clinic site administering vaccine. Covered contractors may allow covered contractor employees to show or provide to their employer a digital copy of such records, including, for example, a digital photograph, scanned image, or PDF of such a record.

The covered contractor shall ensure compliance with the requirements in this Guidance related to the showing or provision of proper vaccination documentation.

Covered contractors are strongly encouraged to incorporate similar vaccination requirements into their non-covered contracts and agreements with non-covered contractors whose employees perform work at covered contractor workplaces but who do not work on or in connection with a Federal contract, such as those contracts and agreements related to the provision of food services, onsite security, or groundskeeping services at covered contractor workplaces.

2. Requirements Related To Masking and Physical Distancing While in Covered Contractor Workplaces

Covered contractors must ensure that all individuals, including covered contractor employees and visitors, comply with published CDC guidance for masking and physical distancing at a covered contractor workplace, as discussed further in this Guidance.

In addition to the guidance set forth below, CDC's guidance for mask wearing and physical distancing in specific settings, including healthcare, transportation, correctional and detention facilities, and schools, must be followed, as applicable.

In areas of high or substantial community transmission, fully vaccinated people must wear a mask in indoor settings, except for limited exceptions discussed in this Guidance. In areas of low or moderate community transmission, fully vaccinated people do not need to wear a mask. Fully vaccinated individuals do not need to physically distance regardless of the level of transmission in the area.

Individuals who are not fully vaccinated must wear a mask indoors and in certain outdoor settings (see below) regardless of the level of community transmission in the area. To the extent practicable, individuals who are not fully vaccinated should maintain a distance of at least six feet from others at all times, including in offices, conference rooms, and all other communal and work spaces.

Covered contractors must require individuals in covered contractor workplaces who are required to wear a mask to:

• Wear appropriate masks consistently and correctly (over mouth and nose).

• Wear appropriate masks in any common areas or shared workspaces (including open floorplan office space, cubicle embankments, and conference rooms).

• For individuals who are not fully vaccinated, wear a mask in crowded outdoor settings or during outdoor activities that involve sustained close contact with other people who are not fully vaccinated, consistent with CDC guidance.

A covered contractor may be required to provide an accommodation to covered contractor employees who communicate to the covered contractor that they cannot wear a mask because of a disability (which would include medical conditions) or because of a sincerely held religious belief, practice, or observance. A covered contractor should review and consider what, if any, accommodation it must offer.

Covered contractors may provide for exceptions to mask wearing and/or physical distancing requirements consistent with CDC guidelines, for example, when an individual is alone in an office with floor to ceiling walls and a closed door, or for a limited time when eating or drinking and maintaining appropriate distancing. Covered contractors may also provide

exceptions for covered contractor employees engaging in activities in which a mask may get wet; high intensity activities where covered contractor employees are unable to wear a mask because of difficulty breathing; or activities for which wearing a mask would create a risk to workplace health, safety, or job duty as determined by a workplace risk assessment.[6] Any such exceptions must be approved in writing by a duly authorized representative of the covered contractor to ensure compliance with this Guidance at covered contractor workplaces, as discussed further below.

Masked individuals may be asked to lower their masks briefly for identification purposes in compliance with safety and security requirements.

Covered contractors must check the CDC COVID–19 Data Tracker County View website for community transmission information in all areas where they have a covered contractor workplace at least weekly to determine proper workplace safety protocols.[7] When the level of community transmission in the area of a covered contractor workplace increases from low or moderate to substantial or high, contractors and subcontractors should put in place more protective workplace safety protocols consistent with published guidelines. However, when the level of community transmission in the area of a covered contractor workplace is reduced from high or substantial to moderate or low, the level of community transmission must remain at that lower level for at least two consecutive weeks before the covered contractor utilizes those protocols recommended for areas of moderate or low community transmission.

3. Designation by Covered Contractors of a Person or Persons To Coordinate COVID–19 Workplace Safety Efforts at Covered Contractor Workplaces

Covered contractors shall designate a person or persons to coordinate implementation of and compliance with this Guidance and the workplace safety protocols detailed herein at covered contractor workplaces. The designated person or persons may be the same individual(s) responsible for implementing any additional COVID–19 workplace safety protocols required by local, State, or Federal law, and their responsibilities to coordinate COVID–19 workplace safety protocols may comprise some or all of their regular duties.

