UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| THE STATE OF TEXAS,<br><br>                   Plaintiff,<br>v.<br><br>JOSEPH R. BIDEN, *et al.*,<br><br>                   Defendants. | No. 3:21-cv-309 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**SUPPLEMENTAL BRIEF TO MOTION FOR PRELIMINARY INJUNCTION**

At the December 3, 2021, hearing on the State of Texas's motion for preliminary injunction ("Motion"), ECF No. 6, the Court noted its "concern that there is not a lot of evidence out there that there is going to be – that there are contracts that are in imminent danger of being altered here." Tr. Hrg. Dec. 3, 2021, at 53, lns. 11–17, ECF No. 41 [hereinafter "Tr."]. Given this dearth of evidence, the Court permitted Texas until December 6 "to submit a letter brief . . . or another declaration that points [the Court] to contracts that it fears are going to be directly affected very soon," *id.* lns. 18–22, and gave Defendants the opportunity to file a response, *id.* at 58, lns. 3–6. Texas submitted its Supplemental Brief ("Supplement"

1

or "Supp.") and five attached exhibits on December 6, *see* Supp. Br., ECF No. 43, and Defendants hereby respond.[1]

Texas's second attempt to demonstrate standing and irreparable harm fares no better than its first. Texas formerly alleged that it stood to lose dozens or hundreds of current and future contracts worth $14.6 billion dollars in total. *See* Compl. at 21, ¶ 64 (internet-generated list of federal contracts). *Cf.* Mot. at 7 n.32 (same). Pressed by the Court to point to specific evidence that supports the "extraordinary and drastic" relief that it seeks, *Mazurek v. Armstrong*, 520 U.S. 960, 972 (1997), Texas now attempts to remedy the evidentiary deficiency identified by the Court through declarations addressing current or potential future contracts.

Texas's last-minute attempt to demonstrate standing and irreparable harm fails. It offers no evidence of any current contract to which it is a party where Defendants have compelled the inclusion of a COVID-19 safety clause, nor has Texas identified any contracting opportunity in the near future in which the inclusion of a COVID-19 safety clause is a prerequisite for award/renewal. As explained in greater detail below, because Texas's efforts to demonstrate standing and irreparable harm do not transcend speculation, its request for a

---

[1] On December 7, 2021, the United States District Court for the Southern District of Georgia issued a nationwide preliminary injunction enjoining the federal government from enforcing the vaccine mandate for federal contractors and subcontractors. *See* Order, *State of Georgia v. Biden*, No. 1:21-cv-163 (S.D. Ga.), ECF No. 94. Defendants are taking immediate steps to comply with that preliminary injunction. The information provided in this supplemental brief and declarations attached hereto describes the state of affairs before the nationwide preliminary injunction was issued by that court.

preliminary injunction must be denied. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

*Sandia National Lab.* Texas has not put forth any additional evidence that shows Sandia has a contract with a COVID-19 safety clause that is "fairly traceable" to Executive Order ("EO") 14042. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted); *see also* Ensuring Adequate COVID Safety Protocols for Federal Contractors, Exec. Order No. 14042, 86 Fed. Reg. 50,985 (Sept. 14, 2021). All additional contracts that Texas identifies between Sandia and Texas Tech University ("TTU") cannot support standing for the same reasons as Texas's first attempt: All of the contracts between TTU and Sandia are subcontracts to a contract that was not required to be modified by the EO. None of these contracts change the fact that TTU remains a subcontractor with National Technology and Engineering Solutions of Sandia, LLC ("NTESS"),[2] a private corporation, and not the federal government. The overarching contract between NNSA and NTESS is an ongoing contract that NNSA modified to include a COVID-19 safety clause based on its existing authority under the terms of that contract. *See* ECF No. 34-4, Westlake Decl. ¶ 12. And, as previously argued, the modification of existing contracts is not required by the EO, and so any injuries stemming from those modifications is not "fairly traceable" to EO 14042. *See Allen v. Wright*, 468 U.S. 737, 757 (1984); Defendants' Opposition to Texas's Motion for a Preliminary Injunction

---

[2] As previously noted, the National Nuclear Security Administration ("NNSA") contracts with NTESS, and NTESS in turn subcontracts with TTU. *See* Westlake Decl. ¶¶ 4, 31.

("Opposition") at 39–40, ECF No. 34. For this reason, it is of no matter that the contract between NNSA and NTESS includes a "flow down" requirement with NTESS and its subcontractors that applies to many different clauses, including the COVID-19 safety clause. *Id.* ¶ 40.

