# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| THE STATE OF TEXAS,<br><br>                   Plaintiff,<br>v.<br><br>JOSEPH R. BIDEN, *et al.*,<br><br>                   Defendants. | No. 3:21-cv-309 |

## DEFENDANTS' SUPPLEMENTAL BRIEF

Pursuant to the Court's September 21, 2022, Order, Defendants submit this supplemental brief updating the Court on (1) whether this case remains a live controversy; (2) how the Eleventh Circuit's opinion in *Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022), affects the originally requested relief; and (3) what changes, if any, are appropriate to the injunctive relief Texas originally requested. Order, ECF No. 54 at 2.

**I.    Plaintiff Continues to Lack Standing.**

On the current record before the Court, Texas has not established standing. Defendants have not had the opportunity to review any supplemental information that Texas may provide pursuant to the Court's September 21, 2022, Order, and Texas has not demonstrated standing in any of its prior briefs. *See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Defs.' Opp'n") at 9-12, ECF No. 34; Defs.' Resp. to Pl.'s Suppl. Br. to Mot. Prelim. Inj. ("Defs.' Opp'n to Pl.'s Suppl. Br."), ECF No. 49.

*First*, as Defendants explained in their brief in opposition to Texas' motion for a preliminary injunction, *see* Defs.' Opp'n at 10, Texas cannot base its standing on a purported

"sovereign injury." Preemption alone does not suffice to establish standing. "[I]t is black-letter law that the federal government does not 'invade[]' areas of state sovereignty 'simply because it exercises its authority' in a way that preempts conflicting state laws.'" *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1291 (11th Cir. 2021) (quoting *Hodel v. Va. Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 291 (1981)). Moreover, Executive Order 14042 ("EO 14042") is not broadly preemptive of the Texas Executive Order prohibiting mandatory vaccination; rather, EO 14042 applies to a small subset of Texas citizens who work on federal contracts that fall within EO 14042's limited scope. *See Va. ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 271 (4th Cir. 2011) ("To permit a state to litigate whenever it enacts a statute declaring its opposition to federal law . . . would convert the federal judiciary into a 'forum' for the vindication of a state's 'generalized grievances about the conduct of government.'" (quoting *Flast v. Cohen*, 392 U.S. 83, 106 (1968))).

To the extent Texas attempts to assert injury on behalf of those citizens who may fall within the purview of EO 14042, that effort fails, for as the Supreme Court has recognized, "a state does not have standing as *parens patriae* to bring an action against the federal government to vindicate the rights of its citizens." *Chiles v. Thornburgh*, 865 F.2d 1197, 1209 (11th Cir. 1989) (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982)). While *Snapp* discussed a state's ability to assert a "quasi-sovereign" interest to support *parens patriae* standing, *see* 458 U.S. at 607, it expressly limited that analysis to suits against private defendants, not the federal government, *id.* at 610 n.16 (noting that a state "does not have standing as *parens patriae* to bring an action against the Federal Government" but "[h]ere, however, the Commonwealth is seeking to secure the federally created interests

2

of its residents against private defendants"). The Court explained that "it is no part of [a state's] duty or power to enforce their rights in respect of their relations with the Federal Government" because "[i]n that field it is the United States, and not the State, which represents them as *parens patriae.*" *Id.* (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923)). And although a state may have "special solicitude" to vindicate injuries that directly harm it, such as shoreline erosion harming the State of Massachusetts as a coastal property owner, *see Massachusetts v. EPA*, 549 U.S. 497, 519, 520 n.17 (2007), Texas has no similar sovereign interest. Whatever injuries individual citizens of Texas might face as a result of EO 14042, Texas may not bring suit on their behalf. *See Brackeen v. Haaland*, 994 F.3d 249, 292 n.13 (5th Cir. 2021) (en banc) (States do not "have standing as the parent of its citizens . . . against the Federal Government, the ultimate *parens patriae* of every American citizen." (quoting *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966)) (emphasis added)), *cert. granted*, 142 S. Ct. 1205 (2022) (mem.); *see also Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 182-83 (D.C. Cir. 2019) (holding that *Massachusetts v. EPA* does not "alter[] . . . longstanding precedent that a State in general lacks *parens patriae* standing to sue the federal government").

*Second*, on the record that currently exists, Texas has failed to show that it has suffered an economic injury. *See* Defs.' Opp'n at 11-12; Defs.' Opp'n to Pl.'s Suppl. Br. at 3-8. Texas must "set forth by affidavit or other evidence specific facts" that it has standing. *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000) (citation omitted). But the previously submitted affidavits do not do so. Texas relies only on contracts that do not fall within the scope of EO 14042 and offers no evidence of any current contract to which it is a party where Defendants have compelled the inclusion of a COVID-19 safety clause or would do so in the

3

near future. Because the record evidence does not show that Texas has or will suffer any injury caused by EO 14042, Texas has failed to carry its burden to show standing.