The designated individual (or individuals) must ensure that information on required COVID–19 workplace safety protocols is provided to covered contractor employees and all other individuals likely to be present at covered contractor workplaces, including by communicating the required workplace safety protocols and related policies by email, websites, memoranda, flyers, or other means and posting signage at covered contractor workplaces that sets forth the requirements and workplace safety protocols in this Guidance in a readily understandable manner. This includes communicating the COVID–19 workplace safety protocols and requirements related to masking and physical distancing to visitors and all other individuals present at covered contractor workplaces. The designated individual (or individuals) must also ensure that covered contractor employees comply with the requirements in this Guidance related to the showing or provision of proper vaccination documentation.

**Frequently Asked Questions**

Frequently Asked Questions regarding this Guidance can be found here: *https://www.saferfederalworkforce.gov/faq/contractors/*.

All Task Force Guidance, FAQs, and additional information for Federal contractors and subcontractors can be found here: *https://www.saferfederalworkforce.gov/contractors/*.

**Part II. Economy-and-Efficiency Analysis**

The following analysis outlines the ways in which the Guidance set forth in Part I will promote economy and efficiency in Federal procurement.

The Guidance requires vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation. It imposes requirements related to masking and physical distancing in covered contractor workplaces. And it requires covered contractors to designate a person or persons to coordinate COVID–19 workplace safety efforts at covered contractor workplaces.

The Guidance is issued pursuant to Executive Order 14042, which the President promulgated, in part, under the Federal Property and Administrative Services Act (FPASA). The FPASA, 40 U.S.C. 101 *et seq.* provides that the President ''may prescribe policies and directives that the President considers necessary to carry out'' the Act, which includes a purpose of ''provid[ing] the Federal Government with an economical and efficient system for . . . [p]rocuring and supplying property and nonpersonal services.'' 40 U.S.C. 101(1), 121(a).

This analysis of the economic impact of the Guidance is based on OMB's subject matter expertise and OMB's review and analysis of the academic literature on interventions to prevent the spread of COVID–19.

As explained below, the overall effect of enacting these protocols for Federal contractors and subcontractors will be to decrease the spread of COVID–19, which will in turn decrease worker absence, save labor costs on net, and thereby improve efficiency in Federal contracting. Indeed, numerous private companies have undertaken vaccine mandates that were announced or take effect before the Federal Government's mandate on Federal contractors takes effect and private companies have also imposed masking and physical distancing requirements at their workplaces. Just as these private businesses have concluded that vaccination, masking, and physical distancing requirements will make their operations more efficient and competitive in the market, we have concluded that the Guidance will realize economy and efficiency in Federal contracting.

*A. COVID–19 Infection Imposes Significant Costs on Contractors and the Federal Government*

The primary goal of the safety protocols is to reduce the spread of COVID–19 among contractor employees. COVID–19 is a highly communicable disease that tends to spread between people who are indoors, sharing space, and in close quarters—conditions common in typical workplaces.[8] There is also evidence that COVID–19 can be spread by asymptomatic individuals. One study estimated that more than half of transmissions come from individuals who do not have symptoms (Johansson et al., 2021). Individuals who do not have symptoms are likely to continue to report to work and therefore may spread the disease to their coworkers. As such, safety protocols applied even in the absence of observable illness among employees can meaningfully reduce the spread of COVID–19. Moreover, because employees working at a single workplace will regularly come into contact, safety protocols applied to all

---

[6] OSHA, Recommended Practices for Safety and Health Programs, *https://www.osha.gov/safety-management*.

[7] CDC, COVID–19 Integrated County View, *https://covid.cdc.gov/covid-data-tracker/#county-view*.

[8] See U.S. Environmental Protection Agency, Indoor Air and Coronavirus (COVID–19), *https://www.epa.gov/coronavirus/indoor-air-and-coronavirus-covid-19*.

employees in a workplace can meaningfully reduce the spread of COVID–19.

The CDC recommends that individuals remain isolated for ten days after symptom onset, which would mean workers who catch the virus can miss up to eight days of work.[9] Furthermore, those individuals could infect other workers, who would also miss eight days of work. Additional exposed workers would likely need to quarantine and would also miss work.