*Lawrence Livermore National Laboratory.* The Lawrence Livermore National Lab ("Livermore") contracts relied upon by Texas fare no better. As with Sandia, NNSA contracts with a private entity, Lawrence Livermore National Security, LLC ("LLNS"), to manage and operate Livermore. Ex 2, Duff Decl. ¶ 4. Subject to a bilateral modification, the private entity running the Lab—Lawrence Livermore National Security, LLC ("LLNS")—voluntarily agreed to include the COVID-19 safety clause into its existing contract with NNSA. *Id.* ¶ 11. Similar to its contract with NTESS, NNSA's contract with LLNS also includes a flow-down requirement for its subcontractors. *Id.* ¶ 17. Accordingly, LLNS sent a proposed subcontract to TTU that included the COVID-19 safety clause. *Id.* ¶ 18. Again, the bilateral modification between NNSA and LLNS was not required by the EO, so any COVID-19 safety clause that flows down to TTU's subcontract is not caused by the EO.

*U.S. Department of Defense.* Texas also points to two separate contracts involving the U.S. Army ("Army"). The first involves a Research Project Award from Medical Technology Enterprise Consortium ("MTEC"), a 501(c)(3), biomedical technology consortium. Supp. Ex. C, ¶ 5. The U.S. Army Medical Research Acquisition Activity ("USAMRAA") has an agreement with MTEC under which USAMRAA issues task orders to MTEC based on proposals that one of its consortium members has submitted. Ex. 3, Best Decl. ¶ 7. A

COVID-19 safety clause was added to the agreement between USAMRAA and MTEC as a result of a bilateral modification (again, not mandated by EO 14042). *Id.* ¶ 9. That agreement also contains a flow-down requirement specifying that MTEC insert a COVID-19 safety clause in its agreements with members of the consortium. *Id.* USAMRAA has awarded MTEC a task order based on a proposal from TTU, and accordingly, the resulting Research Project Award includes a COVID-19 safety clause. *Id.* But again—just like the proposed Livermore contract—TTU is not in any contractual privity with the federal government. The inclusion of a COVID-19 safety clause in a proposed TTU contract results from the intervening relationship between TTU and its contracting party, which here is MTEC. Any alleged injury relating to this subcontract, then, is also not fairly traceable to the limited requirements of the EO.

The second contract with the Army involves the Business Enterprises of Texas ("BET"), a program with the Vocational Rehabilitation Division ("VR") of the Texas Workforce Commission ("TWC"). Supp. at 4 & its Ex. E, Fuller Decl., ECF No. 43-5. Under that contract, the Army issues various task orders with separate periods of performance and funding. Ex. 4, Brown Decl. ¶¶ 3, 5. The contract, which was awarded on July 30, 2020, did not contain a COVID-19 safety clause, *id.* ¶ 6, and the Army "cannot unilaterally enforce the Contractor to accept modifications to the contract," *id.* ¶ 5. On November 26, 2021, the Army issued a (now completed) task order for the period of November 28 through December 3, 2021, that did incorporate a COVID-19 safety clause, but because the contractor did not agree to that clause, its performance under the contract was not subject to a COVID-19 safety

5

clause. *Id.* ¶ 6. The Army has issued a new task order to extend the period of performance and provide funding from December 4 to 18, 2021; the task order does not incorporate a COVID-19 safety clause. *Id.* ¶ 7. There is no current intention to include a COVID-19 safety clause in future task orders under this contract, nor is there any intent to cancel this contract due to a refusal to accept a COVID-19 safety clause. *Id.* ¶ 8.

Texas further relies upon a contract between BET and the U.S. Department of the Air Force. Supp. at 3–4 (citing Mot. Ex. J); Ex. 5, Novatnak Decl. ¶ 3. The option to extend the contract was exercised on September 29, 2021, and runs through September 30, 2022. *Id.* ¶ 3.b. The option on the contract therefore falls outside the express requirements of EO 14042. *See* EO 14042 § 5(a); *see also* Novatnak Decl. ¶ 3.c. The option on the contract currently does not include the COVID-19 safety clause and the Air Force will not require the TWC to agree to the inclusion of that clause in the existing option on the contract, which expires on September 30, 2022. Novatnak Decl. ¶¶ 3.b., d.-e.

*Department of Health and Human Services ("HHS").* Last, Texas points to a contract involving the Texas Department of State Health Services ("DSHS") and HHS's Health Resources and Services Administration ("HRSA"). Supp. at 3 & its Ex. D, ECF No. 43-4. The contract at issue has a "base" performance period of up to one year, followed by up to four one-year option periods. Ex. 6, Garcia Decl. ¶ 7. The contract period of performance started on April 1, 2018, and will run through March 31, 2023, if all option periods are exercised. *Id.* The contract is currently in Option Period 3 with an effective date and period of performance from April 1, 2021, through March 31, 2022. *Id.* ¶ 9. The Option Period 3

Modification, which predates the issuance of EO 14042, was executed bilaterally (including by DSHS) on March 17, 2021. *Id.* That option therefore falls outside the express requirements of the EO. *See* EO 14042 § 5(a). On November 17, 2021, HRSA notified DSHS that it intends to exercise the option for Option Period 4. Garcia Decl. ¶ 10. Option Period 4 would begin on March 31, 2022 and run through March 31, 2023. *Id.* HRSA informed DSHS of its intention to pursue a bilateral modification of the contract for Option Period 4 to include the COVID-19 safety clause, but to date DSHS has not agreed to that modification. *Id.* ¶ 11. This contract also does not currently include a COVID-19 safety clause, and it remains speculative how the parties' ongoing contractual discussions may resolve several months from now. *See id.* at ¶ 12. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (injury must be "certainly impending").