## II. The Eleventh Circuit's Decision in *Georgia* does Not Justify a Preliminary Injunction.

Judge Grant's opinion in *Georgia* expressed disagreement with the longstanding law of the Fourth, Tenth, and D.C. Circuits that FPASA "vest[s] broad discretion in the President." *Chamber of Com. of the U.S. v. Reich*, 74 F.3d 1322, 1330-33 (D.C. Cir. 1996). Those views do not represent the law in the Eleventh Circuit: the relevant portion of Judge Grant's opinion in *Georgia* did not command a majority. *See* 46 F.4th at 1307-08 (Edmondson, J., concurring in the result). Judge Grant's views also depart from how Presidents of both parties have long used their FPASA authority, and from Congress's implicit endorsement of such use. *See, e.g.*, *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Kahn*, 618 F.2d 784, 790 (D.C. Cir. 1979) (explaining how President Lyndon Johnson imposed anti-age-discrimination requirements for government contractors and how President Nixon excluded state prisoners from working on federal contracts); *Farmer v. Phila. Elec. Co.*, 329 F.2d 3, 5-9 (3d Cir. 1964) (describing how Presidents Truman, Eisenhower, and Kennedy imposed anti-race-discrimination requirements for government contractors). *See generally Kahn*, 618 F.2d at 790 ("[T]he President's view of his own authority under a statute is not controlling, but when that view has been acted upon over a substantial period of time without eliciting congressional reversal, it is entitled to great respect." (citation omitted)). Moreover, *Georgia* is contrary to this Circuit's observation in *Farkas v. Texas Instrument, Inc.*, which was one of the earliest cases to note (albeit in dicta) that FPASA "commit[s] to the President broad authority to 'prescribe . . . policies and directions'" enhancing economy and efficiency in federal contracting. 375 F.2d 629, 632 n.1 (5th Cir. 1967)

4

(quoting an earlier version of 40 U.S.C. § 121).

Although Judge Grant's opinion in *Georgia* discounted the prevailing view of the President's authority to promote economy and efficiency in federal contracting as a "purpose-based approach" to FPASA, *see* 46 F.4th at 1300, the opinion focused less on the statutory text than on what it conceived to be congressional purpose, *see id.* at 1293-98 (discussing 40 U.S.C. § 101). As Judge Anderson's dissent explains, *see id.* at 1308-09, FPASA broadly authorizes the President to "prescribe policies and directives that the President considers necessary to carry out" the statute. § 121(a). That is the grant of authority. Section 101's stated goal of "provid[ing] the Federal Government with an economical and efficient system" simply constrains what "policies and directives" may be "consider[ed] necessary to carry out" the Act. And as even Judge Grant's opinion recognized, "Covid-19 has caused absenteeism issues over the last few years throughout the economy, and it is at least arguable that increasing vaccination would cut lost workdays for contractors in a way that would make the procurement process more efficient." 46 F.4th at 1298.

Judge Grant's opinion mistakenly concluded that inapposite dicta from *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), limits the President's FPASA authority to issuing orders advancing specific statutory directives. *See Georgia*, 46 F.4th at 1294. But the *Chrysler* Court never addressed the scope of the President's FPASA authority. Indeed, it explained that in the context of agency regulations the pertinent inquiry is whether the agency's actions were "reasonably within the contemplation" of the statutory grant of authority, 441 U.S. at 306, and it made clear that a "grant of legislative authority to a federal agency by Congress" need not "be specific before regulations promulgated pursuant to it can be binding on courts in a

5

manner akin to statutes," *id.* at 308. *Chrysler* thus provides scant support for the conclusion that the Procurement Act authorizes only those executive orders that advance some specific statutory directive. Accordingly, this Court should decline to follow Judge Grant's opinion in *Georgia* and deny Texas's request for a preliminary injunction.

### III. Any Injunctive Relief Should Be Limited to Federal Contracts with the State of Texas

Defendants previously argued that any relief "should be no broader than necessary to redress Texas's alleged injuries." *See* Defs.' Opp'n at 48-50. *Georgia* lends further support to Defendants' argument. *See also Louisiana v. Becerra*, 20 F.4th 260, 263-64 (5th Cir. 2021) (vacating nationwide injunction). In *Georgia*, the portion of the opinion that *did* command a majority, *see* 46 F.4th at 1308 (Anderson, J., concurring in part and dissenting in part), correctly rejected the argument that a universal injunction was necessary, *see id.* at 1303-08 (majority opinion). The Eleventh Circuit was clear: district courts should not "enter a nationwide injunction to serve the general interest of national uniformity." *Id.* at 1307; *see also id.* at 1305-06 (noting that "[b]y cutting off parallel lawsuits, nationwide injunctions frustrate foundational principles of the federal court system" and collecting cases raising "[c]oncerns that nationwide injunctive relief is both increasing in frequency and incompatible with the proper judicial [rule]").

This Court should follow *Georgia*'s remedial holding and deny Texas's request for a universal injunction. As *Georgia* instructs, any injunction that this Court grants should provide relief only to the state of Texas.

\* \* \*

For these reasons, Texas's requested preliminary injunction should be denied.

Dated: October 12, 2022　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　BRIAN M. BOYNTON
　　　　　　　　　　　　　　　　　　Principal Deputy Assistant Attorney General

　　　　　　　　　　　　　　　　　　BRAD P. ROSENBERG
　　　　　　　　　　　　　　　　　　Assistant Director

　　　　　　　　　　　　　　　　　　*/s/ Madeline M. McMahon*
　　　　　　　　　　　　　　　　　　MADELINE M. MCMAHON
　　　　　　　　　　　　　　　　　　D.C. Bar No. 1720813
　　　　　　　　　　　　　　　　　　LEE REEVES
　　　　　　　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　　　　　　　U.S. Department of Justice
　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　1100 L Street N.W.
　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　(202) 451-7722
　　　　　　　　　　　　　　　　　　madeline.m.mcmahon@usdoj.gov

　　　　　　　　　　　　　　　　　　*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On October 12, 2022, I electronically submitted this document to the Clerk of Court for the U.S. District Court for the Southern District of Texas using the Court's electronic case filing system. I certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Madeline M. McMahon*
MADELINE M. MCMAHON
Trial Attorney
U.S. Department of Justice