Workers unable to work generate substantial costs on employers. An imperfect proxy for the cost to an employer of a foregone hour of work is the worker's hourly pay. We calculate the average hourly wage for a Federal contractor to be approximately $31.51, making the average pay for eight days $2,016.[10] Wages are higher in Washington, DC, Maryland and Virginia, where many contractors are located, ranging from $33.36 in Virginia to $42.83 in Washington, DC, making the average pay for eight days in those areas $2,135 and $2,741, respectively. Such costs are substantial and, if borne by contractors, such costs would be expected to be passed on to the Federal Government, either in direct cost or lower quality, including delays.

Fortunately, vaccines, masks, and physical distancing have all been proven to reduce the prevalence of COVID–19 infection, and vaccines have been shown to greatly reduce the severity of breakthrough infections. And vaccines, masking, and physical distancing are all low-cost interventions.

*B. COVID–19 Vaccination Reduces Net Costs*

Requiring any workers who have not yet done so to receive a COVID–19 vaccine would generate meaningful efficiency gains for Federal contractors. COVID–19 vaccines provide strong and persistent protection against infection, illness, and hospitalization (see Tenforde, et al., 2021 and references). Reducing the number of infected people mechanically reduces transmission, and some preliminary evidence also indicates that vaccines also reduce transmission by people who contract ''breakthrough'' infections (Ke, et al., 2021). The vaccine requirement in the Guidance buttresses other workplace-specific safety protocols and provides protection against infection outside of the workplace, increasing the likelihood that the full set of protocols will prevent infection and illness and preserve the productivity of people working on or in connection with Federal contracts.[11]

Because vaccines are widely available for free, the cost of implementing a vaccine mandate is largely limited to administrative costs associated with distributing information about the mandate and tracking employees' vaccination status. Such costs are likely to be small.[12] Other costs of vaccination include employees quitting and using sick time when experiencing side effects from vaccination. However, based on experiences shared by private companies detailed below, we expect few employees to quit because of the vaccine mandate, and side effects lead to significantly less sick leave than COVID–19 infection. And unlike COVID–19 infection, side effects are not contagious to other employees.

Consistent with the view that COVID–19 vaccines promote economy and efficiency, numerous private companies have undertaken vaccine mandates that were announced or take effect before the Federal Government's mandate on Federal contractors takes effect. Led originally by companies like United Airlines and Tyson Foods, a wide and growing swath of private companies have determined that vaccine mandates are net beneficial to their companies.[13]

While anecdotal reports suggest that vaccine mandates may lead some workers to quit their jobs rather than comply, which could create some cost associated with replacing them, we know of no systematic evidence that this has been a widespread phenomenon, or that it would be likely to occur among employees of Federal contractors. In fact, the experience of private companies is to the contrary. For example, United Airlines reported in October 2021 that 99.7 percent of the airline's workforce complied with the vaccination requirements, Tyson Foods reported more than 96 percent of its workforce is now vaccinated, and healthcare providers such as California's Kaiser Permanente reported placing only two percent of employees on administrative leave for failing to comply with vaccine requirements.[14] And finally, even if some non-negligible number of workers were to quit rather than comply with a vaccine mandate, the cost of replacing those workers would be a one-time cost, while the benefits of increased vaccination (including among replacement workers, who would be vaccinated) would be long-lasting.

*C. Masking and Physical Distancing Reduces Net Costs*

COVID–19 is generally thought to be spread by respiratory particles and aerosols.[15] Masking and physical distancing have proven effective in reducing the spread of COVID–19. One study found that communities with the greatest physical distancing had a 31 percent lower risk of COVID–19 than communities with poor physical distancing, and that communities where individuals reported always using face masks outside of the home, even with poor physical distancing, had 62 percent reduced risk of COVID–19 compared to communities where face masks were never worn (Kwon et al., 2020). Another study found that full population masking reduces transmission of the virus by 25.8 percent (Leech et al., 2021). Similarly, a study of masking and ventilation improvements in Georgia schools found that COVID–19 incidence was 37 percent lower in schools where masks were required and 39 percent lower in schools with improved ventilation

---

[9] See Centers for Disease Control and Prevention, Recommendations for Ending Isolation (last updated Sept. 14, 2021), *https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html#anchor_1631308518116*.