The other proof offered by Texas through its Supplement consists of an order from the Department of Energy ("DOE") regarding COVID-19 safety protocols and what appears to be internal e-mail correspondence between TTU personnel discussing the Sandia contracts. Supp. Exs. A & B, ECF Nos. 43-1 & 43-2. Defendants already addressed the applicability of the DOE order during the December 6, 2021, hearing, and note—as discussed with the Court that day and as outlined herein—that there is no contractual privity between TTU and DOE entities. *See Hollis v. Biden*, No. 1:21-CV-163-GHD-RP, 2021 WL 5500500, at *4 (N.D. Miss. Nov. 23, 2021) (finding, in a suit challenging EO 14042, that university-employee plaintiffs had no standing to sue the Federal Government as they had "failed to identify a single contract that potentially connects them to the federal contractor vaccine requirement" and the state

7

system's decision to require all university employees to vaccinate for COVID-19 did not provide standing). The e-mail correspondence only serves as evidence of TTU's view of the situation; it does not and cannot provide evidence of what DOE or any Defendant has done or intends to do on account of EO 14042. Last, Texas points to "at least 474 contracts with the State of Texas and its agencies and universities [with] a total potential value of $250,000 or more" that "will be subject to the Contractor Mandate when extended or renewed," Supp. at 4 (citation omitted); this is the same sort of conclusory, self-serving assertion about which this Court has rightly expressed skepticism. As already noted, Texas—despite ample opportunity—has not offered any proof of one contract that falls into such a category, let alone shown that the extraordinary relief that it seeks here is necessary to prevent the imminent inclusion of a COVID-19 safety clause in any extension/renewal. All of Texas's supplemental allegations are therefore, at most, "conjectural" and "hypothetical," not "actual," "imminent," or "concrete." *Lujan*, 504 U.S. at 560; *cf. Winter*, 555 U.S. at 20.

In the end, and despite having been given repeated opportunities, Texas has failed to show that that it has been or will imminently be harmed by EO 14042. To the contrary, the record is replete with examples of unimpeded, currently ongoing contractual performance, and the few future contracting opportunities on which Texas relies are not ones that will be "directly affected very soon," even assuming they are ever affected at all. Tr. at 53, lns. 11–17. Texas also assured this Court that absent an injunction, Defendants would summarily nullify their contracts with Texas and preclude Texas from further federal contracting opportunities if Texas dared oppose EO 14042. The evidence before the Court shows exactly

8

the opposite: Texas has repeatedly declined various requests to insert COVID-19 safety clauses into current contracts and, because those were merely *requests*, contractual performance has continued, unchanged. *See, e.g.*, Brown Decl. ¶¶ 6–8; Opp'n Ex. B, Liu Decl. ¶¶ 13, 17. Texas's failure of proof not only belies its assertion of imminent harm, but brings into stark relief the balance of the equities here: Texas seeks emergency relief to prevent Defendants from taking a measure to promote workplace safety in the midst of a global pandemic. In light of Texas's evidentiary showing, granting such relief would be manifestly inappropriate. The evidence that Texas has provided shows that Defendants have not unilaterally compelled contractual modifications or otherwise caused Texas's foreboding predictions of contractual upheaval to come to pass.

For the foregoing reasons, and for the reasons stated in Defendants' Opposition and at the December 6 hearing, the Court should deny the requested relief.

DATED: December 8, 2021                     Respectfully submitted,

                                                  BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

*/s/ Kristin A. Taylor*
KRISTIN A. TAYLOR (TX Bar. 24046952)
C. Lee Reeves III
Madeline M. McMahon
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW

9

Washington, DC 20005
(202) 353-0533 (direct)
(202) 616-8470
kristin.a.taylor@usdoj.gov

JENNIFER B. LOWERY
Acting United States Attorney

Daniel David Hu
Chief, Civil Division
Assistant U.S. Attorney
S.D. Id. 7959
Texas Bar Number 10131415
1000 Louisiana, Suite 2300
Houston, TX 77002
713 567 9518
Daniel.hu@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 8, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to counsel of record.

                                                   */s/ Kristin A. Taylor*
                                                   Kristin A. Taylor
                                                   Trial Attorney
                                                   U.S. Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   1100 L St. NW
                                                   Washington, DC 20005
                                                   (202) 353-0533 (direct)
                                                   (202) 616-8470
                                                   kristin.a.taylor@usdoj.gov