[10] This calculation uses the distribution of NAICS codes in the contractor population and average salary of those NAICS codes from the Occupational Employment and Wage Statistics program at the Bureau of Labor Statistics, *https://www.bls.gov/oes/*.

[11] Note that the other safety protocols discussed above will still be appropriate even after the vaccine requirement is implemented, *e.g.,* to protect against breakthrough infections and emerging variants of the virus, or for the benefit of workers who may be unable to receive a vaccine for medical or religious reasons, until such time as public health conditions improve and CDC guidance related to masking and physical distancing changes.

[12] For example, the Occupational Safety and Health Administration estimated that providing information would take ten minutes per firm (84 FR 61476 cl. 3) and that tracking employees' vaccination status would take five minutes per employee (id. 84 FR 61488 cl. 2).

[13] The Major Companies Requiring Workers to Get COVID Vaccines, Fortune (Aug. 23, 2021), *https://fortune.com/2021/08/23/companies-requiring-vaccines-workers-vaccination-mandatory/*. See greater discussion on page 12 of the White House Vaccination Requirements Report (Oct. 2021), *https://www.whitehouse.gov/wp-content/uploads/2021/10/Vaccination-Requirements-Report.pdf*.

[14] COVID Vaccine Some 5 Percent of Unvaccinated Adults Have Quit Their Jobs Over a Mandate Survey Shows CNBC (Oct. 28, 2021), *https://www.cnbc.com/2021/10/28/covid-vaccine-some-5percent-of-unvaccinated-adults-have-quit-their-jobs-over-a-mandate-survey-shows.html;* How Tyson Foods Got 60,500 Workers to Get the Coronavirus Vaccine Quickly, N.Y. Times (Nov. 4, 2021), *https://www.nytimes.com/2021/11/04/business/tyson-vaccine-mandate.html.* Vaccine mandates stoked fears of labor shortages. But hospitals say they're working, Washington Post (Oct. 16, 2021), *https://www.washingtonpost.com/health/2021/10/16/hospital-covid-vaccine-mandate/*.

[15] CDC, Prevent Getting Sick: How COVID Spreads (last updated July 14, 2021), *https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html*.

(Gettings et al., 2021). This research shows that masking, physical distancing, and improved ventilation will all reduce the likelihood that COVID–19 spreads among the contractor workforce. These preventative measures will decrease worker absence and allow contract workers to continue their work without the need to take time off to recover from COVID–19. Thus, mask wearing and physical distancing are likely to reduce the spread of COVID–19 within contractor workplaces, reducing worker absence and maintaining productivity.

The costs of masking and physical distancing are minimal. For example, contractors may have to pay for masks for their employees. Masks can cost as little as $0.13 per mask and would need to be provided only to employees who do not already have their own masks.[16] Physical distancing can often be done without additional costs. Numerous private companies like Walmart require all employees to wear masks and physically distance, embodying a judgment that these mitigation measures promote economy and efficiency in the workplace.[17]

*D. Conclusion*

For these reasons, it is OMB's expert opinion that the Guidance will promote economy and efficiency in Federal Government procurement. All plans for economic recovery and growth are predicated on the need to prevent additional spread of the COVID–19 virus and facilitate vaccinations, and no employer, whether public or private, can expect to see increased productivity or economic efficiency without a healthy workforce. The safety protocols that are set forth by the Safer Federal Workforce Task Force are meant to ensure that COVID–19 does not easily spread within the workplace, so that Federal contractor employees can continue to be productive.

*E. References*

Gettings, Jenna, Michaila Czarnik, Elana Morris et al. 2021. "Mask Use and Ventilation Improvements to Reduce COVID–19 Incidence in Elementary Schools—Georgia, November 16–December 11, 2020." *Morbidity and Mortality Weekly Report* 70(21): 779–784.

Johansson, Michael A., Talia M. Quandelacy, Sarah Kada et al. 2021. "SARS–CoV–2 Transmission from People Without COVID–19 Symptoms." JAMA Network Open 4(1): e2035057.

Ke, Ruian, Pamela Martinez, Rebecca Lee Smith, et al. 2021. "Longitudinal analysis of SARS–CoV–2 vaccine breakthrough infections reveal limited infectious virus shedding and restricted tissue distribution." Preprint, *https://www.medrxiv.org/content/10.1101/2021.08.30.21262701v1.*

Kwon, Sohee, Amit D. Joshi, Chun-Han Lo et al. 2021. "Association of social distancing and face mask use with risk of COVID–19." Nature Communications 12.

Leech, Gavin, Charlie Rogers-Smith, Jonas B. Sandbrink et al. 2021. "Mass mask-wearing notably reduces COVID–19 transmission." medRxiv.

Tenforde, Mark W., Wesley H. Self, Eric A. Naioti, et al. 2021. "Sustained Effectiveness of Pfizer-BioNTech and Moderna Vaccines Against COVID–19 Associated Hospitalizations Among Adults—United States, March–July 2021." *Morbidity and Mortality Weekly Report* 70(34): 1156–1162.

**Part III. Procedural Requirements**

*A. Public Contract Requirements Under Public Law 111–350*

I am making my determination pursuant to a Presidential delegation under 3 U.S.C. 301. That determination is therefore not subject to the procedural requirements of Public Law 111–350, codified at 41 U.S.C. 1707. *See NRDC, Inc.* v. *U.S. Dep't of State,* 658 F. Supp. 2d 105, 109 & n.5, 111 (D.D.C. 2009) (when an agency acts pursuant to 3 U.S.C. 301, the agency "stands in the President's shoes" and that action is "not reviewable under the APA"); *Detroit Int'l Bridge Co.* v. *Canada,* 189 F. Supp. 3d 85, 100 (D.D.C. 2016) ("Several cases have concluded that an agency's action on behalf of the President, involving discretionary authority committed to the President, is 'presidential' and unreviewable under the APA."). To the extent that 41 U.S.C. 1707 is applicable to my determination set forth in this document, there are urgent and compelling circumstances that justify departing from the notice-and-comment and delayed-effective-date requirements in 41 U.S.C. 1707.

The notice-and-comment and delayed-effective-date requirements of subsections (a) and (b) of 41 U.S.C. 1707 "may be waived by the officer authorized to issue a procurement policy, regulation, procedure, or form if urgent and compelling circumstances make compliance with the requirements impracticable." 41 U.S.C. 1707(d). This statutory exception is implemented in FAR section 1.501–3, which provides that "[a]dvance comments need not be solicited when urgent and compelling circumstances make solicitation impracticable prior to the effective date of the coverage, such as when a new statute must be implemented in a relative short period of time."

Urgent and compelling circumstances justify waiving the notice-and-comment requirement for this notice. This is a once in a generation pandemic, which has already resulted in more than 46,405,253 cases of COVID–19, hospitalized more than 3,283,045 Americans, and taken more than 752,196 American lives. The pandemic continues to present an imminent threat to the health and safety of the American people, including due to the emergence of the B.1.617.2 (Delta) variant, which is a variant of concern that spreads more easily than previously discovered variants of SARS–CoV–2. This threat reaches all Americans, including those working for Federal contractors and subcontractors. The Guidance directly addresses this imminent threat by requiring vaccination. The CDC has determined that the best way to slow the spread of COVID–19, including preventing infection by the Delta variant, is for individuals to get vaccinated. According to the CDC, vaccinated individuals are 5 times less likely to be infected and 10 times less likely to experience hospitalization or death due to COVID–19 than unvaccinated individuals. The Guidance thus promotes the most important, urgent public health measure to slow the spread of COVID–19 among Federal contractors and subcontractors—which is critical to avoiding worker absence and unnecessary labor costs that could hinder the efficiency of federal contracting.

The minimum delay required by subsections (a) and (b) of 41 U.S.C. 1707 is also incompatible with a fundamental purpose of issuing this determination. The Guidance set forth in Part I changes the vaccination deadline for Federal contractors from December 8, 2021, to January 18, 2022. If the determination implementing this change were required to comply with subsections (a) and (b) of 41 U.S.C. 1707 (requiring 30 days for comment, and another 30 days to become effective), the earliest possible effective date for this determination would be January 9, 2022. But waiting until January for this determination to become effective would prevent the change in deadlines from having practical effect, as Federal contractors and subcontractors would still be legally obligated to meet the December 8, 2021, vaccination deadline until this determination became effective. That alone establishes urgent and compelling

---

[16] Mask costs were taken from a search of Amazon and would likely be lower for a contractor who would be able to order in bulk.

[17] The Major Companies Requiring Workers to Get COVID Vaccines, Fortune (Aug. 23, 2021), *https://fortune.com/2021/08/23/companies-requiring-vaccines-workers-vaccination-mandatory/.*

circumstances to warrant making this determination immediately effective.

Additionally, even if there were no prior deadline that contractors and subcontractors were obligated to meet, urgent and compelling circumstances would still exist because the broader economy-and-efficiency purpose of this determination would be severely undermined by the minimum delay required under subsections (a) and (b) of 41 U.S.C. 1707. As an initial matter, such a delay would interfere with an important purpose of the Task Force Guidance—aligning the vaccination deadline for Federal contractors with the vaccination deadline for private companies under recent regulatory actions. In particular, the Occupational Safety and Health Administration (OSHA) issued an Emergency Temporary Standard (ETS) requiring employers with 100 or more employees to ensure their workers are fully vaccinated or tested for COVID–19 on at least a weekly basis, and the Centers for Medicare & Medicaid Services (CMS) issued a rule requiring health care workers at facilities participating in Medicare and Medicaid to be fully vaccinated. 86 FR 61402; 86 FR 61555. Those rules set a deadline of January 4, 2022, for employees to receive their final COVID–19 vaccination dose—*i.e.,* January 18, 2022, for a fully vaccinated covered workforce. The Task Force's decision to set the same deadline for Federal contractors and subcontractors will make it easier for private employers to administer successful vaccination policies across their workforce and will allow Federal contractors and subcontractors to implement their requirements on the same timeline as other employers in their industries.[18] For example, a large employer covered by the ETS may have some but not all of their workplaces covered by the vaccination requirement for Federal contractors and subcontractors. For such an employer, that would mean some workplaces are governed by the ETS and some by the Task Force Guidance. Or, an employer may have some workers covered by the CMS rule, and other workers covered by the vaccination requirement for Federal contractors and subcontractors. For employers in these circumstances, having the same deadline across all requirements will promote consistency and administrability of public health standards, and eliminate potential confusion and frustration that disparate deadlines could produce. It could also avoid needless costs in having multiple systems of records and internal accountability established for different deadlines. Ensuring that private employers do not need to meet different compliance dates across different Federal vaccination policies is thus important to the success of their vaccination programs and to promoting economy and efficiency in Federal procurement.

Moreover, in order for such alignment to be effective, employers require regulatory certainty in the near-term. An immediately effective notice gives contractors and subcontractors a clear understanding not only of their responsibilities under Federal law but also the deadline for complying with those responsibilities. By contrast, absent an immediately effective determination of that deadline, such employers would have to wait until comments are received and a determination is finalized to know with certainty the deadline for ensuring that their covered employees are fully vaccinated. That would cause much of the administrability problems and frustration that alignment is intended to avoid, undermining the critical efforts to curb the spread of COVID–19 among Federal contractors and subcontractors and preventing alignment of the relevant deadlines.

Compliance with the procedural requirements of 41 U.S.C. 1707(a) and 1707(b) would fundamentally undermine the effort to provide private companies with aligned deadlines and regulatory certainty, as outlined above. As noted above, under those requirements the earliest effective date for this determination would be January 9, 2022. Simply put, that is far too late to provide regulatory certainty for Federal contractors, as that is *past* the date that covered employees of covered Federal contractors must receive their final COVID–19 vaccination dose (January 4, 2022), and it is less than ten days before the deadline for covered contractor employees to be fully vaccinated (January 18, 2022). Thus, compliance with the procedural requirements of 41 U.S.C. 1707(a) and 1707(b) would undermine the success of the Federal Government's vaccination efforts and economy and efficiency in Federal procurement.

Thus, to the extent that it is found that my determination is subject to the procedural requirements in 41 U.S.C. 1707, I have concluded that urgent and compelling circumstances exist under section 1707(d). The requirements of this notice are accordingly effective immediately upon filing with the **Federal Register**. Additionally, to the extent that it is found that my determination is subject to the procedural requirements in 41 U.S.C. 1707, this determination is temporary, consistent with section 1707(e). And regardless of whether this determination is subject to the procedural requirements in 41 U.S.C. 1707, I am soliciting comment on all subjects of this determination, which would also be consistent with sections 1707(c) and (e), if those provisions applied.

*B. Administrative Procedure Act*

My determination is not subject to the procedural rulemaking requirements of the Administrative Procedure Act (APA).

As noted above, this determination is pursuant to a delegation from the President under 3 U.S.C. 301. When any agency acts pursuant to such a delegation, the agency ''stands in the President's shoes'' and its actions ''cannot be subject to judicial review under the APA.'' *NRDC* v. *State,* 658 F. Supp. 2d at 109 & n.5, 111.

Even if the APA were applicable, the notice-and-comment requirements of 5 U.S.C. 553 exempt ''a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.'' 5 U.S.C. 553(a)(2). This determination relates to procurement and contractors—*i.e.,* ''contracts'' under section 553(a)(2)—and is thus exempt from the APA's notice-and-comment requirements.

Moreover, even if the notice-and-comment requirements of 5 U.S.C. 553 were applicable, the good-cause exception is satisfied here. 5 U.S.C. 553(b)(3)(B) waives notice-and-comment requirements if ''the agency for good cause finds'' that compliance would be ''impracticable, unnecessary, or contrary to the public interest.'' Notice and comment is impracticable in situations where delay would result in harm. *See, e.g., Mack Trucks, Inc.* v. *EPA,* 682 F.3d 87, 93 (D.C. Cir. 2012). Applicable procedures are ''[i]mpracticable'' if ''the due and required execution of the agency functions would be unavoidably prevented by its undertaking public rule-making proceedings'' or negotiated rulemaking. *N.J., Dep't of Envtl. Prot.* v. *EPA,* 626 F.2d 1038, 1046 (D.C. Cir. 1980) (quoting S. Doc. No. 248, at 200 (1946)); *see also United States* v. *Cotton,* 760 F. Supp. 2d 116, 129 (D.D.C. 2011). Such ''good cause'' would also exempt an agency from the delayed effective

---

[18] Unlike the vaccination deadline for covered employees of Federal contractors, the vaccination deadline for Federal employees under Executive Order 14043 does not require alignment with private companies, because there is no subset of private companies also subject to Executive Order 14043. Thus, the exigencies of combatting the global pandemic require maintaining the current vaccination deadline for Federal employees of November 22, 2021.

date under 5 U.S.C. 553(d). For the reasons explained above, notice-and-comment rulemaking and a delayed effective date would be impracticable, because the resulting delay in the effective date would not provide Federal contractors and subcontractors sufficient time to ensure compliance in time for the January 18, 2022, vaccination deadline.

\* \* \* \* \*

**Shalanda Young,**
*Acting Director.*
[FR Doc. 2021–24949 Filed 11–10–21; 4:15 pm]
**BILLING CODE 3110–01–P**

# NATIONAL CREDIT UNION ADMINISTRATION

## Sunshine Act Meetings

**TIME AND DATE:** 10:00 a.m., Thursday, November 18, 2021.

**PLACE:** Due to the COVID–19 Pandemic, the meeting will be open to the public via live webcast only. Visit the agency's homepage (*www.ncua.gov*) and access the provided webcast link.

**STATUS:** This meeting will be open to the public.

**MATTERS TO BE CONSIDERED:**

1. Board Briefing, Share Insurance Quarterly Report.
2. NCUA's 2022–2026 Strategic Plan.
3. NCUA Rules and Regulations, Service Facilities.
4. Board Briefing, NCUA's Modernized Examination Tools.
5. Board Briefing, Update to NCUA's Response to the COVID–19 Pandemic.

**CONTACT PERSON FOR MORE INFORMATION:** Melane Conyers-Ausbrooks, Secretary of the Board, Telephone: 703–518–6304.

**Melane Conyers-Ausbrooks,**
*Secretary of the Board.*
[FR Doc. 2021–25032 Filed 11–12–21; 11:15 am]
**BILLING CODE 7535–01–P**

# NATIONAL FOUNDATION ON THE ARTS AND THE HUMANITIES

## National Endowment for the Arts

## Arts Advisory Panel Meetings

**AGENCY:** National Endowment for the Arts.

**ACTION:** Notice of meetings.

**SUMMARY:** Pursuant to the Federal Advisory Committee Act, as amended, notice is hereby given that 17 meetings of the Arts Advisory Panel to the National Council on the Arts will be held by teleconference or videoconference.

**DATES:** See the **SUPPLEMENTARY INFORMATION** section for individual meeting times and dates. All meetings are Eastern time and ending times are approximate:

**ADDRESSES:** National Endowment for the Arts, Constitution Center, 400 7th St. SW, Washington, DC 20506.

**FOR FURTHER INFORMATION CONTACT:** Further information with reference to these meetings can be obtained from Ms. Sherry P. Hale, Office of Guidelines & Panel Operations, National Endowment for the Arts, Washington, DC 20506; *hales@arts.gov,* or call 202/682–5696.

**SUPPLEMENTARY INFORMATION:** The closed portions of meetings are for the purpose of Panel review, discussion, evaluation, and recommendations on financial assistance under the National Foundation on the Arts and the Humanities Act of 1965, as amended, including information given in confidence to the agency. In accordance with the determination of the Chairman of September 10, 2019, these sessions will be closed to the public pursuant to subsection (c)(6) of section 552b of title 5, United States Code.

The upcoming meetings are:

*Our Town* (review of applications): This meeting will be closed.
*Date and time:* December 2, 2021; 11:00 a.m. to 1:00 p.m.
*Our Town* (review of applications): This meeting will be closed.
*Date and time:* December 2, 2021; 2:30 p.m. to 4:30 p.m.
*Arts Education* (review of applications): This meeting will be closed.
*Date and time:* December 3, 2021; 11:30 a.m. to 1:30 p.m.
*Arts Education* (review of applications): This meeting will be closed.
*Date and time:* December 3, 2021; 2:30 p.m. to 4:30 p.m.
*Our Town* (review of applications): This meeting will be closed.
*Date and time:* December 3, 2021; 11:00 a.m. to 1:00 p.m.
*Presenting and Multidisciplinary Works* (review of applications): This meeting will be closed.
*Date and time:* December 6, 2021; 2:00 p.m. to 4:00 p.m.
*Museums* (review of applications): This meeting will be closed.
*Date and time:* December 7, 2021; 11:30 a.m. to 1:30 p.m.
*Museums* (review of applications): This meeting will be closed.
*Date and time:* December 7, 2021; 2:30 p.m. to 4:30 p.m.
*Presenting and Multidisciplinary Works* (review of applications): This meeting will be closed.
*Date and time:* December 7, 2021; 2:00 p.m. to 4:00 p.m.
*Museums* (review of applications): This meeting will be closed.
*Date and time:* December 8, 2021; 11:30 a.m. to 1:30 p.m.
*Presenting and Multidisciplinary Works* (review of applications): This meeting will be closed.
*Date and time:* December 8, 2021; 2:00 p.m. to 4:00 p.m.
*Arts Education* (review of applications): This meeting will be closed.
*Date and time:* December 9, 2021; 1:30 p.m. to 3:30 p.m.
*Local Arts Agencies* (review of applications): This meeting will be closed.
*Date and time:* December 9, 2021; 1:00 p.m. to 3:00 p.m.
*Local Arts Agencies* (review of applications): This meeting will be closed.
*Date and time:* December 9, 2021; 3:30 p.m. to 5:30 p.m.
*Presenting and Multidisciplinary Works* (review of applications): This meeting will be closed.
*Date and time:* December 9, 2021; 2:00 p.m. to 4:00 p.m.
*Folk and Traditional Arts* (review of applications): This meeting will be closed.
*Date and time:* December 14, 2021; 1:00 p.m. to 3:00 p.m.
*Folk and Traditional Arts* (review of applications): This meeting will be closed.
*Date and time:* December 16, 2021; 1:00 p.m. to 3:00 p.m.

Dated: November 10, 2021.

**Sherry P. Hale,**
*Staff Assistant, National Endowment for the Arts.*
[FR Doc. 2021–24928 Filed 11–15–21; 8:45 am]
**BILLING CODE 7537–01–P**

# NUCLEAR REGULATORY COMMISSION

[Docket No. 50–201; NRC–2021–0175]

**New York State Energy Research and Development Authority; Irradiated Nuclear Fuel Processing Plant; Western New York Nuclear Service Center**

**AGENCY:** Nuclear Regulatory Commission.

**ACTION:** License amendment; issuance.

**SUMMARY:** The U.S. Nuclear Regulatory Commission (NRC) has issued an